1

2

3

4

5

6

7                                                    THE HONORABLE RONALD B. LEIGHTON

8

9

10

11                                   UNITED STATES DISTRICT COURT
                             WESTERN DISTRICT OF WASHINGTON AT TACOMA
12

13   JACOB BEATY and JESSICA BEATY, on            No. 3:17-cv-05201-RBL
     behalf of themselves and all others similarly
14   situated,                                    Defendant Ford Motor Company's Motion to
                                                  Dismiss
15                      Plaintiffs,

16   v.                                           NOTE ON MOTION CALENDAR:
                                                  June 16, 2017
17   FORD MOTOR COMPANY,

18                      Defendant.                ORAL ARGUMENT REQUESTED

19

20

21

22                      **FORD MOTOR COMPANY'S MOTION TO DISMISS**

23

24

25

26

27   MOT. TO DISMISS No. 3:17-cv-05201-RBL - i

28

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

**INTRODUCTION** ...................................................................................................1

**FACTS ALLEGED** ...............................................................................................3

**ARGUMENT** .........................................................................................................5

I.     **Standard Of Review** ...........................................................................5

II.    **Plaintiffs Lack Standing To Pursue Claims For Vehicles They Did Not Purchase** .........................................................................6

III.   **Plaintiffs' Breach Of Express Warranty Claim Fails**............................8

    A.     Plaintiffs Did Not Seek Repairs Within The Warranty Period........8

        1.     *Ford's Warranty Period Is Not Unconscionable*.................9

        2.     *Ford's Warranty Does Not Fail Its Essential Purpose*......12

VI.    **Plaintiffs Have No Cognizable Breach Of Implied Warranty Of Merchantability Claim** ......................................................12

    A.     Plaintiffs' Implied Warranty Claim Is Barred By The Statute Of Limitations.......................................................12

    B.     Plaintiffs Lack Privity With Ford ..................................13

V.     **Plaintiffs' Fraudulent Concealment And WCPA Claims Are Time-Barred** ......................................................................14

    A.     Plaintiffs' Tolling Arguments Fail..................................17

VI.    **Plaintiffs Do Not Sufficiently Plead That Ford Had Knowledge Of The Alleged Defect** ......................................................19

VII.   **Plaintiffs' WCPA Claim Also Fails Because Plaintiffs Cannot Show The Alleged Omission Was Likely To Mislead** ......................................................23

VII.   **Conclusion** .........................................................................24

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. State*,
118 Wn.2d. 753, 826 P.2d 200 (1992) ..................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................5, 8, 20

*August v. U.S. Bancorp*,
146 Wn. App. 328, 190 P.3d 86 (2008) ...............................................18

*Baughn v. Honda Motor Co.*,
107 Wn.2d 127, 727 P.2d 655 (1986) ..................................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................5

*Berenblat v. Apple, Inc.*,
Nos. 08–4969 JF (PVT), 09–1649 JF (PVT), 2010 U.S. Dist. LEXIS 46052 (N. D. Cal. Apr. 9, 2010)......................................................................21

*Bergeron v. Select Comfort Corp.*,
No. A-15-cv-00657-LY-ML, 2016 U.S. Dist. LEXIS 3418 (W.D. Tex. Jan. 11, 2016)....................................................................15, 16, 17

*Blangeres v. United States Seamless, Inc.*,
No. 2:13-cv-00260-SAB, 2015 U.S. Dist. LEXIS 165796 (E.D. Wash. Dec. 10, 2015)................................................................13

*Bussian v. DaimlerChrysler Corp.*,
411 F. Supp. 2d 614 (M.D.N.C. 2006) ................................................11

*Cipollone v. Liggett Grp., Inc.*,
505 U.S. 504 (1992) ...............................................................................8

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ...............................................................9

*Coe v. Philips Oral Healthcare Inc.*,
No. C13-518-MJP, 2014 U.S. Dist. LEXIS 22983 (W.D. Wash. Feb. 24, 2014)........6

*Conner v. Everhome Mortg. Co.*,
196 Wn. App. 1067, 2016 Wash. App. LEXIS 2799 (Wash. Ct. App. Nov. 21, 2016) (unpublished)...................................................14

*Cosman v. Ford Motor Co.*,
674 N.E.2d 61 (Ill. Ct. App. 1996)........................................................23

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

*Denton v. Dep't Stores Nat'l Bank*,
    No. C10-5830RBL, 2011 U.S. Dist. LEXIS 84024 (W.D. Wash. Aug. 1, 2011)....6, 8,
    14, 20

*Donohue v. Apple, Inc.*,
    871 F. Supp. 2d 913 (N.D. Cal. 2012)...........................................................................20

*Fiorito Bros., Inc. v. Fruehauf Corp.*,
    747 F.2d 1309 (9th Cir. 1984).......................................................................................12

*Fisher v. Honda N. Am., Inc.*,
    No. 13-cv-09285-JAK, 2014 U.S. Dist. LEXIS 84570 (C.D. Cal. June 12, 2014)....10,
    11

*Gaines v. Jordan*,
    64 Wn.2d 661, 393 P.2d 629 (1964) ............................................................................19

*Giraud v. Quincy Farm and Chemical*,
    102 Wn. App. 443, 6 P.3d 104 (2000) .........................................................................18

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
    525 F. App'x 94 (3d Cir. 2013)...............................................................................20, 21

*Grodzitsky v. Am. Honda Motor Co.*,
    No. 2:12-CV-1142, 2013 U.S. Dist. LEXIS 33387 (C.D. Cal. Feb. 19, 2013).....20, 22

*Herremans v. BMW of N. Am., LLC*,
    No. CV 14-02363, 2014 U.S. Dist. LEXIS 145957 (C.D. Cal. Oct. 3, 2014).......20, 22

*Holbrook, Inc. v. Link-Belt Const. Equip. Co.*,
    103 Wn. App. 279, 12 P.3d 638 (2000) ..................................................................12, 13

*Hudson v. Condon*,
    101 Wn. App. 866, 6 P.3d 615 (2000) ....................................................................14, 15

*Iannacchino v. Ford Motor Co.*,
    888 N.E.2d 879 (Mass. 2008)......................................................................................23

*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*,
    162 Wn.2d 59, 170 P.3d 10 (2007) .............................................................................19

*Kondash v. Kia Motors Am.*
    No. 1:15-cv-00506, 2016 U.S. Dist. LEXIS 185184 (June 24, 2016 S.D. Ohio) .......18

*Leadbetter v. Comcast Cable Commc'ns, Inc.*,
    No. C05-0892RSM, 2005 U.S. Dist. LEXIS 45365 (W.D. Wash. Aug. 22, 2005) ......9

*Lohr v. Nissan N. Am., Inc.*,
    No. C16-1023RSM, 2017 U.S. Dist. LEXIS 38934 (W.D. Wash. Mar. 17,
    2017)................................................................................................................. *passim*

MOT. TO DISMISS No. 3:17-cv-05201-RBL - iv

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

*Lukovsky v. City & County of San Francisco*,
    535 F.3d 1044 (9th Cir. 2008) ..................................................................18

*M.A. Mortenson Co., Inc. v. Timberline Soft. Corp.*,
    140 Wn.2d 568, 998 P.2d 305 (2000) ......................................................10

*Marcus v. Apple Inc.*,
    No. C 14-03824 WHA, 2015 U.S. Dist. LEXIS 2140 (N.D. Cal. Jan. 8, 2015) .........21

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ...................................................................1

*McQueen v. BMW of N. Am., LLC*,
    No. 12-06674, 2014 U.S. Dist. LEXIS 21084 (D.N.J. Feb. 20, 2014) .......................20

*Miller v. Ghirardelli Chocolate Co.*,
    912 F. Supp. 2d 861 (N.D. Cal. 2012) .................................................5, 6

*Munch v. Sears Roebuck & Co.*,
    No. 06-cv-7023, 2007 U.S. Dist. LEXIS 62897 (N.D. Ill. Aug. 27, 2007) ................24

*O'Donnell v. Vencor Inc.*,
    466 F.3d 1104 (9th Cir. 2006) .................................................................18

*Panag v. Farmers Ins. Co. of Wash.*,
    166 Wn.2d 27, 204 P.3d 885 (2009) ...............................................19, 23

*In re Pers. Restraint of Bonds*,
    165 Wn.2d 135, 196 P.3d 672 (2008) ..............................................18, 19

