THE HONORABLE RONALD B. LEIGHTON

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

JACOB BEATY and JESSICA BEATY, on
behalf of themselves and all others similarly
situated,

                    Plaintiffs,

        vs.

FORD MOTOR COMPANY,

                    Defendant.

NO. 3:17-cv-05201 RBL

**PLAINTIFFS' RESPONSE TO
DEFENDANT FORD MOTOR
COMPANY'S MOTION TO DISMISS**

JURY TRIAL DEMAND

ORAL ARGUMENT REQUESTED

**Terrell Marshall Law Group PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ............................................................................................1

II.     STATEMENT OF FACTS ...........................................................................2

        A.      Plaintiff and at least dozens of other Ford drivers have experienced
                spontaneously shattering sunroofs.................................................2

        B.      Ford's panoramic sunroofs have a common defect that causes them
                to shatter ......................................................................................3

        C.      Ford has known about the problem with its panoramic sunroofs but
                conceals it ....................................................................................4

        D.      Plaintiffs' claims.........................................................................5

III.    ARGUMENT .................................................................................................5

        A.      Plaintiffs may assert claims relating to all affected vehicles............5

        B.      Plaintiffs sufficiently allege Ford's knowledge of the
                defective sunroofs.........................................................................9

        C.      Plaintiffs state a claim for violation of the Consumer Protection Act............12

        D.      Plaintiffs' fraudulent concealment and CPA claims are not time barred .......15

        E.      Plaintiffs state a claim for breach of express warranty.................17

        F.      Plaintiffs state a claim for breach of implied warranty .................21

IV.     CONCLUSION ............................................................................................23

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Ashcroft v. Iqbal*,
    56 U.S. 662 (2009) ...................................................................................5

*Avedisian v. Mercedes–Benz USA LLC*,
    CV 12–00936 DMG (CWx), 2013 WL 2285237 (C.D. Cal. May 22, 2013)..............9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................5

*Bergeron v. Select Comfort Corp.*,
    No. A-15-cv-00657-LY-ML, 2016 WL 155088 (W.D. Tex. Jan. 11, 2016) ............16

*Berenblat v. Apple, Inc.*,
    Nos. 08-4969 JF (PVT), 09-1649 JF (PVT),
    2010 WL 1460297 (N.D. Cal. Apr. 9, 2010)............................................12

*Bussian v. DaimlerChrysler Corp.*,
    411 F. Supp. 2d 614 (M.D.N.C. 2006) ...............................................17, 18

*Carideo v. Dell, Inc.*,
    706 F. Supp. 2d 1122 (W.D. Wash. 2010) ..........................................6, 23

*Carlson v. Gen. Motors Corp.*,
    883 F.2d 287 (4th Cir. 1989) ........................................................19

*Cats v. Monaco RV, LLC*,
    No. C 14-1484-JCC, 2016 WL 5253204 (W.D. Wash. Sept. 22, 2016) ...................21

*Cirulli v. Hyundai Motor Co.*,
    No. SACV 08-0854 AG, 2009 WL 5788762 (C.D. Cal. June 12, 2009) ...................9

*City of Roseville E'ees' Ret. Sys. v. Sterling Fin. Corp.*,
    963 F. Supp. 2d 1092 (E.D. Wash. 2013)...............................................23

*Clancy v. Bromley Tea Co.*,
    308 F.R.D. 564 (N.D. Cal. 2013) ......................................................5, 6

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) .........................................................18

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION TO DISMISS - ii
CASE No. 3:17-cv-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Coe v. Philips Oral Healthcare Inc.*,
    No. C13-518-MJP, 2014 WL 722501 (W.D. Wash. Feb. 24, 2014) ........................... 8

*Cousins v. Lockyer*,
    568 F.3d 1063 (9th Cir. 2009) .................................................................... 5, 8

*Donohue v. Apple, Inc.*,
    871 F. Supp. 2d 913 (N.D. Cal. 2012) ........................................................ 11

*Ehrlich v. BMW of N. Am., LLC*,
    801 F. Supp. 2d 908 (C.D. Cal. 2010) ....................................................... 23

*Falk v. Gen. Motors Corp.*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) ....................................................... 9

*Glenn v. Hyundai Motor America*,
    No. SACV 15-2052-DOC, 2016 WL 3621280 (C.D. Cal. June 24, 2016) ........... 8, 14

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
    525 F. App'x 94 (3d Cir. 2013) ................................................................ 11

*Grodzitsky v. Am. Honda Motor Co.*,
    No. 2:12-CV-1142-SVW-PLA, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ........... 11

*Herremans v. BMW of N. Am., LLC*,
    No. CV 14-02363 MMM (PJWx)
    2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) ................................................ 11

*Horvath v. LG Elec. Mobilecomm U.S.A., Inc.*,
    No. 3:11-cv-01576-H-RBB, 2012 WL 2861160 (S.D. Cal. Feb. 13, 2012) ......... 20, 22

*Iannacchino v. Ford Motor Co.*,
    888 N.E.2d 879 (Mass. 2008) .................................................................. 14

*In re Caterpillar, Inc. C13 & C15 Engine Prods. Liab. Litig.*,
    No. 1:14-cv-3722 (JBS-JS), 2015 WL 4591236 (D.N.J. July 29, 2015) ................... 19

*In re Sony PS3 & Other OS Litig.*,
    551 F. App'x 916 (9th Cir. 2014) .............................................................. 18

*In re Toyota Motor Corp. Unintended Acceleration Mktg.,*
*Sales Practices & Prods. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ...................................................... 22

*Jones v. Porsche Cars N. Am., Inc.*,
    No. CV 15-5766-GW (SSX), 2015 WL 11995257 (C.D. Cal. Oct. 15, 2015) ............. 6

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION TO DISMISS - iii
CASE NO. 3:17-cv-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Kondash v. Kia Motors Am., Inc.*,
    No. 1:15-cv-00506-SJD (S.D. Ohio June 24, 2016)....................................................14

*Lohr v. Nissan N. Am., Inc.*,
    No. C16-1023RSM, 2017 WL 1037555 (W.D. Wash. Mar. 17, 2017) .............*passim*

*Marcus v. Apple Inc.*,
    No. C 14-03824 WHA, 2015 WL 151489 (N.D. Cal. Jan. 8, 2015) .........................11

*McQueen v. BMW of N. Am., LLC*,
    No. 12-06674 (SRC), 2014 WL 656619 (D.N.J. Feb. 20, 2014) ...............................12

*Melendres v. Arpaio*,
    784 F.3d 1254 (9th Cir. 2015) ......................................................................................6

*Milgard Tempering, Inc. v. Selas Corp. of Am.*,
    902 F.2d 703 (9th Cir. 1990) ......................................................................................20

*Munch v. Sears Roebuck & Co.*,
    No. 06-cv-7023, 2007 WL 2461660 (N.D. Ill. Aug. 27, 2007)............................14, 15

*Philippine Nat'l Oil Co. v. Garrett Corp.*,
    724 F.2d 803 (9th Cir. 1984) ......................................................................................19

*Philips v. Ford Motor Co.*,
    No. 14-CV-02989-LHK, 2015 WL 4111448 (N.D. Cal. July 7, 2015).............6, 7, 16

*Porcell v. Lincoln Wood Prods., Inc.*,
    No. Civ-08-0617 MAC/LFG, 2010 WL 1541264 (D.N.M. Mar. 31, 2010) .............20

*Round Gold LLC v. Ameron Int'l Corp.*,
    No. C07-791Z, 2008 WL 3288408 (W.D. Wash. Aug. 7, 2008) ...............................21

*Smith v. Ford Motor Co.*,
    749 F. Supp. 2d 980 (N.D. Cal. 2010).........................................................................18

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ......................................................................................5

*Strickler v. Peterbilt Motors Co.*,
    No. Civ. A. 04-3628, 2005 WL 1266674 (E.D. Pa. May 27, 2005)...........................19

*Szymczak v. Nissan N. Am., Inc.*,
    No. 10-cv-7493 (VB), 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) .......................17

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Thiedemann v. Mercedes-Benz USA, LLC,*
    872 A.2d 783 (N.J. 2005) ...............................................................15

*Utica Nat'l Ins. Group v. BMW of N. Am., LLC,*
    45 F. Supp. 3d 157 (D. Mass. 2014)...........................................11

