HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JESSICA BEATY and JESSICA BEATY, et al.,

    Plaintiffs,

 v.

FORD MOTOR COMPANY,

    Defendant.

CASE NO. C17-5201RBL

ORDER

THIS MATTER is before the Court on Defendant Ford's Motion to Dismiss. Plaintiff Jessica[1] Beatty claims her Ford Escape's panoramic glass moon roof spontaneously shattered, due to a manufacturing defect common to a wide range of Ford vehicles. She claims that sunroof material is too thin, leading to failure. She sued, seeking to represent a class of purchasers of such vehicles. She asserts claims for breach of express and implied warranties, fraudulent concealment, and breach of Washington's Consumer Protection Act.

Ford seeks dismissal, arguing that each claim fails as a matter of law. It argues Beatty does not have standing to assert claims related to Ford models she did not purchase and therefore

---

[1] Jacob and Jessica Beaty, husband and wife, are the named plaintiffs. Jessica was the subject car's primary user and this Order refers to her in the singular for clarity.

ORDER - 1

that the Court does not have jurisdiction. It argues that its express warranty has expired by its terms, and that the limitations period for any implied warranty claim has expired. It argues that Beaty and the plaintiff class she seeks to represent lack contractual privity with Ford because she (and they) purchased vehicles from Ford dealers, not from Ford. Ford argues Beaty's state law claims are time-barred, that she has not pled and cannot plead that Ford had knowledge of the defect, and that the alleged omission was not likely to mislead. Ford seeks dismissal under Fed. R. Civ. P. 12(b)(1) and (b)(6).

**A. Standard.**

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *id.*).

Although *Iqbal* establishes the standard for deciding a Rule 12(b)(6) motion, Rule 12(c) is "functionally identical" to Rule 12(b)(6) and that "the same standard of review" applies to motions brought under either rule. *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 647 F.3d 1047 (9th Cir. 2011), *citing Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir.1989); *see also Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (applying *Iqbal* to a Rule 12(c) motion).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

**B. Standing.**

Ford argues that because Beaty purchased only a 2013 Escape Titanium model, she does not have standing to represent a class composed of purchasers of other Ford vehicles. It argues that Beaty seeks to represent purchasers of sixteen models from Ford, Lincoln and Mercury, spanning eight model years, with sunroofs manufactured by two different suppliers. It claims that this disparity means that Beaty cannot meet her burden of pleading (and demonstrating) that the products at issue are "substantially similar." *See generally* Fed. R. Civ. P. 23; see *also Lohr v. Nissan North America*, 2017 WL 1037555 (W.D. Wash.). It argues that this dis-similarity means that Beaty does not have standing to assert class claims on behalf of other, non-similarly situated, plaintiff class members.

Beaty argues, persuasively, that "substantial similarly" is part of Rule 23's requirement of typicality, adequacy, and commonality; it is not a standing (or jurisdictional) inquiry. *See*

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6), the court construes the complaint in the light most favorable to the non-moving party. *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005); *see also Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Generally, the court must accept as true all well-pleaded allegations of material fact and draw all reasonable inferences in favor of the plaintiff. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.,* 135 F.3d 658, 661 (9th Cir. 1998).

*Lohr* does not purport to place a numerical limit on the number of vehicles a plaintiff can put at issue. There were seven models there and there are 16 here, but that is not a "legal and factual" distinction that warrants a different result than the denial of Nissan's Motion to Dismiss for lack of standing in that case. *See Lohr* at *4. Beatty can and has sufficiently pled that the sunroof defects are similar across the lines, vehicles, and model years, and that the manufacturing or design defect is the same regardless of the manufacturer.

The Motion to Dismiss based on lack of standing is DENIED.

**C. Express Warranty**

Ford argues that Beaty's Express Warranty claims should be dismissed because she did not seek repair of the allegedly defective panoramic sunroof until after the express warranty (three years, 36,000 miles) had expired. Accurately anticipating Beaty's response on this point, it also argues that its warranty is not unconscionable and that it did not fail of its essential purpose[2].

---

[2] Ford also argues that Beaty failed to plead that she and those she seeks to represent notified Ford that it was breaching its warranty—Beaty notified her dealer, instead. But even if this "threadbare" allegation is insufficient, the corrective is amendment, not dismissal. In any event, Beaty argues that notice would have been futile because Ford knew of the defect, and even where claims were made, Ford replaced shatter sunroofs with identical, defective parts.

It argues that the warranty is not substantively or procedurally unconscionable, because customers had a meaningful choice (they could have purchased from a different manufacturer, or opted for an extended warranty), and because the terms of the warranty do not "shock the conscience." It also relies on *Smith v. Ford Motor Co*., 749 F.Supp.2d 980 (N.D. Cal. 2010), which held that plaintiffs had failed to factually support their claim that Ford's warranty was unconscionable. Ford also argues that the warranty cannot have failed of its essential purpose, where, as here, the customer did not seek to enforce the warranty during its term.