*Rivas v. Overlake Hosp. Med. Ctr.*,
    164 Wn.2d 261, 189 P.3d 753 (2008) ....................................................17

*Robinson v. Seattle*,
    119 Wn.2d 34, 830 P.2d 318 (1992) ......................................................18

*Rokkan v. Gesa Credit Union*,
    165 Wn. App. 1025, 2012 Wash. App. LEXIS 26 (Wash. Ct. App. Jan. 10, 2012)
    (unpublished) ...........................................................................................19

*Sanders v. Sheets*,
    142 Wash. 155, 252 P. 531 (1927) .........................................................15

*Shepard v. Holmes*,
    185 Wn. App. 730, 345 P.3d 786 (2014) .........................................14, 17

*Smith v. Ford Motor Co.*,
    749 F. Supp. 2d 980 (N.D. Cal. 2010) ..........................................2, 10, 11

*In re Sony PS3 Other OS Litig.*,
    551 F. App'x 916 (9th Cir. 2014) ..............................................................9

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

*Tex. Enters., Inc. v. Brockway Standard, Inc.,*
    149 Wn.2d 204, 66 P.3d 625 (2003) ..........................................................13

*Thiedemann v. Mercedes-Benz USA, LLC,*
    872 A.2d 783 (N.J. 2005) ..........................................................................23

*Tincher v. Omega Flex,*
    104 A.3d 328 (Pa. 2014) ............................................................................23

*Tjart v. Smith Barney, Inc.,*
    107 Wn. App. 855, 28 P.3d 823 (2001) .......................................................9

*Torgerson v. One Lincoln Tower, LLC,*
    166 Wn.2d 510, 210 P.3d 318 (2009) ....................................................9, 10

*Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc.,*
    119 Wn.2d 334, 831 P.2d 724 (1992) ...................................................13, 14

*United States v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003).......................................................................9

*Utica Nat'l Ins. Grp. v. BMW of N. Am., LLC,*
    45 F. Supp. 3d 157 (D. Mass. 2014)...........................................................20

*Veeder v. NC Mach. Co.,*
    720 F. Supp. 847 (W.D. Wash. 1989) ..........................................................9

*Vollstedt v. Tegman,*
    155 Wn. App. 1023, 2010 Wash. App. LEXIS 730 (Wash. Ct. App. Apr. 12, 2010)
    (unpublished).............................................................................................17

*Walsh v. Microsoft Corp.,*
    63 F. Supp. 3d 1312 (W.D. Wash. 2014) ......................................................5

*Warth v. Seldin,*
    422 U.S. 490 (1975) .....................................................................................5

*Western Recreational Vehicles, Inc. v. Swift Adhesives, Inc.,*
    23 F.3d 1547 (9th Cir. 1994).......................................................................13

*Williams v. Yamaha Motor Corp., U.S.A.,*
    106 F. Supp. 3d 1101 (C.D. Cal. 2015).................................................20, 22

*Wilson v. Hewlett-Packard Co.,*
    668 F.3d 1136 (9th Cir. 2012)...............................................................21, 22

*Wurts v. City of Lakewood,*
    No. C14-5113-BHS, 2015 U.S. Dist. LEXIS 56337 (W.D. Wash. Apr. 29, 2015) ....19

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1

**Statutes**

2

RCW § 4.16.080(4)...................................................................................................14

3

RCW § 19.86.120 ....................................................................................................14

4

RCW § 62A.2-302 ....................................................................................................9

5

RCW § 62A.2-607(3)(a) ...........................................................................................8

6

RCW § 62A.2-719(2)................................................................................................12

7

RCW § 62A.2-725 ..............................................................................................12, 13

8

Washington Consumer Protection Act.............................................................*passim*

9

**Rules**

10

Fed. R. Civ. P. 8(a) ..................................................................................................5

11

Fed. R. Civ. P. 12(b)(1)............................................................................................5

12

Fed. R. Civ. P. 12(b)(6)............................................................................................5

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

## INTRODUCTION

Plaintiffs Jacob and Jessica Beaty ("Plaintiffs") purchased a new 2013 Ford Escape Titanium model from Scarff Ford in Auburn, Washington on September 25, 2012.  Dkt. #1 at p. 26 (Compl. ¶ 69).  Plaintiffs allege that on February 8, 2017, the panoramic sunroof on their Model Year ("MY") 2013 Ford Escape shattered due to an alleged defect, and have now filed a putative nationwide – and in the alternative, Washington State – class action against Ford Motor Company ("Ford").  Dkt. #1 at pp. 26, 30 (Compl. ¶¶ 72, 79).  Plaintiffs seek to represent a class of owners of certain MY 2007 to MY 2017 Ford, Lincoln, and Mercury brand vehicles ranging from pick-up trucks to SUVs (compact, mid-size, full-size, and crossover), from compact cars to sports cars, and from luxury sedans to hybrid and electric vehicles.  Dkt. #1 at p. 26 (Compl. ¶ 79).

While Plaintiffs allege a "panoramic sunroof defect," this case involves panoramic sunroofs from sixteen vehicles, and a cursory visual inspection of the vehicles themselves (in ads, brochures, on TV, or in person), illustrates the differences in size, shape, design, and appearance of the sunroofs.  This purported class is the embodiment of heterogeneity given that it consists of three different vehicle brands and different vehicle segments within each brand.  As is evident in the ads and commercials of which we are all aware, the putative class vehicles are marketed differently and are designed to appeal to different customer segments.[1]  Even within a specific segment of a single brand, Ford SUVs, Plaintiffs admit that two ***different*** suppliers provided the glass for specific MY Ford Explorer, Edge and Escape vehicles.  Dkt. #1 at p. 17 (Compl. ¶ 42).

---

[1] In addition, there is heterogeneity associated with the fact that the law of all 50 states would need to be applied in this class action because the law of the state of purchase governs.  Material differences in states' laws, particularly with respect to consumer fraud, breach of express and implied warranty, and fraudulent concealment make this case inappropriate for certification of a nationwide class.  *E.g., Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012).

MOT. TO DISMISS - No. 3:17-cv-05201-RBL – 1

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Plaintiffs allege that the panoramic sunroofs on the class vehicles are defective because they are prone to "spontaneously shatter." Dkt. #1 at p. 2 (Compl. ¶ 4). Plaintiffs further allege that Ford knew or should have known of this purported defect, but failed to disclose it, and had Ford disclosed the defect, Plaintiffs would not have purchased their vehicle or would have paid less for it. Dkt. #1 at pp. 2, 3, 29 (Compl. ¶¶ 7-8, 10, 78). Plaintiffs claim they did not receive the benefit of their bargain and seek monetary damages for breach of express and implied warranty, fraudulent concealment, and violations of the Washington Consumer Protection Act, as well as an order from this Court requiring Ford to "cease selling vehicles with the [alleged] defective panoramic sunroofs and to adequately disclose and repair the defective panoramic sunroofs." Dkt. #1 at pp. 3, 29, 34-43 (Compl. ¶¶ 11, 78, 91-136, p. 43).

Significantly, Plaintiffs' Complaint is replete with labels, formulaic recitations of the elements of causes of action, and legal conclusions couched as factual allegations. One such legal conclusion is Plaintiffs' allegation that "[t]he panoramic sunroof designs in all of the Class Vehicles are substantially similar in design and manufacture." Dkt. #1 at p. 5 (Compl. ¶ 20). But Plaintiffs' pleading lacks the requisite factual content of substantial similarity, and the limited facts alleged reflect substantial differences among the putative class vehicles.

Plaintiffs' express warranty claim fails because Ford did not breach the terms of the Ford express warranty. Plaintiffs' 3-year/36,000 mile warranty, attached hereto as Exhibit A, expired **before** they sought repair for their panoramic sunroof. An express warranty that has expired prior to a consumer seeking a warranty repair cannot be breached. Moreover, a court in this Circuit examining Ford's warranty has concluded that this warranty is not unconscionable, *see Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 943 (N.D. Cal. 2010), and Plaintiffs have pled no sufficient facts to the contrary.

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Plaintiffs' implied warranty claim is time-barred and fails due to lack of privity.  Plaintiffs purchased their vehicle from "Scarff Ford in Auburn, Washington," not from Ford, and no facts have been alleged sufficient to establish an exception to the rule requiring privity of contract between Plaintiffs and Ford.  Plaintiffs' legal conclusions are not sufficient to state a claim.