*Williams v. Yamaha Motor Corp., U.S.A.,*
    106 F. Supp. 3d 1101 (C.D. Cal. 2015) .....................................11

*Wilson v. Hewlett-Packard Co.,*
    668 F.3d 1136 (9th Cir. 2012) ...................................................10

**STATE CASES**

*Allen v. State,*
    118 Wn.2d 753, 826 P.2d 200 (1992) ........................................16

*August v. U.S. Bancorp,*
    146 Wn. App. 328, 190 P.3d 86 (2008).....................................23

*Baughn v. Honda Motor Co., Ltd.,*
    107 Wn.2d 127, 727 P.2d 655 (1986) ........................................22

*Brinkerhoff v. Campbell,*
    99 Wn. App. 692, 994 P.2d 911 (2000).....................................22

*Giraud v. Quincy Farm & Chem.,*
    102 Wn. App. 443, 6 P.3d 104 (2000)........................................22

*Hudson v. Condon,*
    101 Wn. App. 866, 6 P.3d 615 (2000)........................................17

*Kasey v. Suburban Gas Heat of Kennewick, Inc.,*
    60 Wn.2d 468, 374 P.2d 549 (1962) ..........................................21

*Klem v. Wash. Mut. Bank,*
    176 Wn.2d 771, 295 P.3d 1179 (2013) ......................................12

*La Hue v. Coca-Cola Bottling, Inc.,*
    50 Wn.2d 645, 314 P.2d 421 (1957) ....................................20, 21

*Mellon v. Regional Trustee Serv. Corp.,*
    182 Wn. App. 476, 334 P.3d 1120 (2014).................................12

*Nelson v. McGoldrick,*
    127 Wn.2d 124, 896 P.2d 1258 (1995) ......................................19

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION TO DISMISS - v
CASE NO. 3:17-cv-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Panag v. Farmers Ins. Co. of Wash.*,
    166 Wn.2d 27, 204 P.3d 885 (2009) ....................................................................12, 14

*Shepard v. Holmes*,
    185 Wn. App. 730, 345 P.3d 786 (2014)..................................................................17

*Tex. Enter., Inc. v. Brockway Standard, Inc.*,
    149 Wn.2d 204, 66 P.3d 625 (2003) .......................................................................22

*Wood v. Gibbons*,
    38 Wn. App. 343, 685 P.2d 619 (1984)...................................................................23

## STATE STATUTES

RCW 19.86.020...........................................................................................................14

RCW 19.86.920...........................................................................................................14

RCW 62A.2-302...........................................................................................................18

RCW 62A.2-607...........................................................................................................20

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION TO DISMISS - vi
Case No. 3:17-cv-05201 RBL

**Terrell Marshall Law Group PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# I. INTRODUCTION

Defendant Ford Motor Company has refused to acknowledge a dangerous defect in the panoramic sunroof unit that is installed in many of its vehicles. The defective nature of the sunroof causes it to shatter—suddenly, violently, and without warning—raining shards of glass on the vehicle's occupants. Drivers across the country continue to experience terrifying instances of their sunroofs shattering, and many of those drivers have complained to Ford as well as to the National Highway Traffic Safety Administration (NHTSA). The Korean Automobile Testing & Research Institute (KATRI) concluded that materials used in Ford's panoramic sunroofs makes them less durable than ordinary glass, all but confirming that the sunroofs are defective. While other automobile manufacturers with similar safety problems voluntarily initiated safety recalls to protect consumers from the shattering panoramic sunroofs, Ford conceals the sunroof defect from current and potential owners and lessors of its vehicles.

Plaintiffs Jacob and Jessica Beaty experienced the defect firsthand. When Ms. Beaty was driving the couple's Ford Escape on I-5 South with her baby daughter in the backseat, the panoramic sunroof suddenly shattered with a sound like a gunshot, raining glass into the vehicle and cutting both Ms. Beaty and her daughter. Plaintiffs filed this lawsuit on behalf of all others who have purchased or leased a Ford vehicle with a factory-installed panoramic sunroof. They allege that Ford's conduct violates the Washington Consumer Protection Act, breaches Ford's express and implied warranties, and constitutes fraudulent concealment. Plaintiffs seek damages and equitable relief, including an injunction ordering Ford to repair the defect.

Ford has moved to dismiss all of Plaintiffs' claims but none of its arguments provides a basis for dismissal. Because Plaintiffs allege that all Ford sunroofs are substantially similar in design and manufacture, they may pursue claims on behalf of the owners and lessors of all Ford vehicles with the defective factory-installed panoramic sunroofs. Ford argues on the one hand that Plaintiffs have not sufficiently alleged its knowledge of the common defect despite hundreds of complaints of shattered sunroofs, recalls by other manufacturers, and governmental investigations in the U.S., Europe and Korea, while on the other hand arguing that *Plaintiffs*

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

should have known of the defect by March 2013. Plaintiffs have sufficiently alleged Ford's knowledge based on information about other manufacturers' similarly defective sunroofs and other data that Ford tracks as part of its business. Plaintiffs' claims for fraudulent concealment and violation of the CPA are not time barred because they would not have known from news about other auto manufacturers' sunroofs that their own sunroof was defective, and they had no reason to even look for that information until their sunroof shattered in February 2017. Ford's challenges to Plaintiffs' express warranty claim also lack merit, as Plaintiffs have alleged that Ford's limited warranty is unconscionable and fails of its essential purpose. Plaintiffs therefore request that the Court deny Ford's motion.

## II. STATEMENT OF FACTS

**A.     Plaintiffs and at least dozens of other Ford drivers have experienced spontaneously shattering sunroofs.**

Plaintiffs Jacob and Jessica Beaty purchased a new 2013 Ford Escape on September 25, 2012, after conducting extensive research into the safety, reliability, and price of the vehicle. ¶¶ 69-70.[1] The Beatys consulted with the salespeople at Scarff Ford in Auburn, Washington, before purchasing the car. ¶ 70. The Beatys purchased the Titanium model of the Escape with Ford's "Power Panoramic Vista Roof." ¶ 69. Ford advertised its panoramic sunroof feature as a technological advancement. ¶ 72. It was a huge selling point for the Beatys. ¶ 71.

The panoramic sunroof on the Beatys' Escape shattered on February 8, 2017, when Ms. Beaty was driving with her young daughter on I-5 South. ¶ 72. Ms. Beaty heard an explosion that sounded like a shotgun being fired. *Id.* Being careful of the nearby on and off ramp traffic, Ms. Beaty looked up and could see that the sunroof was missing a lot of glass. *Id.* The proximity of the on and off ramps made it difficult to exit and Ms. Beaty feared being hit, so she continued driving and closed the sunroof cover. *Id.* When it was safe to get out of the vehicle, Ms. Beaty parked and checked on her daughter, who had a scratch on her forehead

---

[1] "¶ _" refers to paragraphs in Plaintiffs' Class Action Complaint and "Ex. __" refers to exhibits to the Complaint (ECF No. 1).

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION TO DISMISS - 2
CASE NO. 3:17-cv-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

from the falling glass. ¶ 73. Ms. Beaty had multiple scratches on her hands. *Id.* She drove to the closest Ford dealership in Olympia, Washington to get the sunroof repaired but was told that it was out of warranty. ¶ 75.

Plaintiffs made a claim for the sunroof repair through their car insurance carrier and paid a $500 deductible. ¶ 76. They also paid $110.94 for a rental car to use while the sunroof was being replaced with an identical panoramic sunroof. ¶¶ 76-77. Plaintiffs now fear opening the sunroof shade because the sunroof might shatter again. *Id.*

Dozens of other Ford drivers have reported shattered sunroofs to NHTSA. ¶¶ 34, 44 & Ex. 1. It is likely that more drivers have shared this terrifying experience since all of Ford's panoramic sunroofs are substantially similar in design and manufacture. ¶¶ 23-33.