Beaty argues that the express warranty is unconscionable in the context of a known (and allegedly concealed) defect and the disparity in bargaining position between Ford and its customers. She relies on *Lohr* and similar cases holding that one can sufficiently plead a breach of express warranty claim in similar circumstances, by plausibly alleging that the manufacturer knew or should have known of the defect, and that because of the disparity in bargaining power, the customer had no meaningful choice in determining the time limitations. *See also* cases catalogued at Dkt. 35, pp. 16-17. She points out that *Smith* was a summary judgment case; the court did not resolve the sufficiency of the plaintiffs' unconscionability allegations, but rather the sufficiency of their evidence. This, on the other hand, is a motion to dismiss. She also claims that the failure of a sunroof while the car is moving *does* shock the conscience, and that it is not clear that even an extended warranty would have covered the loss.

Beaty also argues that the warranty failed of its essential purpose because even if a warranty claim was made, Ford replaced the shattered sunroofs with identical, defective parts. She argues that a warranty limited to replacement, where the replacement does not remedy the defect, fails of its essential purpose. *See In re Caterpillar, Inc. C13 & C15 Engine Products Liab. Litig*., 2015 WL 4591236 (D.J. N.J. July 29 2015); *Milgard Tempering, Inc. v. Selas Corp.*

*of Am*. 902 F.2d 703 (9th Cir. 1990) (the warranty fails of its essential purpose when it "never lived up to the specifications of the contract"); *see also Lohr, supra*. She argues that Ford knew or should have known that the sunroofs were defective at the time of sale and the express warranty was likely to expire before the sunroof failed. [Dkt. # 35 at 25]

Ford responds that its warranty has already been determined to be conscionable (in *Smith*, even if it was on summary judgment), and argues that the majority of cases hold that a manufacturer's knowledge of a latent defect, without more, is not enough to make an express warranty's time limitation unconscionable. And it argues that *In re Caterpillar* and other cases are distinguishable; they involved the inability to repair defective products *within* the warranty period, while Beaty's claim is that the warranty failed of its essential purpose because Ford did not make repairs *outside* the warranty period. And it argues, persuasively, that Beaty does not and cannot allege that Ford knew the sunroofs were likely to fail after warranty expiration; she alleges elsewhere that the sunroofs fail without warning, sometimes within weeks of purchase and while the car is parked.

Ford also points out that even *Lohr* applied this principle only to a customer who sought repairs during the warranty period; in *Lohr*, one of the plaintiff had a defective sunroof repaired during the warranty period (with identical, defective parts), while the other did not make a warranty claim during the warranty period. It urges the Court to follow what it claims is the better reasoned line of cases, holding that the failure of essential purpose rule is "inapplicable once the warranty has expired." *See Boston Helicopter Charter, Inc. v. Agusta Aviation Corp*., 767 F.Supp.3d 363 (D. Mass 1991), and cases collected therein.

The Court agrees that Ford's knowledge of the defect (established for purposes of this motion) alone does not amount to unconscionability. The better-reasoned and "prevailing" rule is

that a defendant's knowledge of of a latent defect does not render unconscionable a limitation contained in an express warranty." *See Chiarelli v. Nissan N. Am., Inc.*, 2015 WL 5686507 at *7 (E.D.N.Y. Sept. 25, 2015). If the plaintiff had made a claim during the express warranty period (or if the complaint can be amended to assert such a claim on behalf a class of such plaintiffs) the Court would follow *Lohr* and hold that the claim can survive[3] a motion to dismiss. In the absence of such an allegation, Beaty has not plausibly plead that Ford's express warranty is unconscionable, and the Motion to dismiss the express warranty claim is GRANTED. Beaty is GRANTED leave to amend this claim (if she can) to assert a claim based on an in-warranty claim and a replacement with defective parts.

**D. Implied Warranty**

Ford seeks dismissal of Beaty's Implied Warranty of Merchantability, claiming it is barred by her lack of privity with Ford and by the passage of time.

It argues that because Beatty dealt with her dealer, Scarff Ford, and not Ford directly, there is no contractual privity between them. It argues that interactions with a dealer are not sufficient in Washington to establish contractual privity, and that Betty's vague and conclusory allegations about directly dealing with Ford are inadequate because they include no factual support. It argues that similar allegations resulted in dismissal in *Lohr*.