Plaintiffs' claims for fraudulent concealment and for violations of the Washington Consumer Protection Act (the "WCPA"), both premised upon Ford's alleged failure to disclose the purported defect in its panoramic sunroofs, are time-barred under the applicable statute of limitations.  And, in the alternative, both claims should be dismissed because Plaintiffs' factual allegations – consisting of a variety of dissimilar, unsubstantiated complaints (and ***no complaints whatsoever*** regarding certain class vehicles), and publications involving non-Ford vehicles – in and of themselves do not establish Ford's knowledge of the purported defect.  Absent facts sufficient to establish Ford's knowledge of the purported defect, there is no duty to disclose a material fact for the fraudulent concealment claim or a knowing failure to disclose a material fact for the WCPA claim.  Plaintiffs' WCPA claim is also subject to dismissal because the alleged omission is not likely to deceive as a matter of law.

The decisions of other district courts in panoramic sunroof class actions denying defendants' motions to dismiss are distinguishable.  Those cases involved different manufacturers, vehicles, sunroofs, and allegations, and most importantly, those cases involved different legal and factual arguments unique to specific manufacturers.  Based upon the arguments below, this Complaint, judged on its individual merits, should be dismissed.

## FACTS ALLEGED

Plaintiffs claim they purchased a 2013 Ford Escape Titanium (the "Vehicle") on September 12, 2012 from Scarff Ford in Auburn, Washington.  Dkt. #1 at p. 26 (Compl. ¶ 69).  Plaintiffs

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

allege they researched the "safety and quality ratings" of Escapes "generally" prior to purchase, and that they spoke "with sales people at Scarff Ford about this particular car and customer satisfaction." Dkt. #1 at p. 26 (Compl. ¶ 70). While Plaintiffs claim the Vehicle's panoramic sunroof "was a huge selling point," they do not claim to have conducted any research regarding the panoramic sunroof or to have viewed or heard any statements by Ford regarding the sunroof prior to their purchase of the Vehicle. *See* Dkt. #1 at pp. 26-27 (Compl. ¶¶ 69-71). The Vehicle came with a 3-year/36,000 mile bumper-to-bumper warranty. Dkt. #1 at p. 26 (Compl. ¶ 65).

Plaintiffs allege that on February 8, 2017 – almost four-and-a-half years after they bought the Vehicle and at least one-and-a-half years after their warranty expired – "their sunroof explod[ed]" while Mrs. Beaty was driving on the Interstate. Dkt. #1 at p. 27 (Compl. ¶¶ 71-72). Glass from the sunroof fell into the Vehicle, and Mrs. Beaty noticed she had scratches on her hands and that her daughter had a scratch on her forehead. Dkt. #1 at p. 27 (Compl. ¶¶ 72-73). Mrs. Beaty then drove the Vehicle to Mullenix Ford in Olympia, Washington, where she was informed that the Vehicle's sunroof was outside of the warranty period. Dkt. #1 at p. 28 (Compl. ¶ 75). "She was then sent to Auto Glass Professionals" for repairs to the panoramic sunroof, for which she paid a $500 insurance deductible and $110.94 for a rental car. Dkt. #1 at pp. 28-29 (Compl. ¶¶ 75-76). Plaintiffs allege the replacement sunroof is the "same manufacturer/model sunroof" and that they "cannot enjoy" it. Dkt. #1 at p. 29 (Compl. ¶¶ 76-77). Plaintiffs allege that panoramic sunroofs in Ford, Lincoln, and Mercury vehicles have a "propensity to spontaneously shatter," thereby rendering the panoramic sunroofs "defective." Dkt. #1 at p. 2 (Compl. ¶ 4).

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

## ARGUMENT

### I.   Standard Of Review

Under Fed. R. Civ. P. 12(b)(1), dismissal is required when the court lacks subject-matter jurisdiction. *Walsh v. Microsoft Corp.*, 63 F. Supp. 3d 1312, 1317 (W.D. Wash. 2014) (citations omitted); *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 867 (N.D. Cal. 2012).   The doctrine of standing, which is properly addressed under Rule 12(b)(1), encompasses both constitutional requirements and prudential considerations. *Miller*, 912 F. Supp. 2d at 868.[2]  Among those prudential considerations, "a party must assert his own legal rights and interests."  *Id.* (citations omitted).  For a motion to dismiss, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  However, "[t]he party asserting the claim has the burden of establishing standing." *Miller*, 912 F. Supp. 2d at 868.

Dismissal is warranted under Fed. R. Civ. P. 8(a) and 12(b)(6) when a complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679 (citations omitted).  "'Threadbare recitals of the elements of a cause

---

[2] To satisfy the constitutional requirements for standing, the party invoking federal jurisdiction must have suffered an actual or threatened injury, the injury must be fairly traceable to the challenged conduct, and a favorable decision must likely redress or prevent the injury. *Id.*

MOT. TO DISMISS - No. 3:17-cv-05201-RBL – 5

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1   of action, supported by mere conclusory statements, do not suffice.'" *Denton v. Dep't Stores Nat'l*

2   *Bank*, No. C10-5830RBL, 2011 U.S. Dist. LEXIS 84024, at *4 (W.D. Wash. Aug. 1, 2011).

3   **II.    Plaintiffs Lack Standing To Pursue Claims For Vehicles They Did Not Purchase**

4          Plaintiffs purchased a 2013 Ford Escape Titanium, but impermissibly seek to pursue claims

5   related to sixteen different vehicle models, spanning over at least eight different model years, and

6   involving three different vehicle brands. Dkt. # 1 at pp. 4, 26 (Compl. ¶ 18, 69).  To pursue claims

7   for vehicles which they did not purchase, Plaintiffs must allege facts showing that those vehicles

8   are "substantially similar" to the Vehicle.  *See, e.g.*, *Coe v. Philips Oral Healthcare Inc.*, No. C13-

9   518-MJP, 2014 U.S. Dist. LEXIS 22983, at *11-12 (W.D. Wash. Feb. 24, 2014) ("[T]he

10  majority of federal courts [require that] the products . . .  are **substantially similar**.") (citations

11  omitted) (emphasis added); *Miller*, 912 F. Supp. 2d at 869-72 (same); *see also Lohr v. Nissan N.*

12  *Am., Inc.*, No. C16-1023RSM, 2017 U.S. Dist. LEXIS 38934, at *12-13 (W.D. Wash. Mar. 17,

13  2017) (considering whether vehicles had "sufficient similarity").  Plaintiffs have not.

14         Significantly, Plaintiffs fail to allege that the shapes, sizes, ***or even the suppliers of the***

15  ***panoramic sunroofs*** are the same among the different Ford, Lincoln, and Mercury cars, pick-ups,

16  and SUVs for which they seek to pursue claims.  *See* Dkt. #1 at pp. 4-11 (Compl. ¶¶ 18-30).

17  Indeed, while Plaintiffs allege that Ford used ***two different suppliers*** of panoramic sunroofs for

18  three different vehicle models (Ford Explorer, Edge, and Escape), they fail to allege which of these

19  suppliers, if any, were used for the remaining thirteen vehicle models. Dkt. #1 at p. 17 (Compl. ¶

20  42).  Simply, other than alleging that the sunroofs are made of glass and are "defective," Plaintiffs

21  have provided no facts showing a similarity among the different putative class vehicles.

22         Plaintiffs instead make a series of conclusory, non-specific allegations about panoramic

23  sunroofs and describe how these sunroofs are made by "manufacturers," "car makers," and the

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

"automotive industry."  *See* Dkt. #1 at pp. 7-11 (Compl. ¶¶ 23-30, 33).  Every now and then the word "Ford" is mentioned (with no mention of Lincoln or Mercury) in select paragraphs, but the allegations are devoid of any facts specific to Ford and its manufacturing and design of specific putative class vehicle panoramic sunroofs.  *Id.*  The conclusory allegations and absence of facts specific to Ford, Mercury, and Lincoln are telling.  Conclusory statements about the "automotive industry" are not the same as factual allegations specific to Ford and the putative class vehicles.  For example, Plaintiffs allege that automotive manufacturers "generally" use the same tempering process, but do not allege that Ford specifically used the process described in the Complaint.  Dkt. #1 at p. 10 (Compl. ¶¶ 26-30).  Similarly, Plaintiffs claim the glass in panoramic sunroofs may be too thin, but, again, do not allege that is an issue with Ford vehicles specifically.  Dkt. #1 at p. 10 (Compl. ¶ 27).