**B.      Ford's panoramic sunroofs have a common defect that causes them to shatter.**

Panoramic sunroofs are made of tempered or laminated glass attached to tracks set within a frame attached to the vehicle. ¶ 23. Panoramic sunroofs present manufacturing, design, and safety challenges for manufacturers because the large plates of glass take up much of the surface area of the vehicle's roof. ¶ 24. Ford uses tempered glass for the sunroofs, which creates an outer layer of compression shrink-wrapped around the middle of the glass that is constantly pressing outwards, creating tension or tensile force. ¶¶ 25-26. Tempered glass is designed to be stronger than non-tempered glass, but if the compressive layer is compromised the entire piece of glass fails catastrophically, and often explosively. *Id.* Ford also uses thinner glass to improve fuel efficiency, which increases the probability of catastrophic failure. ¶ 27.

Ford applies large areas of ceramic paint to its sunroofs before tempering. ¶ 25. Ceramic paints are known "adulterants" and significantly weaken the structural strength and integrity of the tempered glazing. ¶ 29. Among other factors, ceramic enamels compromise glass strength because: (1) the enamels have different thermal expansion coefficients than the glass substrates (the glass and the paint expand at different rates), resulting in residual stress between the ceramic enamel and the glass substrate; and (2) the glass frit will ion exchange with the glass substrate lessening or eliminating the compressive layer above the tensile region thereby

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION TO DISMISS - 3
Case No. 3:17-cv-05201 RBL

**Terrell Marshall Law Group PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

significantly weakening it. *Id.* The large ceramic paint areas on Ford's panoramic sunroofs result in the glass becoming progressively weaker and more likely to spontaneously break. ¶ 30.

In 2013, KATRI concluded after testing that the enamel used for ceramic paint areas in tempered panoramic sunroofs impairs the strength of the glass, making the glass less durable than the usual toughened glass and ordinary glass. ¶ 31. At the end of June 2016, an Informal Working Group on Panoramic Sunroof Glazing was established by the United Nations Economic Commission for Europe Group confirmed that conventional automotive glass enamels weaken the mechanical strength of panoramic sunroof glazing. ¶¶ 31-32.

Ford affixes the sunroofs in a manner that reduces road and wind noise and risk of leakage, but the flexing and vibration caused by ordinary driving adds additional stress to the already-compromised sunroofs. ¶ 33. In Ford's vehicles, the compromised tempered glass cannot withstand the pressures and flexing that the sunroof frame and vehicle demand, even when the vehicle is brand new or is parked and sitting still. *Id.*

**C.    Ford has known about the problem with its panoramic sunroofs but conceals it.**

Ford is well aware that its panoramic sunroofs spontaneously shatter due to a common defect through direct complaints and complaints filed with NHTSA. ¶¶ 6, 7, 34, 35, Ex. 1. Ford knows of the problem and that it is widespread from monitoring NHTSA complaints and using other data tracking methods to monitor vehicle performance. ¶¶ 36, 43, 44, 45. And Ford knows NHTSA is investigating the issue of shattering panoramic sunroofs because it has issued multiple requests for information to Ford. ¶¶ 40-47.

Other manufacturers that sell vehicles with similar panoramic sunroofs have voluntarily initiated safety recalls to notify drivers of the danger and repair the sunroofs. ¶¶ 55-59, 64. Ford has chosen to conceal the danger and blames the shattering on impact from objects on the roadway—despite contrary evidence. ¶¶ 52, 60-63. Ford also replaces shattered panoramic sunroofs with identically defective sunroofs that are prone to shattering again. ¶¶ 63, 77.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**D.      Plaintiffs' claims**

Plaintiffs assert claims for violation of the Washington Consumer Protection Act, breach of express warranty, and fraudulent concealment on behalf of a proposed class of all persons and entities residing in the United States, including its territories, who purchased or leased a Class Vehicle, defined as all models of Ford, Lincoln and Mercury vehicles that are equipped with substantially similar factory-installed panoramic sunroofs.[2] In the alternative, Plaintiffs assert their claims on behalf of a class of all persons and entities residing in Washington who purchased or leased a Class Vehicle in Washington.

## III. ARGUMENT

When deciding a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A motion to dismiss should be denied if the Court finds the plaintiff pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not a "probably requirement," since it asks only whether the complaint "'raises[s] a reasonable expectation that discovery will reveal evidence' to support the allegations." *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556).

**A.      Plaintiffs may assert claims relating to all affected vehicles.**

Ford argues that Plaintiffs may pursue claims only on behalf of consumers who bought or leased the same Ford models they did. Plaintiffs disagree. The issue is not whether the

---

[2] Ford argues in a footnote that nationwide certification is inappropriate because the Court will have to apply the law of all 50 states but, perhaps recognizing that the majority of courts defer this issue until class certification, focuses solely on Washington law in its motion to dismiss. *See, e.g., Clancy v. Bromley Tea Co.*, 308 F.R.D. 564, 572-73 (N.D. Cal. 2013) ("[A] detailed choice-of-law analysis is not appropriate at this stage of the litigation. Rather, such a fact-heavy inquiry should occur during the class certification stage, after discovery.")

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION TO DISMISS - 5
CASE NO. 3:17-cv-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  *vehicle models* are the same, it is which models have substantially similar *panoramic sunroofs*.
2  Regardless, the issue is premature. As the Ninth Circuit recently held, "[r]epresentative parties
3  who have a direct and substantial interest have standing; the question whether they may be
4  allowed to present claims on behalf of others who have similar, but not identical, interests
5  depends not on standing, but on an assessment of typicality and adequacy of representation."
6  *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (citation omitted). Courts in this
7  Circuit determine whether plaintiffs may pursue claims on behalf of class members who
8  purchased different products as part of the class certification analysis because the issue is
9  "better taken under the lens of typicality or adequacy of representation, rather than standing."
10 *Coe v. Philips Oral Healthcare Inc.*, No. C13-518-MJP, 2014 WL 722501, at *4 (W.D. Wash.
11 Feb. 24, 2014); *see also Clancy*, 308 F.R.D. at 569-71 (recognizing that the question of whether
12 a plaintiff may represent purchasers of other products "is not a standing inquiry, but rather an
13 early analysis of the typicality, adequacy, and commonality requirements of Rule 23").

14        If the Court considers the issue at this stage, it should deny Ford's motion to dismiss.
15 Plaintiffs have alleged that the panoramic sunroofs in all Ford, Lincoln, and Mercury vehicles
16 are substantially similar in design and manufacture. "[T]he majority of federal courts that have
17 addressed the issue hold a plaintiff may have standing to assert claims for unnamed class
18 members based on products he or she did not purchase" when the products "are substantially
19 similar." *Coe*, 2014 WL 722501, at *4 (plaintiffs had standing to bring claims on behalf of
20 class members who bought different products where the plaintiffs alleged that all products had
21 the same defect); *see also Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1134 (W.D. Wash.
22 2010) (plaintiffs could bring claims on behalf of purchasers of computer models they did not
23 buy where they "pleaded the same core factual allegations and causes of action"); *Jones v.*
24 *Porsche Cars N. Am., Inc.*, No. CV 15-5766-GW(SSX), 2015 WL 11995257, at *2 (C.D. Cal.
25 Oct. 15, 2015) (plaintiffs had standing to pursue claims on behalf of class members who
26 purchased different models where they alleged all vehicles had similarly defective
27 windshields); *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448, at *6-7

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  (N.D. Cal. July 7, 2015) (plaintiffs had standing to pursue claims based on vehicles they did not

2  purchase where they alleged that the steering system in all vehicles was substantially similar).

3      The Honorable Ricardo S. Martinez recently considered this issue in a case involving

4  shattering panoramic sunroofs in Nissan vehicles where the plaintiffs allege that the panoramic

5  sunroofs in seven different models of Nissan vehicles across nine different model years

6  spontaneously shatter, including five models that they had not purchased or leased. *Lohr v.*

7  *Nissan N. Am., Inc.*, No. C16-1023RSM, 2017 WL 1037555, at *2 (W.D. Wash. Mar. 17,

8  2017). The court held that the plaintiffs "have standing to pursue claims related to vehicles they

9  did not lease or purchase" because "Plaintiffs' assertion of a common defect and complaints

10  from drivers of vehicle models Plaintiffs seek to represent … allege a 'sufficient similarity'

11  between Plaintiffs' vehicles and the vehicle models they seek to represent." *Id.* at *4. Similarly,

12  in *Glenn v. Hyundai Motor America*, the plaintiffs alleged that the panoramic sunroofs in

13  several models of Hyundai vehicles spontaneously shatter, including two models they had not

14  purchased or leased. No. SACV 15-2052-DOC, 2016 WL 3621280, at *1-2 (C.D. Cal. June 24,

15  2016). The court held the plaintiffs could assert claims on behalf of class members who bought

16  different models because they alleged that "all the models' sunroofs were made with tempered

17  glass, thinned to improve fuel efficiency, and coated with ceramic paint" and included

18  complaints to NHTSA about shattered sunroofs in the two models the plaintiffs had not

19  purchased. *Id.* at *16.