Ford also argues that an implied warranty claim accrues on the breach, even if the customer is not aware of it i.e., that the discovery rule does not apply), and that the limitation

---

[3] Judge Martinez denied Nissan's Motion to Dismiss Lohr's express warranty claim based on the allegation that one plaintiff had made an-in-warranty claim, that the sunroofs were defective at the time of sale, and Ford knew they would fail "before the end of their useful lives." There, as here, the court accepts as true the allegation that the putative class members had no meaningful choice as to the warranty terms. This is true even where an additional-cost extension was available.

period for such a claim is four years. It also claims that Beaty's tolling argument (that the period is tolled by Ford's fraudulent concealment of the defect) is unavailing.

Beatty argues that she was an intended third party beneficiary of Ford's warranty contracts with its dealers and that she is permitted to assert implied warranty claims based on that status. *See In re Toyota Motor Corp. Unintended Acceleration, Mktg, Sales Practices & Products Liab. Litig*. 754 F.Supp.2d 1145 (C.D. Cal 2010). She argues that she has plausibly pled a third party beneficiary implied warranty claim; she relied on Ford's advertising about its defective product and Ford expressly authorizes its customers to use any of its authorized dealers for repairs. She argues that in Washington the contractual privity requirement is relaxed where a manufacturer makes specific representations, in advertising or otherwise, to a plaintiff. *Citing Haughn v Honda Motor Co, Ltd.,* 107 Wn.2d 127, 151 (1986).

Beaty also argues that the limitations period for such a claim was tolled by Ford's fraudulent concealment of the defect (based, again, on its knowledge of the defect, which is established for purposes of this motion). She argues that the fraudulent concealment doctrine applies when a defendant has "concealed facts or otherwise induced a plaintiff not to bring suit." Citing Wood v Gibbons, 38 Wn. app. 343, 346 (1984). She argues she has met this standard by plausibly alleging that Ford knew of the defect, issued limited recalls, and responded to NHTSA inquiries about its sunroofs without disclosing those activities to customers. She argues Ford's conduct amounts to affirmative conduct that would lead a reasonable person to believe no claim of concealment exists.

Ford responds that Beaty has not and cannot plausibly allege facts satisfying Washington's "sum of the interactions" test for third party beneficiary status: she must allege that Ford knew her identity, her purpose in purchasing, and her requirements. *See Touchet Valley*

*Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc.*, 119 Wn.2d 334, 345 (1992). it argues that interactions with a dealer do not suffice, and it is facially not plausible that Ford knew her identity. And it points out that such allegations were deemed insufficient in *Lohr*. Judge Martinez dismissed the plaintiffs' third party beneficiary claim in *Lohr* (without prejudice), determining that they had not plausibly pled facts supporting their assertion that they had direct delaings with Nissan; like Beaty, they claimed they dealt with a dealer.

The Court agrees with this reasoning. Washington's standard for finding third party beneficiary status in this context is not relaxed, it is difficult. Beaty has not plausibly plead, even in the context of a motion to dismiss, that she was a third party beneficiary of Ford's contract with its dealers.

However, the corrective for this is rarely dismissal with prejudice, and it is not here. It cannot be said that Beaty cannot so plead. As was the case in *Lohr*, this implied warranty claim is dismissed without prejudice, and with leave to amend.

**E. CPA**

Beaty asserts a state law claim under Washington's Consumer Protection Act, alleging that Ford knew of and concealed the sunroof defect, and knowingly replaced shattered roofs with similarly defective parts.

Ford seeks dismissal of Beaty's "fraudulent concealment" and CPA claims, arguing that the limitations period for each (three and four years, respectively) has expired. It argues that Beaty could have discovered the alleged failure to disclose by March 1, 2013[4], at the latest, and cites a series of Washington cases holding that these causes of action accrue when the plaintiff,

---

[4] Somewhat ironically (given its own claim of a lack of knowledge throughout its briefing), Ford now points to all of the publically-available information about defective sunroofs, through the NHSTA, media and other reports about other manufacturers' problems with panoramic sunroofs, and other sources.

exercising due diligence, could have discovered the fraud, even if she is not aware of the full extent of the damages. *See, e.g., Hudson v Condon*, 101 Wn. App. 866, 875 (2000).

Ford argues that the limitations period did not toll under any theory; Beaty did not exercise due diligence, she has not plausibly pled that it actively concealed the defects, and Ford is not equitably or otherwise estopped from asserting the limitations period as a defense.

It is here that Ford's "pleading deficiency" motion slides into an argument that Beaty has not and cannot prove her allegations. There are ample, plausible allegations that Ford knew of and actively failed to disclose the sunroofs' deficiencies. Some come from Ford's own articulation of the public information (not provided by Ford) that panoramic sunroofs were generally prone to shattering. The conduct alleged (if not yet proven) is sufficient to invoke tolling on any of these bases. Ford's defenses on this point are inherently factual in nature, and its Motion to Dismiss the CPA and fraudulent concealment claims on based on the applicable limitations periods is DENIED.

IT IS SO ORDERED.

Dated this 16th day of January, 2018.

Ronald B. Leighton
United States District Judge