In a different panoramic sunroof class action filed in this District in which the alleged defect was the sunroofs' propensity to "spontaneously shatter," *Lohr v. Nissan*, the plaintiffs pled a "sufficient similarity" among the class vehicles.  But, the *Lohr* case is factually and legally distinguishable.  In *Lohr*, the court pointed to a similar alleged defect among seven different vehicle models and the fact that plaintiffs provided exemplar complaints for six of those seven vehicle models.  *See* 2017 U.S. Dist. LEXIS 38934 at *12-13.  Here, in contrast, Plaintiffs seek to include twice as many vehicle models (sixteen versus seven), for three different brands (three versus one).  Plaintiffs also allege that Ford used two different panoramic sunroof suppliers for three of the vehicle models, but fail to allege which, if *any*, of those suppliers were used for the remaining vehicles.  Dkt. #1 at p. 17 (Compl. ¶ 42).  In addition, Plaintiffs provide ***no complaints whatsoever*** regarding five models they seek to represent (Ford Mustang, Ford Transit Connect, Ford C-Max, Mercury Milan, Mercury Montego), provide only one complaint for two models

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

(Lincoln MKX and Lincoln MKS), and provide fewer than three complaints for three other models (Ford Fusion, Ford Flex, and Lincoln MKZ).  *See* Dkt. #1 at pp. 46-62 (Compl. Exhibit 1).

## III.  Plaintiffs' Breach Of Express Warranty Claim Fails

Plaintiffs' breach of express warranty claim should be dismissed because they did not seek a repair of the panoramic sunroof until after the warranty period expired.  And, contrary to Plaintiffs' conclusory allegations, Ford's warranty period is not unconscionable and does not cause the express warranty to fail its essential purpose.  Plaintiffs also have failed to plead that they notified Ford of its alleged breach of warranty.[3]

### A.  Plaintiffs Did Not Seek Repairs Within The Warranty Period

Plaintiffs allege that Ford breached its express warranty "by not correcting the defect" and by "refusing to honor the warranties[4] with free repairs or replacements **during the applicable warranty periods**."[5]  Dkt. #1 at p. 35 (Compl. ¶¶ 94-95).  In so doing, Plaintiffs acknowledge that under the terms of Ford's express warranty, consumers are only entitled to repair or replacement during "the applicable warranty period[]" of their express warranty.  Indeed, "[a] manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty."  *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992).

---

[3] A plaintiff "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  RCW § 62A.2-607(3)(a).  While Plaintiffs allege they brought the Vehicle into Mullenix Ford for repairs, they state that Mullenix Ford refused to provide free repairs or replacement because the Plaintiffs were outside of the warranty period.  Dkt. #1 at pp. 28-29 (Compl. ¶ 75).  Nowhere in the Complaint do Plaintiffs allege that they notified *Ford* of a breach of the warranty.  Rather, Plaintiffs simply conclude "Plaintiffs notified Ford of the breach within a reasonable time or were not required to do so."  But such threadbare recitals are insufficient.  *Denton*, 2011 U.S. Dist. LEXIS 84024 at *4 (citing *Iqbal*, 556 U.S. at 678).  Thus, Plaintiffs' express warranty claim should be dismissed.

[4] While Plaintiffs refer to "warranties," the only warranties described are the written warranties offered with Ford, Lincoln, and Mercury vehicles.  Dkt. #1 at p. 26 (Compl. ¶¶ 65-66).

[5] Plaintiffs provided a definition for "the Defect" as the "panoramic sunroofs' propensity to spontaneously shatter."  Dkt. #1 at p. 2 (Compl. ¶ 4).  They do not explain what "the defect" means in their allegation for breach of express warranty.  *See* Dkt. #1 at pp. 34-36 (Compl. ¶¶ 91-102).

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Plaintiffs allege that Ford vehicles are covered by a 3-year/36,000 bumper-to-bumper warranty. Dkt. #1 at p. 26 (Compl. ¶ 65).[6] Plaintiffs admit they purchased the Vehicle on September 25, 2012, but did not seek repairs under the warranty until February 8, 2017. Dkt. #1 at pp. 27-28 (Compl. ¶¶ 69, 72-75). Because Plaintiffs' express warranty ended more than a year before Plaintiffs sought repairs on their panoramic sunroof, Plaintiffs' breach of express warranty claim should be dismissed. *See, e.g.*, *In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 919 (9th Cir. 2014) (affirming dismissal of an express warranty claim that was brought after the expiration of the warranty period); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) ("The general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed." (citation omitted)).

### 1.    *Ford's Warranty Period Is Not Unconscionable*

Plaintiffs claim that the "time limits contained in Ford's warranty period were [] unconscionable and inadequate." Dkt. #1 at pp. 35-36 (Compl. ¶ 99). The burden is on the Plaintiffs to show that the warranty period is unconscionable. *See Tjart v. Smith Barney, Inc.*, 107 Wn. App. 855, 898, 28 P.3d 823, 830 (2001). Further, whether a limitation is unconscionable is a question of law. *See Veeder v. NC Mach. Co.*, 720 F. Supp. 847, 852 (W.D. Wash. 1989) (citing RCW § 62A.2-302). Washington courts have "distinguished between 'procedural' unconscionability, involving blatant unfairness in the bargaining process and a lack of meaningful choice, and 'substantive' unconscionability, or unfairness of the terms or results." *Torgerson v.*

---

[6] A copy of the warranty provided with the Vehicle is attached as Exhibit A. Because Plaintiffs rely on the warranty as a basis of their express warranty claim, this Court may consider the warranty itself. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."); *Leadbetter v. Comcast Cable Commc'ns, Inc.*, No. C05-0892RSM, 2005 U.S. Dist. LEXIS 45365, at *9 (W.D. Wash. Aug. 22, 2005) ("While matters outside the pleadings are generally not considered, documents referred to in the complaint and forming a basis for plaintiff's claim may be considered.").

MOT. TO DISMISS - No. 3:17-cv-05201-RBL – 9

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

*One Lincoln Tower, LLC*, 166 Wn.2d 510, 519, 210 P.3d 318, 322 (2009) (citations omitted).

Considerations of procedural unconscionability include "the manner in which the contract was

entered, whether each party had a reasonable opportunity to understand the terms of the contract,

and whether the important terms [were] hidden in a maze of fine print." *M.A. Mortenson Co., Inc.

v. Timberline Soft. Corp.*, 140 Wn.2d 568, 588, 998 P.2d 305, 315 (2000) (citations omitted).  For

substantive unconscionability, "such unfairness must truly stand out. 'Shocking to the conscience',

'monstrously harsh', and 'exceedingly calloused' are terms sometimes used to define substantive

unconscionability." *Torgerson*, 166 Wn.2d at 519, 210 P.3d at 322 (citations omitted).  Ford's

express warranty period is neither procedurally nor substantively unconscionable.

**Procedural Unconscionability:**  The warranty period is not procedurally unconscionable

because Plaintiffs had a meaningful choice.  Plaintiffs could have purchased a different vehicle, or

could have opted for an extended warranty.[7]  *See, e.g., Fisher v. Honda N. Am., Inc.*, No. 13-cv-

09285-JAK, 2014 U.S. Dist. LEXIS 84570, at *24-25 (C.D. Cal. June 12, 2014) (granting a motion

to dismiss and finding that procedural unconscionability was not established because the

manufacturer offered extended warranty options).  Moreover, there is no allegation that Plaintiffs

did not have an opportunity to understand the terms of the warranty, and the warranty period was

not hidden in a maze of fine print.  *See* Exhibit A at p. 8.  The warranty even provides an

explanation that the "Bumper to Bumper Coverage lasts for three years - unless you drive more

than 36,000 miles before three years elapse. In that case, your coverage ends at 36,000 miles." *Id.*

In fact, this very warranty period has been found to be procedurally conscionable.  *Smith*, 749 F.

---

[7] Ford offers an extended service plan to offer "protection after [the] Bumper to Bumper Warranty expires." *See* Exhibit A at p. 33.

MOT. TO DISMISS - No. 3:17-cv-05201-RBL – 10

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Supp. 2d at 993 (Ford's standard 3-year/36,000 mile warranty was not procedurally unconscionable).