20      As in *Glenn* and *Lohr*, Plaintiffs allege that the panoramic sunroofs in all models of

21  Ford vehicles are substantially similar and suffer from a common defect: they are made of

22  tempered glass that features large areas of ceramic paint; if the compressive layer of tempered

23  glass is compromised, the entire piece of glass fails catastrophically; the panoramic sunroofs

24  are made of thinner glass in order to improve fuel efficiency; thinner glass is difficult to temper

25  properly and increases the probability of catastrophic failure; the ceramic paint applied to the

26  sunroofs prior to tempering weakens the structure of the sunroof; and the fastening of the

27  sunroof to the vehicles with the sufficient degree of tightness weakens the sunroof. ¶¶ 23-33.

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION TO DISMISS - 7
CASE NO. 3:17-cv-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  Plaintiffs allege these common characteristics of the panoramic sunroofs make them prone to

2  suddenly shatter.

3      Plaintiffs have also included 99 complaints made to NHTSA by drivers of Ford, Lincoln

4  and Mercury vehicles who have experienced shattered panoramic sunroofs, including drivers of

5  most of the models of Ford vehicles included in the proposed class. Ex. 1. These complaints,

6  combined with allegations that three other auto companies have recalled cars with similar

7  panoramic sunroofs, that NHTSA, KATRI, and UN Economic Commission are investigating

8  shattering panoramic sunroofs, confirm that the problem is not limited to Plaintiffs' vehicle.

9  ¶¶ 31-32, 39-47, 48, 55-59. *Lohr* is not distinguishable; the fact that Nissan includes panoramic

10 sunroofs in fewer models than Ford and its subsidiaries does not mean that the panoramic

11 sunroofs in the Ford vehicles are any less similar than those in Nissan vehicles. And in *Lohr*, as

12 Ford acknowledges, Plaintiffs did not include complaints from every model included in the

13 proposed class. *Lohr*, 2017 WL 1037555, at *4.

14      Ford contends that factors like the shapes, sizes and suppliers of the glass may affect the

15 propensity of its panoramic sunroofs to shatter and argues that differences between cars, pick-

16 ups and SUVs may play a role. For purposes of this motion, however, the Court must accept

17 Plaintiffs' allegations as true. *Cousins*, 568 F.3d at 1067. Plaintiffs allege that all of the

18 panoramic sunroofs share a substantially similar design and manufacturing process. ¶ 20. Ford

19 characterizes Plaintiffs' allegations as "conclusory" because they do not refer specifically to

20 each Ford brand and model, but Plaintiffs have provided a detailed description of the design

21 and manufacture of panoramic sunroofs and the alleged defect, which is common to the

22 panoramic sunroofs of several other auto manufacturers and not unique to Ford and its

23 subsidiaries. ¶¶ 26-33. The consistency of the NHTSA complaints, and the NHTSA, KATRI,

24 and UN investigations into panoramic sunroofs made by Ford, Nissan and other manufacturers

25 confirm that the defect spans the differences that Ford tries to highlight. ¶¶ 31-32. Ford cites no

26 cases to support its argument that these types of variations must be considered on a motion to

27 dismiss. Cases like *Lohr*, *Glenn* and *Coe* confirm that Plaintiffs' allegations are sufficient.

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION TO DISMISS - 8
CASE NO. 3:17-cv-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**B.  Plaintiffs sufficiently allege Ford's knowledge of the defective sunroofs.**

Plaintiffs allege that Ford knows about the defective panoramic sunroofs from multiple sources. First, numerous drivers complained to both Ford and NHTSA about shattering panoramic sunroofs as early as 2008. ¶¶ 6, 7, 34, 35, Ex. 1. Plaintiffs allege that Ford, like other auto manufacturers, monitors NHTSA complaints. ¶ 36. Ford also receives and documents reports from customers and dealerships, receives warranty claims, and receives reports from vehicle service and technical support activities and field operations. ¶ 43. Ford knows NHTSA is investigating the issue of shattering panoramic sunroofs because NHTSA has issued multiple requests for information to Ford. ¶¶ 40-47. Plaintiffs also allege that Ford is aware that other manufacturers that sell vehicles with similar panoramic sunroofs —Volkswagen, Hyundai, and Audi—voluntarily initiated safety recalls to notify drivers of the danger and repair the sunroofs. ¶¶ 48, 55-59, 64. KATRI and the United Nations Economic Commission for Europe are also conducting investigations into shattering panoramic sunroofs, and Ford is certainly aware of those investigations as well. ¶¶ 31-32, 58-59.

These allegations are sufficient to establish Ford's knowledge of the defect. *See, e.g.*, *Avedisian v. Mercedes–Benz USA LLC*, CV 12–00936 DMG (CWx), 2013 WL 2285237, at *1, 7 (C.D. Cal. May 22, 2013) (copies of dated customer complaints sufficiently established defendant's knowledge of the defect at the time of the plaintiff's purchase); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007) (finding the plaintiffs sufficiently alleged GM's knowledge of an alleged defect because "[o]nly GM had access to the aggregate data from its dealers," pre-release testing data, and "numerous complaints from its customers"); *Cirulli v. Hyundai Motor Co.*, No. SACV 08-0854 AG, 2009 WL 5788762, at *4 (C.D. Cal. June 12, 2009) (allegations that Hyundai tracked the NHTSA database and thus knew its vehicles were experiencing unusually high levels of structural deterioration were sufficient to plead Hyundai's knowledge).

Ford argues that the 99 NHTSA complaints are insufficient in light of the number of vehicles it has sold, but how many reports of spontaneously shattering panoramic sunroofs are

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION TO DISMISS - 9
CASE NO. 3:17-cv-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

1  necessary—in combination with complaints Ford received directly and industry knowledge of

2  the problem—for Ford to recognize that it has a dangerous problem? Ford's knowledge does

3  not turn solely on the number of complaints made to NHTSA and it does not require a specific

4  percentage of purchasers and lessors to have made public complaints. A review of the NHTSA

5  complaints excerpted in Exhibit 1 to Plaintiffs' complaint confirms the uniformity of the

6  problem: Ford's panoramic sunroofs spontaneously shatter without impact from outside

7  objects. The minor variations that Ford latches onto—whether a car was parked or driving at a

8  particular speed, whether the shattered sunroof had a hole in the middle or broke along the

9  edge, whether the glass appeared to blow upward or downward into the vehicle—are consistent

10  with the uniform defect Plaintiffs allege. *See, e.g.,* ¶ 33 ("In the Ford models at issue, the

11  compromised tempered glass cannot withstand the pressures and flexing that the sunroof frame

12  and vehicle demand, even when the vehicle is brand new or is parked and sitting still.").

13      Ford also suggests it could not have known that *its* panoramic sunroofs were defective

14  just because NHTSA was investigating the spontaneous shattering of *Kia*'s panoramic

15  sunroofs, but Plaintiffs allege that the design and manufacture of the sunroofs is substantially

16  similar throughout the auto industry (¶¶ 3-4, 24-33)—something Ford notes in its brief—and

17  NHTSA expanded its investigation to include Ford's panoramic sunroofs. ¶¶ 40-47. Plaintiffs

18  do not yet know when Ford received the 150 complaints it reported to NHTSA, or the details of

19  those complaints. ¶ 44. It is, however, remarkable that Ford acknowledges having received 150

20  complaints about shattered panoramic sunroofs in only three models sold during a limited time

21  period. Even assuming some overlap with the 99 NHTSA complaints, the number of proposed

22  class members who have experienced a sudden shattering of the panoramic roof in their Ford

23  vehicles is far too high for Ford to claim ignorance.