**Substantive Unconscionability:**   Similarly, the warranty period is not substantively unconscionable because a standard year and mileage warranty period cannot be said to "shock the conscience" or to be "monstrously harsh." *See, e.g., Smith*, 749 F. Supp. 2d at 993 (Ford's standard 3-year/36,000 mile warranty was not unconscionable).   Further, Plaintiffs fail to allege that the alleged defect would manifest only after the warranty period.  *See, e.g., Fisher*, 2014 U.S. Dist. LEXIS 84570, at *27 (unconscionability was not met because, in part, plaintiff did not show the defect would manifest only after the warranty period).

The ruling in *Lohr* regarding unconscionability does not control.  The specific factual and legal arguments raised by Ford in this motion are distinct from those raised in *Lohr*.  An extended warranty was either not offered by Nissan, or was not argued by the Nissan defendants.  *See generally Lohr*, 2017 U.S. Dist. LEXIS 38934.  Further, the *Lohr* court relied upon an opinion decided under North Carolina law and did not analyze the factors for unconscionability considered by Washington courts.  *See id.* at *21-22 (citing *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 621-23 (M.D.N.C. 2006)) (finding unconscionability under North Carolina law but not discussing the factors concerning unconscionability considered by Washington courts or the existence of an extended warranty).  Ford respectfully submits that because (a) Washington law, not the law of North Carolina, should apply and (b) there is no indication that the Court considered the availability of an extended warranty option, as exists in this case, the ruling in *Lohr* should not apply here.  Significantly, the *Bussian* decision was deemed "distinguishable" in the *Smith* case, which concluded that the Ford warranty is not unconscionable.  *Smith*, 749 F. Supp. 2d at 994.

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

In sum, Ford's standard warranty does not "shock the conscience," Ford offered an extended warranty, the warranty period was not hidden in a "maze of fine print," and Plaintiffs do not allege that they did not have an opportunity to understand the terms of the warranty.

### 2.      *Ford's Warranty Does Not Fail Its Essential Purpose*

Plaintiffs' claim that Ford's express warranty fails its essential purpose because Ford replaces "its defectively designed panoramic sunroofs with identical defective sunroofs" is equally unavailing.  Dkt #1 at p. 35 (Compl. ¶ 98).  A repair or refund clause "is valid only if that remedy fulfills its 'essential purpose' **when the buyer seeks to enforce it**."  *Fiorito Bros., Inc. v. Fruehauf Corp.*, 747 F.2d 1309, 1312 (9th Cir. 1984) (emphasis added) (citing RCW § 62A.2-719(2)).  Because Plaintiffs did not seek to "enforce" Ford's express warranty within the warranty period, the warranty did not fail its essential purpose.  *Lohr* supports this result.  In *Lohr*, the court addressed whether Nissan's warranty failed its essential purpose solely in relation to the plaintiff who sought repairs during the warranty period, and ***not*** for the plaintiff who failed to present his vehicle for repair during the warranty period.  *See* 2017 U.S. Dist. LEXIS 38934 at *20-21.

## IV.   **Plaintiffs Have No Cognizable Breach Of Implied Warranty Of Merchantability Claim**

Plaintiffs have no cognizable implied warranty claim because Plaintiffs' claim is barred by the statute of limitations.  Moreover, Plaintiffs lack privity with Ford.

### A.      **Plaintiffs' Implied Warranty Claim Is Barred By The Statute Of Limitations**

"The statute of limitations for a breach of warranty claim is 'four years after the cause of action has accrued.'"  *Holbrook, Inc. v. Link-Belt Const. Equip. Co.*, 103 Wn. App. 279, 283, 12 P.3d 638, 641 (2000) (quoting RCW § 62A.2-725(1)).  A breach of warranty claim accrues when the goods are delivered to the buyer.  *Id.* (citing RCW § 62A.2-725(2)).  In fact, an implied warranty cause of action always begins to accrue on the date the product is delivered to the buyer

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

because implied warranties cannot be shown to extend to future performance.  *See id.* at n.5; *Blangeres v. United States Seamless, Inc.*, No. 2:13-cv-00260-SAB, 2015 U.S. Dist. LEXIS 165796, at *11 (E.D. Wash. Dec. 10, 2015) (citing *Western Recreational Vehicles, Inc. v. Swift Adhesives, Inc.*, 23 F.3d 1547, 1550-51 (9th Cir. 1994)).  Here, Plaintiffs purchased their vehicle on September 25, 2012, Dkt. #1 at p. 26 (Compl. ¶ 69), but they did not bring this lawsuit until more than four years later on March 16, 2017.

Moreover, Plaintiffs' tolling arguments are unavailing.  First, the discovery rule is inapplicable because "'[a] cause of action [for breach of warranty] accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.'"  *Holbrook*, 103 Wn. App. at 283, 12 P.3d at 641 (quoting RCW § 62A.2-725(2)).  Second, the tolling provisions cited by Plaintiffs are inapplicable here for the same reasons they do not apply to Plaintiffs' fraudulent concealment and WCPA claims.  *See* part V.A., *infra*.

**B.   Plaintiffs Lack Privity With Ford**

To bring a breach of implied warranty claim under Washington law, Plaintiffs must establish contractual privity with Ford.  *Tex. Enters., Inc. v. Brockway Standard, Inc.*, 149 Wn.2d 204, 214, 66 P.3d 625, 630 (2003).  While Washington recognizes a third-party beneficiary exception, this exception applies only if Plaintiffs show that Ford "knew the identity, purpose, and requirements of the [Plaintiffs]."  *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc.*, 119 Wn.2d 334, 345, 831 P.2d 724, 730 (1992) (citations omitted).

Here, Plaintiffs fail to allege any direct interaction with Ford and thus were not in privity. *See* Dkt. #1 at pp. 26-27 (Compl. ¶¶ 69-71).  Plaintiffs claim to have interacted with only Scarff Ford prior to their purchase of the Vehicle.  *Id.*  But interactions with a dealer do not establish privity under Washington law.  *E.g., Baughn v. Honda Motor Co.*, 107 Wn.2d 127, 151, 727 P.2d

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

655, 669 (1986) ("[P]rivity is absent here since [plaintiff] sued the manufacturer rather than the dealer."). Additionally, Plaintiffs have not pled any facts which would support a finding they are third-party beneficiaries. Specifically, they do not allege that Ford knew the identity of Plaintiffs, or the purpose or requirements of Plaintiffs' purchase. *See Touchet Valley Grain Growers*, 119 Wn.2d at 345, 831 P.2d at 730; Dkt. #1 at pp. 26-27 (Compl. ¶¶ 69-71). Similarly, Plaintiffs' conclusory allegations of "direct dealings" with Ford are inadequate as they allege no facts to support this conclusion. *See Denton*, 2011 U.S. Dist. LEXIS 84024 at *4. This same conclusory allegation was rejected in *Lohr*. 2017 U.S. Dist. LEXIS 38934 at *22-23.

## V.   Plaintiffs' Fraudulent Concealment And WCPA Claims Are Time-Barred

Plaintiffs' fraudulent concealment and WCPA claims are time-barred by the applicable statutes of limitations – three years for fraudulent concealment and four years for WCPA claims. *See* RCW § 4.16.080(4); § 19.86.120. Both claims are based on Ford's purported failure to disclose or concealment of the alleged sunroof defect. Dkt. #1 at pp. 36-37 (Compl. ¶¶ 105-07, 118). The allegations in Plaintiffs' Complaint demonstrate that Plaintiffs could have, by exercising due diligence, discovered this alleged failure to disclose or concealment by March 1, 2013 (at the latest).

The statute of limitations for fraud and WCPA claims accrues when the aggrieved party should have discovered through due diligence the alleged fraud and sustains some damage. *Conner v. Everhome Mortg. Co.*, 196 Wn. App. 1067, 2016 Wash. App. LEXIS 2799, at *15 (Wash. Ct. App. Nov. 21, 2016) (unpublished) (citations omitted); *Hudson v. Condon*, 101 Wn. App. 866, 875, 6 P.3d 615, 620 (2000) (citations omitted); *see also Shepard v. Holmes*, 185 Wn. App. 730, 743-44, 345 P.3d 786, 792 (2014) (finding that fraud and WCPA claims were time barred because plaintiff could have discovered with "due diligence" the alleged fraudulent

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1   behavior underlying both claims).[8]  The cause of action accrues even if the aggrieved party is not

2   aware of the full extent of the damages or if substantial damages occur later.  *Hudson*, 101 Wn.