24      Ford cites distinguishable cases in which the plaintiffs relied on consumer complaints

25  that were either undated, unlike the 99 NHTSA complaints that Plaintiffs provided with their

26  complaint, or made after the plaintiffs purchased their vehicles. *See Wilson v. Hewlett-Packard*

27  *Co.*, 668 F.3d 1136, 1148 (9th Cir. 2012) (plaintiffs relied solely on consumer complaints,

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

mostly undated and from unknown sources); *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 104 (3d Cir. 2013) (plaintiff failed to allege when complaints and warranty claims were made); *Williams v. Yamaha Motor Corp., U.S.A.*, 106 F. Supp. 3d 1101, 1114-16 (C.D. Cal. 2015) (plaintiffs included no consumer complaints before the plaintiffs' purchases and the earliest identified complaint was found on an online forum after the defendant stopped selling the allegedly defective motor and with no evidence it was ever communicated to the defendant); *Utica Nat'l Ins. Group v. BMW of N. Am., LLC*, 45 F. Supp. 3d 157, 162 (D. Mass. 2014) (no evidence that BMW received the nineteen complaints before the plaintiff's loss, and BMW issued a recall to correct the defect); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 927 (N.D. Cal. 2012) (plaintiff alleged that Apple started investigating the alleged defect in response to complaints about the iPhone 4, which was not released until after the plaintiff's purchase of an earlier model). By contrast, Plaintiffs have provided the Court with 20 complaints made to the NHTSA before Plaintiffs purchased their vehicle, and 97 complaints before Plaintiffs' sunroof spontaneously shattered. Ex. 1.

The other cases Ford cites are also distinguishable. In several, the plaintiffs alleged only that the auto manufacturer knew about the defect from "internal sources" like unspecified complaints received and dealership records. *See Herremans v. BMW of N. Am., LLC*, No. CV 14-02363 MMM (PJWx), 2014 WL 5017843, at *16-17 (C.D. Cal. Oct. 3, 2014) (plaintiff's allegations on information and belief that BMW knew of leaking water pump in Mini Coopers from "internal sources" like unspecified consumer complaints, pre-release testing, and dealership repair records, were conclusory and did not show that BMW knew of the defect before plaintiff's purchase); *Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-CV-1142-SVW-PLA, 2013 WL 690822, at *6-7 (C.D. Cal. Feb. 19, 2013) (same, plus ten online complaints, four of which were made after the plaintiffs bought their vehicles). In other cases it was not clear that the cited complaints even referenced the alleged defect. *See Marcus v. Apple Inc.*, No. C 14-03824 WHA, 2015 WL 151489, at *6 (N.D. Cal. Jan. 8, 2015) (plaintiffs cited 365 "reviews" of laptop failures posted to the Apple website but did not say which of the reviews

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

referenced a failure due to the allegedly defective logic board as opposed to some other type of laptop failure); *McQueen v. BMW of N. Am., LLC*, No. 12-06674 (SRC), 2014 WL 656619, at *4-5 (D.N.J. Feb. 20, 2014) (allegations of fewer than ten consumer complaints that may not have addressed the alleged defect were insufficient to show BMW's knowledge). And in *Berenblat v. Apple, Inc.*, the court found the plaintiffs' allegations of consumer complaints posted on the Apple website were "persuasive" but dismissed their claim under the "fraudulent" prong of California's Unfair Competition Law because the plaintiffs did not establish that "reasonable consumers 'had an expectation or assumption about' the functionality of the [allegedly defective] memory slots" in their computers. Nos. 08-4969 JF (PVT), 09-1649 JF (PVT), 2010 WL 1460297, at *8-9 (N.D. Cal. Apr. 9, 2010). By contrast, reasonable consumers expect their vehicles to be safe and their panoramic sunroofs to not suddenly shatter.

## C. Plaintiffs state a claim for violation of the Consumer Protection Act.

Plaintiffs allege that Ford engaged in unfair and deceptive acts or practices in violation of the CPA by failing to disclose the common defect in its vehicles' panoramic sunroofs, failing to warn consumers about the defect, and replacing shattered panoramic sunroofs with sunroofs that have the same defect. ¶¶ 118-20. Focusing on deceptiveness—and thus conceding that Plaintiffs have sufficiently alleged that Ford engaged in *unfair* acts or practices[3]—Ford argues that Plaintiffs have not shown that Ford's omissions are likely to mislead a reasonable consumer because no reasonable consumer would expect Ford to disclose that its panoramic sunroofs spontaneously shatter. Ford's contention that Plaintiffs have provided no more than "a

---

[3] Courts find conduct to be unfair in violation of the CPA when it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits," or when it "offends public policy as established 'by statutes [or] the common law,' or is 'unethical, oppressive, or unscrupulous,' among other things." *Mellon v. Regional Trustee Serv. Corp.*, 182 Wn. App. 476, 489-90, 334 P.3d 1120 (2014) (quoting *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 786-87, 295 P.3d 1179 (2013)). No proof of deception or likelihood to mislead is required. *See Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 51 (2009) ("The universe of 'unfair' business practices is broader than, and encompasses the universe of 'deceptive' business practices.").

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION TO DISMISS - 12
CASE NO. 3:17-CV-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  bare allegation of a 'defect,'" nothing more than "glass sunroofs break," ignores Plaintiffs'

2  detailed allegations of the nature of the defect and its prevalence. ¶¶ 26-52.

3       The hundreds of Ford drivers who have experienced a spontaneously shattered

4  panoramic sunroof, often while driving at high speeds, undoubtedly, and reasonably, expect

5  Ford to disclose that its sunroofs have a tendency to shatter without impact from outside

6  objects. ¶¶ 34, 53, 54, Ex. 1. The investigations launched by NHTSA, KATRI, and United

7  Nations Economic Commission for Europe into the propensity of panoramic sunroofs like

8  Ford's to spontaneously shatter confirm that the problem is far more serious and pervasive than

9  Ford is willing to acknowledge. The NHTSA and KATRI have reported that a shattering

10  sunroof can injure the vehicle's occupants and increase the risk of a crash. ¶¶ 57-58. Three

11  other automakers have recalled vehicles with panoramic sunroofs, citing the safety risk posed

12  by suddenly shattering sunroofs. ¶¶ 55-56.

13       Plaintiffs' allegations go far beyond the mere characterization of Plaintiffs' shattered

14  sunroof as a defect. Plaintiffs describe the aspects of the design and manufacture of the

15  sunroofs that results in spontaneous shattering, including the use of tempered glass with large

16  areas of ceramic paint (¶ 25), a tempering process that may compromise the compressed outer

17  layer of glass (¶ 26), the use of thinner glass to save weight and improve vehicle fuel efficiency

18  (¶ 27), the use of ceramic paint that impairs the strength of the glass (¶¶ 28-32), and the method

19  of fastening the sunroof to the vehicle (¶ 33). Plaintiffs allege that these characteristics of

20  Ford's panoramic sunroofs cause them to be unable to withstand the flexing and vibration

21  caused by ordinary driving, ultimately causing the glass to shatter. ¶ 33.

22       Plaintiffs' detailed allegations of the defect, complaints by more than 90 Ford drivers

23  who have experienced spontaneously shattered sunroofs, investigations into the problem by

24  governmental agencies around the world, and the safety recalls of three other auto

25  manufacturers sufficiently support their contention that consumers would find the sunroof

26  defect to be material and would expect Ford to disclose it. Ford's refusal to even acknowledge

27  the problem, much less disclose it to new purchasers and lessors as well as current owner and

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION TO DISMISS - 13
CASE NO. 3:17-cv-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

lessors of its vehicles falls squarely within the broad definition of unfair and deceptive acts or practices that violate the CPA. *See Panag v. Farmers Ins. Co. of Washington*, 166 Wn. 2d 27, 49, 204 P.3d 885 (2009) ("By broadly prohibiting 'unfair or deceptive acts or practices in the conduct of any trade or commerce,' RCW 19.86.020, the legislature intended to provide sufficient flexibility to reach unfair or deceptive conduct that inventively evades regulation."); *see also* RCW 19.86.920 ("[T]his act shall be liberally construed that its beneficial purposes may be served.").