3   App. at 875, 6 P.3d at 620.

4        When assessing a party's reasonable diligence, a court generally charges that party with

5   matters of public record.  *Sanders v. Sheets*, 142 Wash. 155, 158, 252 P. 531, 532 (1927); *see also*

6   *Allen v. State*, 118 Wn.2d 753, 759, 826 P.2d 200, 203-04 (1992) (plaintiff did not exercise

7   reasonable diligence in discovering her wrongful death claim when she failed to read "local

8   newspapers" which reported the conviction of her husband's murderers); *Bergeron v. Select*

9   *Comfort Corp.*, No. A-15-cv-00657-LY-ML, 2016 U.S. Dist. LEXIS 3418, at *13 (W.D. Tex. Jan.

10  11, 2016), *report and recommendation adopted sub nom. Bergeron*, No. 15-cv-657-LY, 2016 U.S.

11  Dist. LEXIS 128842 (W.D. Tex. Feb. 24, 2016) ("[R]easonable diligence requires that [plaintiffs]

12  make themselves aware of relevant information in the public record," which includes public

13  filings, case settlements and conveyances, and information available on the Internet) (citations

14  omitted).  Accordingly, in *Bergeron*, the court found that reasonable diligence would have alerted

15  the plaintiff to her claims concerning a moldy mattress by 2009 where the plaintiff's complaint

16  contained references to a 2004 article in a national publication, a Consumer Products Safety

17  Commission file that included a 2004 letter, and a 2009 website responding to consumer

18  allegations of mold problems.  *Id.* at *6-7.  This "readily accessible and publicly available"

19  information put plaintiff on constructive notice of her claims.  *Id.*

20       Here, Plaintiffs' fraudulent concealment and WCPA claims accrued no later than March 1,

21  2013.  Plaintiffs claim they failed to receive the "benefit of their bargain" the day they purchased

---

[8] "While the determination of when a plaintiff suffered actual damage is a question of fact, the issue can be decided as a matter of law if reasonable minds could reach but one conclusion."  *Hudson*, 101 Wn. App. at 875, 6 P.3d at 620 (citations omitted).

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

the Vehicle, September 25, 2012.  Dkt. #1 at p. 26 (Compl. ¶ 69).  And, as in *Bergeron*, the

Plaintiffs' Complaint includes information in the public record, including government agency

filings, publications, and information on the Internet.  Specifically, as of March 1, 2013, the

following was publicly available and provided by Plaintiffs in their Complaint:

- Twenty-five complaints reported on NHTSA's website related to panoramic sunroofs shattering in Ford vehicles. Dkt. #1 at pp. 46-50 (Compl. Exhibit 1).

- Nine complaints reported on NHTSA's website related to panoramic sunroofs shattering in Ford Escapes, the type of vehicle purchased by Plaintiffs.[9] *Id.*

- Three months after Plaintiffs purchased the Vehicle, a Wall Street Journal article covered "reports of glass spontaneously shattering" in panoramic sunroofs.  Dkt. #1 at p. 16 (Compl. ¶ 38) (citing Neil Parmar, *Supersizing the Sunroof, Even in Economy Cars*, Wall St. J. (December 11, 2012)).

- Hyundai's public recall of panoramic sunroofs, which occurred in December 2012 and in February 2013.[10]  *See* Dkt. #1 at p. 24 (Compl. ¶ 56); *see also* NHTSA Campaign Numbers 12V568000 and 13V051000, available at https://www.nhtsa.gov/vehicle/2012/HYUNDAI/VELOSTER/2%252520DR/FW D#recalls.

- Volkswagen of America, Inc.'s recall of Audi Q5s on June 28, 2012 for panoramic sunroof panels that were "susceptible to breakage." *See* Dkt. #1 at p. 24 (Compl. ¶ 57); *see also* NHTSA Campaign Number 12V299000, available at https://www.nhtsa.gov/vehicle/2012/AUDI/Q5/SUV/AWD.

There were also several additional sources of publicly available information:

- NHTSA's investigation of "panoramic sunroof breakage" in Hyundai Veloster vehicles from October 2, 2012 to February 21, 2013. NHTSA Action Number PE12027.

- Blog posts concerning shattering sunroofs.  *See, e.g., Panoramic moonroof just shattered* (beginning March 13, 2005), available at http://www.nissanforums.com/x-trail/88356-panoramic-moonroof-just-shattered.html; Rachel Smith, *Audi Q5 Recalled Because of Breakable Sunroof*, U.S. News & World Report (July 5, 2012), available at

---

[9] Twelve complaints related to Ford Escapes were reported by March 1, 2014.  *See* Dkt. #1 at pp. 46-52 (Compl. Exhibit 1).  Six were reported to NHTSA before Plaintiffs even purchased the Vehicle in September 2012.  *Id.*

[10] While actions by other manufacturers are irrelevant to Plaintiffs' claims against Ford, to the extent actions of other manufacturers are relied upon by Plaintiffs to show Ford's alleged knowledge of a defect, they should be equally indicative of knowledge reasonably held by Plaintiffs.

MOT. TO DISMISS - No. 3:17-cv-05201-RBL – 16

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

https://cars.usnews.com/cars-trucks/best-cars-blog/2012/07/audi-q5-recalled-because-of-breakable-sunroof.

• News articles related to shattering sunroofs. *See, e.g.,* Monica Laliberte, *Without warning, sunroofs shatter into 'a million pieces'*, WRAL.com (November 1, 2012), http://www.wral.com/without-warning-sunroofs-shatter-into-a-million-pieces-/11728208/; Truman Lewis, *Lawsuit says Hyundai Veloster sunroof "explodes without warning"*, Consumer Affairs (January 17, 2013), https://www.consumeraffairs.com/news/lawsuit-says-hyundai-veloster-sunroof-explodes-without-warning-011713.html.

Plaintiffs had access to this information and cite much of it in the Complaint.  Plaintiffs admit that they conducted research on the Internet, where this information was available.  Dkt. #1 at pp. 12-15, 26-27 (Compl. ¶¶ 34, 70).  As in *Bergeron*, there was at least one national publication on the issue, as well as additional information available on the Internet.  *Bergeron*, 2016 U.S. Dist. LEXIS 3418, at *16.   Because Plaintiffs did not file suit until more than four years after March 1, 2013, their causes of action with limitations periods of three and four years are time-barred.

A.   **Plaintiffs' Tolling Arguments Fail**

Plaintiffs' tolling arguments fail because Plaintiffs do not carry their burden of pleading facts sufficient to support tolling.  *Rivas v. Overlake Hosp. Med. Ctr.*, 164 Wn.2d 261, 268, 189 P.3d 753, 755 (2008).

**Discovery Rule:**  The discovery rule is effectively codified within the statutes of limitation for fraudulent concealment and WCPA claims.  *See Shepard*, 185 Wn. App. at 739, 345 P.3d at 790.  As explained above, because Plaintiffs failed to exercise due diligence, the discovery rule does not apply.

**Active Concealment Tolling:**  Tolling for "active" or "fraudulent" concealment requires plaintiffs to demonstrate that they exercised due diligence and that the defendant "engaged in affirmative conduct that would lead a reasonable person to believe that no claim for relief existed." *Vollstedt v. Tegman*, 155 Wn. App. 1023, 2010 Wash. App. LEXIS 730, at *6 (Wash. Ct. App.

MOT. TO DISMISS - No. 3:17-cv-05201-RBL – 17

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Apr. 12, 2010) (unpublished) (citing *August v. U.S. Bancorp*, 146 Wn. App. 328, 348, 190 P.3d 86 (2008)); *see also Giraud v. Quincy Farm and Chemical*, 102 Wn. App. 443, 455, 6 P.3d 104, 111 (2000) ("Fraudulent concealment [tolling] cannot exist if a plaintiff has knowledge of the evidence of an alleged defect . . . .  Additionally, they are required to demonstrate that they were reasonably diligent in their efforts to discover [the allegedly withheld information.]" (citations omitted)).  As shown above, Plaintiffs failed to exercise due diligence.  In addition, Plaintiffs have not alleged any non-conclusory affirmative action that Ford took to conceal the alleged defect.  *See Kondash v. Kia Motors Am.* No. 1:15-cv-00506, 2016 U.S. Dist. LEXIS 185184, at *57 n.27 (June 24, 2016 S.D. Ohio) (finding that active concealment doctrine did not apply because Kia did not engage in "something of an affirmative character" to prevent discovery of the alleged sunroof defect).