Several other courts have denied motions to dismiss consumer protection claims based on similar allegations. *See Lohr*, 2017 WL 1037555, at *4 (plaintiffs' allegations that Nissan knows its panoramic sunroofs have a propensity to shatter that Nissan failed to disclose the defect, and that Nissan systematically denies coverage for the repair "indicate Nissan's acts and practices are capable of deceiving the public"); *Glenn*, 2016 WL 3621280, at *11 (finding the plaintiffs stated a claim for violation of California consumer protection laws where they alleged that Hyundai knows about the danger of its panoramic sunroofs shattering and does not warn consumers about the risk); Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Motion to Strike at 23-24, *Kondash v. Kia Motors Am., Inc.*, No. 1:15-cv-00506-SJD (S.D. Ohio June 24, 2016), ECF No. 49 (finding plaintiff stated a claim under the Ohio consumer protection statute where he alleged that Kia knew or should have known its panoramic sunroof was prone to shatter but failed to disclose it).

Plaintiffs' allegations of the problem with Ford's panoramic sunroofs are far more detailed and concrete than in the cases Ford cites, where courts dismissed consumer protection claims under other states' laws because the plaintiffs' sparse allegations did not establish that there was anything wrong with the product. *See Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879, 882, 887-88 (Mass. 2008) (finding the plaintiffs did not allege the outside door handle systems in their vehicles failed to comply with the applicable federal safety standard and therefore could not allege an injury under the Massachusetts consumer protection statute); *Munch v. Sears Roebuck & Co.*, No. 06-cv-7023, 2007 WL 2461660, at *2-3 (N.D. Ill. Aug.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

27, 2007) (dismissing consumer protection claims where the plaintiffs' contention that Sears concealed a defect in its washing machines was "based solely on the allegations that their particular machines required a single repair" and thus failed to satisfy Rule 9(b)'s heightened pleading standard); *see also Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 794-95 (N.J. 2005) (plaintiffs suffered no ascertainable loss as a result of alleged defect that did not show when the gas tank was full because Mercedes repaired it and provided loaner vehicles).

**D.      Plaintiffs' fraudulent concealment and CPA claims are not time barred.**

Ford contends (incorrectly) that Plaintiffs have not alleged that *Ford* knows its panoramic sunroofs are defective, yet in the next breath argues that a more limited universe of the same information was sufficient to put *Plaintiffs* on notice of their fraudulent concealment and CPA claims by March 1, 2013. But the type of information that confirms Ford's knowledge of the defect would not have put Plaintiffs on notice even if they had known to search for it. As a seller of vehicles with panoramic sunroofs, Ford is familiar with the materials, design and manufacture of its and its competitors' sunroofs. Ford is therefore aware that government investigations into shattering panoramic sunroofs of other auto manufacturers are relevant to the safety of its vehicles' sunroofs because they share common materials and design; Ford knows that safety recalls of panoramic sunroofs by other manufacturers implicate its own vehicles because of the similarities; Ford tracks NHTSA complaints, news articles, and other information about component parts of the vehicles it sells and the vehicles sold by competitors; and Ford receives complaints and reports from dealers directly about its vehicles. Vehicles and their component parts are Ford's business and monitoring information about its own vehicles and developments in the industry is critical to maintaining its competitive edge.

Plaintiffs, on the other hand, are retail consumers who do not spend their days steeped in news about the auto industry and each component part of their vehicle. The information Ford contends should have put Plaintiffs on notice of their claims relates primarily to panoramic sunroofs in vehicles sold by other auto manufacturers, including the NHTSA investigations, blog posts and news articles (which discuss shattering sunroofs in Hyundai, Nissan, Kia and

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Audi vehicles, not Ford), and the Hyundai and Volkswagen recalls. The only Ford-specific information Ford cites is 25 complaints on NHTSA's website—a database that requires searchers to use a keyword describing what they are looking for. In other words, Plaintiffs would have to know to search for complaints about the panoramic sunroof in their vehicle to find them. Because Ford has remained silent about the problem—and in fact continues to deny that there is anything wrong with their sunroofs—there was no reason for Plaintiffs to search for complaints about Ford panoramic sunroofs until theirs exploded in February 2017. *See Philips*, 2015 WL 4111448, at *8 (plaintiffs "had no reason to suspect wrongdoing, and there was no fact or circumstance to prompt an investigation" until the defect manifested).

This information that Ford claims was available to Plaintiffs in March 2013 is therefore nothing like the information that was available to the plaintiff in *Bergeron v. Select Comfort Corp.*, which included a website created by the defendant disclosing mold problems with its mattresses, a news article in a national publication available on the internet[4] discussing the mold problem in the defendant's mattresses (which also noted that consumers can unzip the mattress to look for mold), and a Consumer Products Safety Commission file that addressed the mold problem in the defendant's mattresses. No. A-15-cv-00657-LY-ML, 2016 WL 155088, at *6 (W.D. Tex. Jan. 11, 2016), *adopted by* 2016 WL 4401313 (W.D. Tex. Feb. 24, 2016). The plaintiff also alleged that she knew there was a problem with her mattress—she claimed she and her family were sick for many years despite several moves, with the only constant being their mattress—so she (unlike Plaintiffs in this case) had reason to seek out information about problems with the mattress. *Id.* at *2. Plaintiffs' sunroof, by contrast, exploded suddenly and with no warning, giving them no reason to investigate until the damage had been done.

Ford's other cases are equally distinguishable, both because they address unrelated factual scenarios and because they were decided on summary judgment, not a motion to dismiss. *See Allen v. State*, 118 Wn.2d 753, 759, 826 P.2d 200 (1992) (affirming summary

---

[4] The Wall Street Journal article about panoramic sunroofs is only available to subscribers.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

judgment for defendant where the plaintiff could have learned about the conviction of her husband's murderers from widespread press coverage); *Shepard v. Holmes*, 185 Wn. App. 730, 741-42, 345 P.3d 786 (2014) (affirming summary judgment for defendant where a recorded deed constituted constructive notice to the plaintiff of the consolidation of her lots when she purchased the property); *Hudson v. Condon*, 101 Wn. App. 866, 875, 6 P.3d 615 (2000) (affirming summary judgment for defendant where the plaintiff was told of changes to a lease and confirmed his damages in a written response, triggering the statute of limitations).

**E.    Plaintiffs state a claim for breach of express warranty.**

Plaintiffs allege that Ford breaches its express warranty by selling and leasing vehicles with defective panoramic sunroofs, by requiring repair or replacement within the short warranty period, and by not correcting the defect. ¶¶ 94-95. Ford argues that Plaintiffs' breach of warranty claim should be dismissed because their sunroof shattered after the three-year warranty on their vehicle expired. This argument ignores that Plaintiffs allege the warranty period is unconscionable because Ford knew or should have known the panoramic sunroofs were defective at the time of sale or lease and a gross disparity in bargaining power exists between Plaintiffs and Ford. ¶ 99. As a result, Plaintiffs had no meaningful choice in determining the time limitations, which unreasonably favor Ford. These allegations are sufficient to state a claim for breach of warranty. *See, e.g.*, *Lohr*, 2017 WL 1037555, at *6 (finding plaintiffs stated a breach of express warranty claim by alleging that Nissan knew or should have known about the defective panoramic sunroof at the time of sale and that it would fail before the end of the useful life of the vehicle, that plaintiffs had no meaningful choice in determining the time limitations that favored Nissan, and that there was a gross disparity in bargaining power); *Szymczak v. Nissan N. Am., Inc.*, No. 10 cv 7493 (VB), 2011 WL 7095432, at *10 (S.D.N.Y. Dec. 16, 2011) (denying dismissal of plaintiffs' claim that the durational limitation in Nissan's express warranty was unconscionable where the plaintiffs alleged that Nissan sold vehicles despite awareness of a radiator defect and plaintiffs had no meaningful choice about the time limits due to a disparity in bargaining power); *Bussian v.*

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  *DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 621-23 (M.D.N.C. 2006) (finding allegations that

2  GM knew of and failed to disclose product defect and purchasers lacked a meaningful choice

3  with respect to the terms of the warranty due to unequal bargaining power stated a claim for

4  breach of warranty based on durational limitation in warranty).[5]

5      Ford contends that its warranty is not unconscionable because it is not unfair and does

6  not "shock the conscience." But Ford's knowing sale of vehicles with defective panoramic

7  sunroofs that explode after the warranty period has expired, often while the vehicles are being

8  driven on highways at 50 miles per hour, and frequently, *does* shock the conscience and renders

9  the limited, nonnegotiable terms of the warranty unconscionable. Ford's suggestion that

10  Plaintiffs could have spent more to purchase an extended warranty does not make it any less

11  unconscionable that Ford sells a vehicle with a warranty that is likely to expire before the

12  panoramic sunroof defect manifests. Even if Plaintiffs had paid extra for an extended warranty,

13  it is unclear whether it would have covered the shattered panoramic sunroof since Ford offers

14  different "ESP plans … in various time, distance and deductible combinations" that cover

15  different components. Motion, Ex. A at 33.