**Estoppel:**   "The elements [of equitable estoppel] to be proved are: first, an admission, statement, or act inconsistent with a claim afterward asserted; second, action by another in reasonable reliance on that act, statement, or admission; and third, injury to the party who relied if the court allows the first party to contradict or repudiate the prior act, statement, or admission." *Robinson v. Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318 (1992) (citation omitted).  None of those elements have been pled here.  Further, the plaintiff must point to some active conduct beyond the wrongdoing on which the claim is based.  *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008).  Plaintiffs have not done so here.

**Equitable Tolling:**  The predicates for equitable tolling are "bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff."  *In re Pers. Restraint of Bonds*, 165 Wn.2d 135, 141, 196 P.3d 672, 676 (2008); *see also O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1112 (9th Cir. 2006) ("Equitable tolling is generally applied in situations 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

statutory period [i.e., exercises diligence], or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass [i.e., engages in deception, bad faith, or false assurances].'" (citation omitted)).  Further, the doctrine of equitable tolling should be used "sparingly." *In re Pers. Restraint of Bonds*, 165 Wn.2d at 141, 196 P.3d at 676. Again, Plaintiffs did not exercise reasonable diligence and do not allege that special circumstances warrant equitable tolling.

**VI.    Plaintiffs Do Not Sufficiently Plead That Ford Had Knowledge Of The Alleged Defect**

Plaintiffs' fraudulent concealment and WCPA claims should be dismissed because Plaintiffs fail to sufficiently plead that Ford had knowledge of the purported defect.  "A party can establish fraudulent concealment or misrepresentation . . . [by] . . . show[ing] that the defendant breached an affirmative duty to disclose a material fact." *Wurts v. City of Lakewood*, No. C14-5113-BHS, 2015 U.S. Dist. LEXIS 56337, at *27 (W.D. Wash. Apr. 29, 2015) (citation and internal quotations omitted).  To do so, plaintiff must ***first*** establish that the defendant had knowledge of the allegedly concealed or withheld fact. *See Gaines v. Jordan*, 64 Wn.2d 661, 664, 393 P.2d 629, 631 (1964); *Rokkan v. Gesa Credit Union*, 165 Wn. App. 1025, 2012 Wash. App. LEXIS 26, at *11-12 (Wash. Ct. App. Jan. 10, 2012) (unpublished).  Similarly, "[t]o prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 204 P.3d 885, 889 (2009) (citations omitted).  A "'[k]nowing failure to reveal something of material importance is 'deceptive' within the CPA.'" *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 75, 170 P.3d 10, 18 (2007) (emphasis added) (citations omitted).  Plaintiffs' fraudulent concealment and WCPA claims are premised on the theory that Ford had superior

MOT. TO DISMISS - No. 3:17-cv-05201-RBL – 19

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

knowledge of the alleged defect and did not disclose it.  *See, e.g.*, Dkt. #1 at pp. 25, 37, 39 (Compl. ¶¶ 60-61, 106, 118).[11]  Thus, Plaintiffs' fraudulent concealment claim and WCPA claims both require that Plaintiffs sufficiently plead that Ford had knowledge of the alleged defect.

Because the facts alleged by Plaintiffs are insufficient as a matter of law to establish that Ford had knowledge of a product "defect," their claims should be dismissed.  *See, e.g., Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 103 (3d Cir. 2013) (dismissing claims for not adequately alleging knowledge of a vehicle defect); *Utica Nat'l Ins. Grp. v. BMW of N. Am., LLC*, 45 F. Supp. 3d 157, 162 (D. Mass. 2014) (same); *McQueen v. BMW of N. Am., LLC*, No. 12-06674, 2014 U.S. Dist. LEXIS 21084, at *17 (D.N.J. Feb. 20, 2014) (same); *Herremans v. BMW of N. Am., LLC*, No. CV 14-02363, 2014 U.S. Dist. LEXIS 145957, at *58-59 (C.D. Cal. Oct. 3, 2014) (same); *Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-CV-1142, 2013 U.S. Dist. LEXIS 33387, at *19-25 (C.D. Cal. Feb. 19, 2013) (same); *see also Williams v. Yamaha Motor Corp., U.S.A.*, 106 F. Supp. 3d 1101, 1112-16 (C.D. Cal. 2015) (dismissing a WCPA claim where plaintiff failed to adequately allege knowledge of the purported defect at the time of sale); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 927 (N.D. Cal. 2012) (same).

Plaintiffs claim that Ford had knowledge from approximately 150 "sunroof shattering complaints" for MY 2011-2014 Ford Explorers, 2011-2014 Ford Edges, and 2013-2014 Ford Escapes and from 99 publicly available complaints reported to NHTSA.  Dkt. #1 at p. 2 (Compl. ¶¶ 6, 44).[12]  They do not allege whether there is overlap between these complaints.  *See id.*  And, with respect to the "exemplar" complaints provided in Exhibit 1, Plaintiffs fail to address the

---

[11] While Plaintiffs mention Ford allegedly replaced panoramic sunroofs with "equally defective panoramic sunroofs," Dkt. #1 at p. 39 (Compl. ¶ 118), Plaintiffs do not allege that this occurred to them, and thus, such an allegation cannot form the basis of their WCPA claim.  *Iqbal*, 556 U.S. at 678; *Denton*, 2011 U.S. Dist. LEXIS 84024.

[12] According to Plaintiffs' Complaint, Ford sold nearly 563,000 of those vehicles.  150 purported complaints out of 563,000 vehicles sold amounts to an alleged an incidence rate of only 0.0272%, or 1 out of every 3,679 vehicles sold.

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

numerous differences and variation among the complaints. *Compare, e.g.,* Dkt. #1 at pp. 46-62 (Compl. Exhibit 1), "#" 6 ("sunroof shattered . . . while truck was sitting **in garage**") *with* "#" 12 ("**driving 35 mph** the sun roof exploded **inside** the vehicle") *with* "#" 37 ("traveling on the hwy at **70 mph** . . . . My **rear** panoramic glass had shattered **and blown upward**") *with* "#" 42 ("driving **70 mph** . . . sunroof had a huge hole **in middle of it**") *with* "#" 56 ("the **front pane** of the glass in the sunroof exploded **into cabin**") *and with* "#" 63 ("glass shattered **along the front edge**") (emphasis added in each).

Plaintiffs do not provide any complaints for many vehicles which they seek to include in their class, and provide only 20 complaints which predate their purchase of the Vehicle. *Id.*; *see also* part II, *supra*. As to the 150 complaints reported by Ford, Plaintiffs make no allegation of when these complaints were made or what they allege. Dkt. #1 at pp. 18-19 (Compl. ¶ 44).

But consumer complaints cannot salvage Plaintiffs' claims because such complaints "are insufficient to show that [the manufacturer] had knowledge [of the defect]." *E.g., Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) (quoting *Berenblat v. Apple, Inc.*, Nos. 08–4969 JF (PVT), 09–1649 JF (PVT), 2010 U.S. Dist. LEXIS 46052, at *27 (N. D. Cal. Apr. 9, 2010). This is true even where plaintiffs have alleged large numbers of complaints. *See, e.g.*, *Gotthelf*, 525 F. App'x at 104 (more than 2,200 complaints sent to NHTSA or defendant and 27,600 warranty claims made to defendant); *Marcus v. Apple Inc.*, No. C 14-03824 WHA, 2015 U.S. Dist. LEXIS 2140, at *6 (N.D. Cal. Jan. 8, 2015) (more than 365 reviews of product failures and a web page listing more than 140,000 failures); *Berenblat*, 2010 U.S. Dist. LEXIS 46052, at *27-28 (allegation of more than 350 complaints was insufficient).