16      Ford cites *Smith v. Ford Motor Co.*, where the court found the plaintiff failed to offer

17  evidence of unconscionability in response to Ford's summary judgment motion. 749 F. Supp.

18  2d 980, 993-94 (N.D. Cal. 2010). *Smith* does not control the outcome in this case; the Court

19  must accept Plaintiffs' allegations as true for purposes of Ford's motion to dismiss, and allow

20  Plaintiffs the opportunity to present evidence of unconscionability at the appropriate juncture.

21  *See* RCW 62A.2-302 (" When it is claimed or appears to the court that the contract or any

22  clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to

23

24  ---
[5] There is no suggestion that the plaintiffs argued the warranties were unconscionable in the

25  cases addressing express warranties under California law that Ford cites. *See In re Sony PS3 & Other OS Litig.*, 551 F. App'x 916, 919 (9th Cir. 2014) (affirming the dismissal of plaintiffs'

26  claim that Sony breached its one-year express warranty); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (dismissing warranty claim where repairs to an allegedly

27  defective head gasket were made after the warranty expired).

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION TO DISMISS - 18
CASE NO. 3:17-cv-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."); *Nelson v. McGoldrick*, 127 Wn.2d 124, 133-34, 896 P.2d 1258 (1995) (holding that evidence is necessary to determine whether a contract is unconscionable although the issue may in some circumstances be decided on summary judgment); *see also Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 292-93 (4th Cir. 1989) (holding that the district court erred in ruling that durational limitations on GM's implied warranties were "reasonable" and "conscionable" on a motion to dismiss because the plaintiffs should have had the opportunity to present evidence).

Ford argues that *Lohr*, 2017 WL 1037555, at *6, is distinguishable because the court did not consider the availability of an extended warranty option or analyze the factors considered by Washington courts. It would have been inappropriate for the *Lohr* court to rule on the plaintiffs' unconscionability argument on a motion to dismiss—just as it would be inappropriate for this Court to do so—since plaintiffs must be allowed to present evidence.

Ford's warranty also fails of its essential purpose because Ford replaces defective panoramic sunroofs with identical defective sunroofs. ¶¶ 63, 77. Courts recognize "the well-established principle that a warranty which is expressly limited to repair or replacement fails of its essential purpose when the manufacturer is unable to successfully repair the defect at issue within a reasonable time." *In re Caterpillar, Inc. C13 & C15 Engine Prods. Liab. Litig.*, No. 1:14-cv-3722 (JBS-JS), 2015 WL 4591236, at *25 (D.N.J. July 29, 2015) (denying motion to dismiss the plaintiffs' express warranty claims where the defendant was unable to repair a defect in plaintiffs' vehicle engines); *see also Philippine Nat'l Oil Co. v. Garrett Corp.*, 724 F.2d 803, 808 (9th Cir. 1984) (recognizing that a repair or replace limited warranty fails of its essential purpose if repair attempts are unsuccessful within a reasonable time); *Strickler v. Peterbilt Motors Co.*, No. Civ. A. 04-3628, 2005 WL 1266674, at *2-3 (E.D. Pa. May 27, 2005) (denying summary judgment of the plaintiff's express warranty claim where a tractor engine's defects were still present after the defendants attempted repairs because "the remedy of repair or replacement is the 'silver bullet' that the buyer receives '[i]n exchange for parting

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

with an arsenal of legal remedies" and "[i]f the limited remedy fails, the 'silver bullet turns to dust,' leaving the buyer defenseless and at the seller's mercy").

Because Ford replaces shattered sunroofs with sunroofs that suffer from the same defect, Ford's warranty fails of its essential purpose. *See, e.g.*, *Lohr*, 2017 WL 1037555, at *6 (finding the plaintiffs stated a breach of warranty claim where they alleged that Nissan replaced shattered panoramic sunroofs with equally defective sunroofs); *Horvath v. LG Elec. Mobilecomm U.S.A., Inc.*, No. 3:11-cv-01576-H-RBB, 2012 WL 2861160, at *6 (S.D. Cal. Feb. 13, 2012) (denying dismissal where the plaintiffs alleged the defendant replaced their defective phones with phones that had the same defects); *Porcell v. Lincoln Wood Prods., Inc.*, No. Civ-08-0617 MAC/LFG, 2010 WL 1541264, at *3 (D.N.M. Mar. 31, 2010) (denying motion to dismiss plaintiffs' breach of warranty claim where the plaintiffs alleged the defendant merely replaced a defective window with a window suffering from the same defect that caused the first one to fail prematurely). Ford argues that *Lohr* is distinguishable because the court only decided the issue as to the plaintiff whose sunroof shattered during the warranty period, but Plaintiffs sought to enforce the warranty and were turned away by a Ford authorized dealer because the warranty expired before their sunroof shattered. ¶ 75. Moreover, the replacement sunroof installed in Plaintiffs' vehicle by Auto Glass Professionals is the same as the factory-installed sunroof that shattered because all of the panoramic sunroofs manufactured for Ford's vehicles are similarly defective. ¶¶ 63, 77. Under Washington law, a defendant's warranty fails of its essential purpose when it "never lived up to the specifications of the contract." *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 707-08 (9th Cir. 1990).

Finally, Ford contends that Plaintiffs' express warranty claim must be dismissed because Plaintiffs do not allege that they notified Ford of the breach of warranty. First, the statute Ford cites requires notice to the seller—in this case Scarff Ford, the Ford dealer that sold the vehicle to Plaintiffs—and not to Ford, the manufacturer. RCW 62A.2-607(3)(a) ("The buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the *seller* of breach" (emphasis added)); *see also La Hue v. Coca-Cola Bottling,*

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  *Inc.*, 50 Wn.2d 645, 647, 314 P.2d 421 (1957) (holding that the notice requirement in former

2  version of RCW 62A.2-607(3) does not apply when the action is not against the seller); *Cats v.*

3  *Monaco RV, LLC*, No. C 14-1484-JCC, 2016 WL 5253204, at *4 (W.D. Wash. Sept. 22, 2016)

4  (holding that plaintiffs did not have to provide the manufacturer defendant with notice of their

5  RV's defective engine when they bought the RV from a dealer). If Ford contends it is the seller

6  and must receive notice even though its dealer Scarff Ford sold the vehicle to Plaintiffs, then by

7  the same logic Plaintiffs' notice of the shattered sunroof to Mullenix Ford would satisfy the

8  notice requirement. Each dealership has the ability to repair and service Ford warranty claims.

9  *See* Motion, Ex. 1 at 1 ("When you need warranty repairs, your selling dealer would like you to

10  return to it for that service, but you may also take your vehicle to another Ford Motor Company

11  dealership authorized for warranty repairs.").

12      Second, Plaintiffs filed their complaint on March 16, 2017, giving Ford notice of the

13  breach a mere 36 days after their sunroof shattered on February 8, 2017. *See Round Gold LLC*

14  *v. Ameron Int'l Corp.*, No. C07-791Z, 2008 WL 3288408, at *5 (W.D. Wash. Aug. 7, 2008)

15  (denying summary judgment for the defendant where the plaintiff, "a retail consumer rather

16  than a merchant buyer," provided timely notice in December 2005 after discovering the breach

17  in May 2004); *see also Kasey v. Suburban Gas Heat of Kennewick, Inc.*, 60 Wn.2d 468, 474,

18  374 P.2d 549 (1962) (holding that whether service of the complaint more than four months

19  after the discovery of breach constituted timely notice was a question of fact for the jury).

20  Finally, Plaintiffs allege they were not required to provide notice "because affording Ford a

21  reasonable opportunity to cure its breach of written warranty would have been futile. Ford

22  knew of the defect and chose to conceal it and to fail to comply with its warranty obligations.