Plaintiffs' other allegations concerning the purported basis of Ford's knowledge are equally unavailing. Plaintiffs refer to a December 2012 Wall Street Journal article and a 2013 article

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

written by Korean researchers, Dkt. #1 at pp. 11, 16 (Compl. ¶¶ 31, 38), but they fail to allege that Ford knew of these articles, or that those articles are related to Ford vehicles.  These articles were also published <u>after</u> Plaintiffs purchased the Vehicle.  Plaintiffs additionally reference a NHTSA investigation into Kia Sorento panoramic sunroofs, but do not explain how an investigation into unrelated vehicles manufactured by a completely unrelated company imbued Ford with knowledge of a defect.[13]  Finally, Plaintiffs allege that Ford was put on notice of the alleged defect through its internal tracking of complaints, dealer communications, and warranty claims;[14] its "exclusive access" to pre-release testing; and a previous complaint filed against it.[15]  *See* Dkt. #1 at pp. 19-20, 42 (Compl. ¶¶ 45, 134).  Such allegations are insufficient as a matter of law to establish Ford's knowledge.  *See, e.g.*, *Wilson*, 668 F.3d at 1146 (a prior class action involving the same alleged defect did not show knowledge); *Williams*, 106 F. Supp. 3d at 1112-16 (access to engineering data, consumer complaints, and warranty claims could not lead to an inference of knowledge of the alleged defect); *Herremans*, 2014 U.S. Dist. LEXIS 145957 at *54 ("[G]eneral reference to 'internal testing, records of customer complaints, dealership repair records, and other internal sources' provides little, if any, factual foundation [for plaintiffs'] conclusion that BMW knew of the defect.") (citations omitted); *Grodzitsky*, 2013 U.S. Dist. LEXIS 33387, at *19 ("Plaintiffs' generalized assertion that unspecified 'pre-release testing data' and 'aggregate data from Honda dealers' fails to suggest how this information could have informed Defendant of the alleged defect at the time of sale.").  Plaintiffs' fraudulent concealment and WCPA claims should be dismissed.

[13] As part of this investigation, NHTSA requested information from Ford, but only "[f]or a comparative assessment." *See* Dkt. #1 at p. 63 (Compl. Exhibit 2).

[14] These internally collected complaints, dealer communications, and warranty claims appear to be subsumed in the 150 consumer complaint count. *See generally* Dkt. #1 at pp. 18-20 (Compl. ¶¶ 44-45).

[15] That complaint was dismissed after 15 days, and approximately three years after Plaintiffs purchased the Vehicle. *See* Notice of Voluntary Dismissal, *Krebsbach, et al. v. Ford Motor Company*, Case No. 2:16-cv-02200 (Sept. 30, 2016 E.D. Cal.), ECF Dkt. #5.

MOT. TO DISMISS - No. 3:17-cv-05201-RBL – 22

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

## VII.   Plaintiffs' WCPA Claim Also Fails Because Plaintiffs Cannot Show The Alleged Omission Was Likely To Mislead

The WCPA proscribes unfair or deceptive acts, including "'representation[s], omission[s] or practice[s] that [are] **likely to mislead' a reasonable consumer**."  *Panag*, 166 Wn.2d at 50, 204 P.3d at 895 (citations omitted) (emphasis added).  Plaintiffs' claim for violations of the WCPA should be dismissed because a reasonable person would not expect to be told of a purported defect based on an incidence rate of less than 0.1%, particularly given the fact that glass shatters in the absence of "a defect."   Because no reasonable consumer would expect Ford to disclose this information, Ford's alleged failure to disclose cannot be misleading as a matter of law.

Consumers are well aware that "[d]efects can, and do, arise with complex instrumentalities such as automobiles."  *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 794 (N.J. 2005).[16] It is precisely for this reason that vehicle manufacturers, including Ford, uniformly provide limited warranties and that customers often buy extended warranties for additional protection.  *See, e.g.*, *Cosman v. Ford Motor Co.,* 674 N.E.2d 61, 68 (Ill. Ct. App. 1996).  Because of the ubiquity of "defects" – and the malleability of that term – courts generally require more than a bare allegation of a "defect," untethered to some other objective measure.  *See Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879, 888 (Mass. 2008); *see also Tincher v. Omega Flex*, 104 A.3d 328, 384 (Pa. 2014). At most, Plaintiffs have pled that glass sunroofs have a propensity to shatter – an unremarkable statement given that glass breaks for any number of reasons independent of the existence of a defect.  Something more than "glass sunroofs break" should be pled to support a conclusory allegation of the existence of a defect.

---

[16] *See also, e.g.*, Press Release, J.D. Power, *Technology Woes Continue to Drive Up Problems: J.D. Power Vehicle Dependability Study*, (Feb. 24, 2016), *available at* http://www.jdpower.com/press-releases/2016-us-vehicle-dependability-study-vds (noting that the vehicle ranked highest for dependability in 2015 experienced 95 problems per 100 vehicles, and the industry average was 152 problems per 100 vehicles).

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

In this case, Plaintiffs allege that Ford received approximately 150 unsubstantiated complaints of glass shattering within a universe of 563,000 Subject Vehicles, which amounts to an alleged incidence rate of less than 0.1%. Without any allegations regarding the standard failure rate in the industry, or some other objective measure to weigh the alleged defect against, the mere allegation that less than 0.1% of vehicles experienced a shattered sunroof is not something a reasonable consumer would expect to be told. Accordingly, the alleged nondisclosure of that fact is not misleading. *See Munch v. Sears Roebuck & Co.*, No. 06-cv-7023, 2007 U.S. Dist. LEXIS 62897, at *11 (N.D. Ill. Aug. 27, 2007) (dismissing plaintiffs' WCPA claims for failing to plead materiality where plaintiff only alleged that washing machines had "high incidence of repair" and "high number of complaints" but did not provide "standard rate of failure in the industry for comparable machines produced by comparable manufacturers").

**VIII.   Conclusion**

For the foregoing reasons, Ford respectfully requests that its Motion to Dismiss be granted.

MOT. TO DISMISS - No. 3:17-cv-05201-RBL – 24

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

DATED:  May 17, 2017.

MILLS MEYERS SWARTLING P.S.
Attorneys for Defendant Ford Motor Company

By: */s/Caryn Geraghty Jorgensen*
Caryn Geraghty Jorgensen, WSBA # 27514
John Fetters, WSBA # 40800
Brett MacIntyre, WSBA # 46572
Mills Meyers Swartling
1000 2nd Ave, 30th Floor
Seattle, WA  98104
Phone: 206-382-1000
cjorgensen@millsmeyers.com
jfetters@millsmeyers.com

ALSTON & BIRD LLP
Attorneys for Defendant Ford Motor Company

Cari K. Dawson, Admitted *Pro Hac Vice*
Bradley M. Strickland, Admitted *Pro Hac Vice*
Alston & Bird LLP
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Phone: 404-881-7000
cari.dawson@alston.com
brad.strickland@alston.com

SLATTERY PETERSEN PLLC
Attorneys for Defendant Ford Motor Company

Bradley W. Petersen, Admitted *Pro Hac Vice*
Slattery Petersen, PLLC
2828 N. Central Avenue, Suite 1111
Phoenix, AZ  85004
Phone: 602-507-6108
bpetersen@slatterypetersen.com

TURNER REID
Attorneys for Defendant Ford Motor Company

Sherry A. Rozell, Admitted *Pro Hac Vice*
Turner Reid
1355 E. Bradford Parkway, Suite A
Springfield, MO  65806
Phone: 417-883-2120
srozell@trdlp.com

MOT. TO DISMISS - No. 3:17-cv-05201-RBL – 25

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

Mitchell M. Breit, mbreit@simmonsfirm.com, jlucena@simmonsfirm.com

Gregory F. Coleman, greg@gregcolemanlaw.com, dawn@gregcolemanlaw.com

Adam A. Edwards, adam@gregcolemanlaw.com, jackie@gregcolemanlaw.com

Paul J. Hanly, Jr., phanly@simmonsfirm.com

Brittany A. Madderra, bmadderra@terrellmarshall.com, bkinsey@terrellmarshall.com, docketrequests@terrellmarshall.com, enordby@terrellmarshall.com, hrota@terrellmarshall.com, filing@terrellmarshall.com

Mark E. Silvey, mark@gregcolemanlaw.com, connie@gregcolemanlaw.com

Amanda M. Steiner, asteiner@terrellmarshall.com bkinsey@terrellmarshall.com, docketrequests@terrellmarshall.com, enordby@terrellmarshall.com, hrota@terrellmarshall.com, filing@terrellmarshall.com

Beth E. Terrell, bterrell@terrellmarshall.com, bkinsey@terrellmarshall.com, docketrequests@terrellmarshall.com, enordby@terrellmarshall.com, hrota@terrellmarshall.com, filing@terrellmarshall.com

Lisa A. White, lisa@gregcolemanlaw.com, dcoleman@gregcolemanlaw.com

I further certify that I mailed a true and correct copy of the foregoing to the following non-CM/ECF participant:

N/A

DATED this 17th day of May 2017.

_____
Legal Assistant

MOTION TO DISMISS
No. 3:17-cv-05201-RBL

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343