23  Further, the replacement sunroof used by Ford is also defective." ¶ 96.

24  **F.    Plaintiffs state a claim for breach of implied warranty.**

25      Ford argues that Plaintiffs' implied warranty claim should be dismissed because they

26  have not alleged privity with Ford. But Plaintiffs allege that they are third-party beneficiaries of

27  contracts between Ford and its dealers, with whom Plaintiffs had direct dealings, and that

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Plaintiffs were intended to be the ultimate consumers of the vehicles. ¶ 129(a) & (b). Courts recognize these allegations create factual issues as to whether plaintiffs are intended beneficiaries who can assert implied warranty claims absent privity. *See, e.g., Horvath*, 2012 WL 2861160, at *7; *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1184-85 (C.D. Cal. 2010) (citing cases); *see also Tex. Enter., Inc. v. Brockway Standard, Inc.*, 149 Wn.2d 204, 213-14, 66 P.3d 625 (2003) (discussing third party beneficiary exception to privity requirement for implied warranty claims).

Ford cites *Baughn v. Honda Motor Co., Ltd.*, which did not address the third-party beneficiary exception to privity. 107 Wn.2d 127, 151-52, 727 P.2d 655 (1986). The Washington Supreme Court recognized that "[t]he privity requirement is relaxed, however, when a manufacturer makes express representations, in advertising or otherwise, to a plaintiff." *Id.* at 151. Plaintiffs allege that they researched the safety of their vehicle prior to purchase and that Ford's advertising holds out the panoramic sunroofs as advanced technology. ¶¶ 21-22, 70. Ford acknowledges that its customers have implied warranties if they purchase their vehicles for non-commercial use. Motion, Ex. A at 7 ("you may have an implied warranty of merchantability (that the car or light truck is reasonably fit for the general purpose for which it was sold"). Ford authorizes owners and lessees to have repairs made by any of its authorized dealers. *Id.*, Ex. A at 1, 9.

The statute of limitations on Plaintiffs' implied warranty claim was also tolled due to Ford's fraudulent concealment of the defect. *See Giraud v. Quincy Farm & Chem.*, 102 Wn. App. 443, 455, 6 P.3d 104 (2000) (the doctrine of fraudulent concealment applies to warranty claims). Unlike *Giraud*, where the plaintiffs were sufficiently concerned about damage to their plants from the herbicide they purchased from the defendant that they met with both the defendant and manufacturer, *id.* at 445, 456, Plaintiffs had no reason to suspect anything was wrong with their sunroof until it suddenly exploded. Meanwhile, Ford concealed the defect from Plaintiffs and other owners and lessees of Ford vehicles despite its exclusive knowledge

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

and the safety risk created by the defect. *See Wood v. Gibbons*, 38 Wn. App. 343, 346, 685 P.2d 619 (1984) (the fraudulent concealment doctrine "applies when a defendant has concealed facts or otherwise induced a plaintiff not to bring suit"); *see also Carideo*, 706 F. Supp. 2d at 1133 (a duty to disclose arises when "a manufacturer has superior information regarding defects that are not readily ascertainable to customers"); *Brinkerhoff v. Campbell*, 99 Wn. App. 692, 698, 994 P.2d 911 (2000) (a duty disclose arises "where one party is relying upon the superior knowledge and experience of the other" or "where a seller has knowledge of a material fact not easily discoverable by the buyer"); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 917-18 (C.D. Cal. 2010) (car manufacturer had a duty to disclose a windshield defect that created an unreasonable safety risk even after the warranty period expired). Ford has also issued limited safety recalls to replace the panoramic sunroofs on models manufactured during certain time frames[6] and responded to inquiries from NHTSA about its panoramic sunroofs without disclosing the defect to owners and lessees of its vehicles. *See August v. U.S. Bancorp*, 146 Wn. App. 328, 347, 190 P.3d 86 (2008) (fraudulent concealment tolls the statute of limitations where the defendant "engaged in affirmative conduct that would lead a reasonable person to believe that no claim of fraudulent concealment existed").

## IV. CONCLUSION

Ford's panoramic sunroofs shatter suddenly, spontaneously, and without warning, sounding like a gunshot and showering drivers and their passengers with broken glass. Three other automobile manufacturers have recalled and repaired the dangerous panoramic sunroofs in their vehicles. Ford has chosen to stay silent, leaving drivers of its vehicles at risk of accidents and injury from falling glass, and endangering other drivers on the roads. Plaintiffs'

---

[6] *See* ¶ 49; Ford Issues One Safety Recall and One Safety Compliance Recall in North America (Sept. 28, 2016) https://media.ford.com/content/fordmedia/fna/us/en/news/2016/09/28/ford-issues-one-safety-recall-and-one-safety-compliance-recall-i.html. "Courts routinely take judicial notice of such things as … corporate press releases." *City of Roseville E'ees' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1107 (E.D. Wash. 2013) (citing cases).

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION TO DISMISS - 23
CASE NO. 3:17-CV-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

allegations establish their standing to pursue the claims they assert and the viability of their claims against Ford. Plaintiffs request that the Court deny Ford's motion to dismiss.

RESPECTFULLY SUBMITTED AND DATED this 30th day of June, 2017.

TERRELL MARSHALL LAW GROUP PLLC

By:  /s/ Beth E. Terrell, WSBA #26759
Beth E. Terrell, WSBA #26759
Email:  bterrell@terrellmarshall.com
Amanda M. Steiner, WSBA #29147
Email:  asteiner@terrellmarshall.com
Brittany A. Madderra, WSBA #48514
Email:  bmadderra@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 319-5450

Paul J. Hanly, Jr., *Admitted Pro Hac Vice*
Email:  phanly@simmonsfirm.com
Mitchell M. Breit, *Admitted Pro Hac Vice*
Email:  mbreit@simmonsfirm.com
SIMMONS HANLY CONROY LLC
112 Madison Avenue
New York, New York 10016-7416
Telephone:  (212) 784-6400
Facsimile:  (212) 213-5949

Gregory F. Coleman, *Admitted Pro Hac Vice*
Email:  greg@gregcolemanlaw.com
Mark E. Silvey, *Admitted Pro Hac Vice*
Email:  mark@gregcolemanlaw.com
Adam A. Edwards, *Admitted Pro Hac Vice*
Email:  adam@gregcolemanlaw.com
Lisa A. White, *Admitted Pro Hac Vice*
Email:  lisa@gregcolemanlaw.com
GREG COLEMAN LAW PC
First Tennessee Plaza
800 South Gay Street, Suite 1100
Knoxville, Tennessee 7929
Telephone:  (865) 247-0080
Facsimile:  (865) 522-0049

*Attorneys for Plaintiffs*

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION TO DISMISS - 24
CASE NO. 3:17-cv-05201 RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on June 30, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Caryn Geraghty Jorgensen, WSBA #27514
Email: cjorgensen@millsmeyers.com
John T. Fetters, WSBA #40800
Email: jfetters@millsmeyers.com
Brett T. MacIntyre, WSBA #46572
Email: bmacintyre@millsmeyers.com
MILLS MEYERS SWARTLING
1000 Second Avenue, Suite 3000
Seattle, Washington 98104-3028
Telephone: (206) 382-1000
Facsimile: (206) 386-7343

Cari K. Dawson, *Admitted Pro Hac Vice*
Email: cari.dawson@alston.com
Bradley M. Strickland, *Admitted Pro Hac Vice*
Email: brad.strickland@alston.com
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
Telephone: (404) 881-7766
Facsimile: (404) 881-7777

Bradley W. Petersen, *Admitted Pro Hac Vice*
Email: bpeteresen@slatterypetersen.com
SLATTERY PETERSEN PLLC
2828 North Central Avenue, Suite 1111
Phoenix, Arizona 85004
Telephone: (602) 507-6108
Facsimile: (866) 323-9593

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION TO DISMISS - 25
CASE NO. 3:17-CV-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Sherry A. Rozell, *Admitted Pro Hac Vice*
TURNER REID
Email: srozell@trdlp.com
1355 East Bradford Parkway Suite A
Springfield, Missouri 65806
Telephone: (417) 883-2120
Facsimile: (417) 883-5024

*Attorneys for Defendant*

DATED this 30th day of June, 2017.

TERRELL MARSHALL LAW GROUP PLLC

By:  /s/ Beth E. Terrell, WSBA #26759
Beth E. Terrell, WSBA #26759
Email: bterrell@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

*Attorneys for Plaintiffs*

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com