Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| JACOB BEATY and JESSICA BEATY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | No. 3:17-cv-05201-RBL<br><br>DEFENDANT FORD MOTOR COMPANY'S MOTION TO EXCLUDE THE TESTIMONY OF NEIL HANNEMANN<br><br>NOTE ON MOTION CALENDAR: November 22, 2019<br><br>ORAL ARGUMENT REQUESTED |

## FORD MOTOR COMPANY'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT NEIL HANNEMANN

# **TABLE OF CONTENTS**

I.   OVERVIEW OF HANNEMANN'S METHODOLOGY ................................................. 2

II.  LEGAL STANDARD ....................................................................................................... 3

III. ARGUMENT ..................................................................................................................... 5

    A.  Hannemann's Opinions are Speculative and Unreliable. ........................................ 5

        1.  Hannemann's Occurrence Opinion is Pure *Ipse Dixit*. ............................... 5

        2.  Hannemann's Safety Opinion is Grounded in No Relevant Data ............... 7

        3.  By Offering Opinions Unsupported by a Reliable and Sound Methodology, Hannemann Takes the Same Flawed Approach That Has Resulted in His Opinions Being Excluded in Other Cases. .................. 9

    B.  Hannemann's Unreliable Opinions Provide No "Appreciable Help" ................... 10

    C.  Hannemann is Not Qualified to Render His Occurrence Opinion ........................ 11

IV.  CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ammons v. Wash. Dep't of Social & Heath Servs.*,
  No. 3:08-cv-5548, 2013 WL 414230 (W.D. Wash. Feb. 1, 2013) ............................................4

*Berman v. Sink*,
  No. 1:13-cv-597, 2016 U.S. Dist. LEXIS 70048 (E.D. Cal. May 27, 2016) ..........................11

*Bridgham-Morrison v. Nat'l Gen. Assurance Co.*,
  No. 2:15-cv-927, 2016 U.S. Dist. LEXIS 62433 (W.D. Wash. May 11, 2016). .......................5

*Bunker v. Ford Motor Co.*,
  640 F. App'x 661 (9th Cir. 2016) ...........................................................................................4

*Cholakyan v. Mercedes-Benz USA, LLC*,
  281 F.R.D. 534 (C.D. Cal. 2012) ............................................................................................4

*Daubert v. Merrell Dow Pharms., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ............................................................................................5, 12

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)......................................................................................................3, 4, 5

*Doyle v. Chrysler Grp. LLC*,
  8:13-cv-620, 2015 WL 353993 (C.D. Cal. Jan. 21, 2015)......................................................9

*Elcock v. Kmart Corp.*,
  233 F.3d 734 (3d Cir. 2000)..................................................................................................12

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .................................................................................................4

*Fosmire v. Progressive Max. Ins. Co.*,
  277 F.R.D. 625 (W.D. Wash. 2011) .......................................................................................6

*General Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)............................................................................................................3, 5

*Guidroz-Brault v. Missouri Pac. R. Co.*,
  254 F.3d 825 (9th Cir. 2001) .................................................................................................5

*Hathaway v. Bazany*,
  507 F.3d 312 (5th Cir. 2007) .................................................................................................9

*Highland Capital Mgmt., L.P. v. Schneider*,
    379 F. Supp. 2d 461 (S.D.N.Y. 2005)......................................................................................11

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*,
    No. 2:13-ml-2438, 2017 WL 2559615 (C.D. Cal. June 7, 2017) ...........................................4

*Jack v. Borg-Warner Morse TEC LLC*,
    No. 2:17-cv-537, 2018 U.S. Dist. LEXIS 135424 (W.D. Wash. Aug. 10, 2018)....................4

*Johns v. Bayer Corp.*,
    No. 3:09-cv-1935, 2013 U.S. Dist. LEXIS 51823 (S.D. Cal. Apr. 10, 2013) ................... 10-11

*Kilby v. CVS Pharmacy, Inc.*,
    No. 3:09-cv-2051, 2012 WL 1132854 (S.D. Cal. Apr. 4, 2013) ..............................................4

*Kramer v. Ford Motor Co.*,
    No. 0:12-cv-1149, 2015 U.S. Dist. LEXIS 176576 (D. Minn. Dec. 30, 2015) .................. 9-10

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)..................................................................................................................1

*Lust v. Merrell Dow Pharm., Inc.*,
    89 F.3d 594 (9th Cir. 1996) ..................................................................................................3, 4

*Neb. Plastics, Inc. v. Holland Colors Americas, Inc.*,
    408 F.3d 410 (8th Cir. 2005) ....................................................................................................9

*Newkirk v. Conagra Foods*,
    727 F. Supp. 2d 1006 (E.D. Wash 2010) .................................................................................3

*Nixon-Egli Equip. Co. v. John A. Alexander Co.*,
    949 F. Supp. 1435 (C.D. Cal. 1996) .........................................................................................4

*Ollier v. Sweetwater Union High School Dist.*,
    768 F.3d 843 (9th Cir. 2014) ....................................................................................................5

*Ramirez v. Olympic Health Mgmt.*,
    610 F. Supp. 2d 1266 (E.D. Wash. 2009) ................................................................................4

*Samuels v. Holland Am. Line-USA Inc.*,
    656 F.3d 948 (9th Cir. 2011) ....................................................................................................4

*S.E.C. v. Tourre*,
    950 F. Supp. 2d 666 (S.D.N.Y. 2013)................................................................................ 11-12

*Smith v. Goodyear Tire & Rubber Co.*,
    495 F.3d 224 (5th Cir. 2007) ..................................................................................................12

*Stilwell v. Smith & Nephew, Inc.*,
    482 F.3d 1187 (9th Cir. 2007) ...............................................................................3, 4

*In re Toyota Motor Corp. Unintended Acceleration*,
    978 F. Supp 2d 1053 (C.D. Cal. 2013) ......................................................................10

*U.S. v. Freeman*,
    498 F.3d 893 (9th Cir. 2007) ....................................................................................10

*U.S. v. Gwaltney*,
    790 F.2d 1378 (9th Cir. 1986) ....................................................................................4

*U.S. v. Gen. Motors Corp.*,
    518 F.2d 420 (D.C. Cir. 1975) ....................................................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................................................4

*Weams v. FCA US L.L.C.*,
    No. 3:17-cv-4, 2019 U.S. Dist. LEXIS 31242 (M.D. La. Feb. 27, 2019) ...................9

**Other Authorities**

49 C.F.R. § 571.205 ...............................................................................................................8

Denial of Motor Vehicle Petition from Robert Gingher
    60 Fed. Reg. 63758 (Dec. 1995) .................................................................................6

Fed. R. Civ. P. 26(a)(2)(B)(ii) ................................................................................................7

Fed. R. Evid. 702 ........................................................................................................ *passim*

Plaintiffs maintain that the panoramic sunroofs ("PSRs") in the Class Vehicles[1] "are all prone to abrupt shattering," which "endangers drivers, passengers, and anyone else on the road." Dkt. #68 at 2, 4 (Pls.' Mtn. for Class Cert.). The only support they have for these sweeping, conclusory statements are the inadmissible opinions of Neil Hannemann and Thomas Read, which were derived by doing no actual expert work.

To formulate his opinion that all the Class Vehicles' PSRs "are all prone to abrupt shattering" ("Occurrence Opinion"), ███████████████████████████████ ███████████████████████████ To derive his opinion that the Class Vehicle PSRs "endanger[] drivers, passengers, and anyone else on the road" ("Safety Opinion"),[2] Hannemann collected meaningless anecdotes. Nothing more and nothing less. Hannemann's opinions lack any "intellectual rigor," *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999), and are subject to exclusion under Fed. R. Evid. 702, for three reasons.

*First*, Hannemann's opinions are entirely speculative and unreliable. Counting replacement parts in a vacuum is not an accepted methodology for assessing whether a component is defective because it assumes that all parts were sold *only* to fix the alleged defect. This is nonsensical because PSRs fails for many reasons, including vehicle collisions, leaks, sticking, noise issues, etc. And cherry-picking anecdotes related to shattered PSRs does not mean that the Class Vehicles' PSRs are unsafe.

*Second*, the opinions are unhelpful and will not assist the trier of fact because they require no "scientific, technical or specialized knowledge" as mandated by Rule 702. A fact finder can count parts using a calculator and she can also examine and assess the reliability of anecdotal evidence. Moreover, the Occurrence Opinion is unhelpful for the additional reason that a

---

[1] The Class Vehicles include the 2007–2014 Ford Edge, 2013–2017 Ford Escape, 2011–2017 Ford Explorer, 2007–2015 Lincoln MKX, 2010–2017 Lincoln MKT, and the 2009–2016 Lincoln MKS.

[2] Hannemann described these opinions as his "Occurrence Opinion" and his "Safety Opinion," which is how they will be referred to in this motion. Wallace Decl. Ex. A (Hannemann Dep. I at 38:16). He also purports to opine, at least in his written report, that several design characteristics of the PSRs in the Class Vehicles render them defective—yet he admitted at his deposition that he does not offer that opinion after all and would defer to Plaintiff's other expert, Tom Read, on this issue. *See id.* (Hannemann Dep. I at 38:17-18); *see also id.* Ex. B (Hannemann Dep. II at 168:15-21).

replacement rate is not the functional equivalent of an incident rate (or even a close approximation of an incident rate) so it is not relevant to whether PSRs are defective.

*Third*, Hannemann is not qualified to give his Occurrence Opinion. While he may be a "qualified automotive expert," Dkt. #68 at 20, he is not an expert in glass, glass replacement, glass replacement rates or statistics. For all of these reasons, this Court should exclude Hannemann and his Occurrence Opinion and Safety Opinion.

**I.  OVERVIEW OF HANNEMANN'S METHODOLOGY**

Hannemann's deficient methodology can be most succinctly summarized as counting parts and counting anecdotes. He readily admits that his Occurrence Opinion is premised on "just counting [PSR] parts" and dividing that number of parts by the number of Class Vehicles sold. Wallace Decl. Ex. B (Hannemann Dep. II at 49:22-50:5).

*Id*. Ex. C (Hannemann Decl. II ¶ 15).

*Id.* (¶ 17). Hannemann though ***admits that he did no work to verify that this is true***. *Id*. Ex. A (Hannemann Dep. I at 113:21-114:20); *id.* Ex. B (Hannemann Dep. II at 153:12-154:9).

Like the methodology he employed for his Occurrence Opinion, to formulate his Safety Opinion, Hannemann counted things–this time anecdotes. Specifically, he looked at one document

1 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

2 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

3 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* Ex. A (Hannemann Dep. I at 117:15-118:22). He did not independently investigate any reported shattering incidents, he did not speak to the individuals involved, nor did he otherwise try to determine why the individuals' PSRs allegedly shattered. *Id.* (Hannemann Dep. I at 178:25-179:12). He also did not inspect or test a single Class Vehicle for this case. *Id.* (Hannemann Dep. I at 134:17-135:21). In sum, once he collected the requisite number of anecdotes about PSRs shattering *generally*, his job was complete, and he could declare the Class Vehicles' PSRs defective. Like the Occurrence Opinion, Hannemann offers his safety opinion without doing any actual expert work to validate it.

## II.   LEGAL STANDARD

As proponents of Hannemann's testimony, Plaintiffs bear the burden of proving its admissibility. *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). When ruling on expert admissibility, the Court must act as a "gatekeeper" by ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) ("Rule 702 embodies the twin concerns of 'reliability' and 'helpfulness.'"). Regarding reliability, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. An expert may not base his opinion on speculation or conjecture. *General Elec. Co. v. Joiner*, 522 U.S. 136, 144-45 (1997); *see also Newkirk v. Conagra Foods*, 727 F. Supp. 2d 1006, 1022 (E.D. Wash 2010). Regarding relevance, an expert witness may only testify if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine

---

[3] *See* Dkt. #1 at 63-79 (Pls.' Complaint Exs. 2-3).
[4] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓allace Decl. Ex. A (Hannemann Dep. I at 117:15-118:21).

a fact in issue . . . ." Fed. R. Evid. 702; *see also Ramirez v. Olympic Health Mgmt.*, 610 F. Supp. 2d 1266, 1276 (E.D. Wash. 2009) ("The test for helpfulness is essentially a relevancy inquiry."); *U.S. v. Gwaltney*, 790 F.2d 1378, 1381 (9th Cir. 1986) ("The general test of the admissibility of expert testimony is whether the jury can receive "appreciable help" from such testimony."). "A court may exclude testimony that falls short of achieving either end." *Stilwell*, 482 F.3d at 1192.

Additionally, Rule 702 requires an expert to be qualified by "knowledge, skill, experience, training or education," and this means "qualified in the field they will testify about." *Jack v. Borg-Warner Morse TEC LLC*, No. 2:17-cv-537, 2018 U.S. Dist. LEXIS 135424, at *53 (W.D. Wash. Aug. 10, 2018). When an expert has "virtually no familiarity" with a subject area, he cannot testify regarding that subject. *Bunker v. Ford Motor Co.*, 640 F. App'x 661, 662 (9th Cir. 2016); *see also Ammons v. Wash. Dep't of Social & Heath Servs.*, No. 3:08-cv-5548, 2013 WL 414230, at *1 (W.D. Wash. Feb. 1, 2013) (Leighton, J.) (excluding expert because even though she had experience in hospitals, she was not a hospital administrator so could not opine on the standard of care for a hospital administrator).

District courts should apply a *Daubert* analysis when a plaintiff offers expert testimony in support of class certification. *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 354 (2011) ("[T]he District Court concluded that *Daubert* did not apply to expert testimony at the certification stage of class-action proceedings. . . .We doubt that is so. . . ."). [5] The Ninth Circuit has approved of this rule.[6] "[T]he Ninth Circuit has [also] made clear, [that] *Daubert* . . . can be invoked at the summary judgment stage." *Nixon-Egli Equip. Co. v. John A. Alexander Co.*, 949 F. Supp. 1435, 1447 (C.D. Cal. 1996) (citing *Lust*); *see also, e.g.*, *Samuels v. Holland Am. Line-USA Inc.*, 656 F.3d 948, 953 (9th Cir. 2011). Hannemann's opinions should be excluded because they are based on pure speculation and are not helpful, and moreover, he is not qualified to offer his Occurrence Opinion.

---

[5] That is especially true here, where Plaintiffs are affirmatively and substantively relying on their experts' opinions and asking the Court to credit them as part of their Motion for Class Certification. *See generally* Dkt. #68.

[6] *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011); *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. 2:13-ml-2438, 2017 WL 2559615, at *3 (C.D. Cal. June 7, 2017) (explaining that the Ninth Circuit has approved of a "rigorous application of *Daubert*" at class certification); *Cholakyan v. Mercedes-Benz USA, LLC,* 281 F.R.D. 534, 542 (C.D. Cal. 2012); *Kilby v. CVS Pharmacy, Inc.*, No. 3:09-cv-2051, 2012 WL 1132854, at *2 n.2 (S.D. Cal. Apr. 4, 2012).

## III. ARGUMENT

### A. Hannemann's Opinions are Speculative and Unreliable.

Expert testimony based on "personal opinions and speculation rather than on a systematic assessment . . . is inadmissible as a matter of law under Rule 702," and "speculative testimony is inherently unreliable." *Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 861 (9th Cir. 2014); *see also Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) ("unsupported speculation and subjective beliefs" are inadmissible). Hannemann's speculative opinions should be excluded.

#### *1. Hannemann's Occurrence Opinion is Pure Ipse Dixit.*

The Supreme Court has declared that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of an expert." *Joiner*, 522 U.S. at 146. The trial court's gate-keeping function requires more than simply taking the expert's word for it. *Daubert v. Merrell Dow Pharms., Inc.,* 43 F.3d 1311, 1319 (9th Cir. 1995). Thus, where an expert relies on "his mere say-so" to support his opinions, they should be excluded. *Bridgham-Morrison v. Nat'l Gen. Assurance Co.*, No. 2:15-cv-927, 2016 U.S. Dist. LEXIS 62433, at *20-21 n.6 (W.D. Wash. May 11, 2016). Hannemann's Occurrence Opinion, which is founded upon two erroneous assumptions, is quintessential *ipse dixit* that should be excluded.

Hannemann's first assumption is that the replacement rates for the Class Vehicles' PSRs allow him to determine whether they are "prone to abrupt shattering" and therefore defective. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," Wallace Decl. Ex. C (Hannemann Decl. II ¶ 15), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. Ex. A (Hannemann Dep. I at 108:20-109:1). Had Hannemann done any expert work at all, he would have realized that this is not an acceptable methodology for calculating the alleged failure rate for PSRs

because the Class Vehicles' PSRs were replaced for a litany of reasons. Notably, NHTSA agrees that counting replacement parts is a poor proxy for failure rates. *See* Denial of Motor Vehicle Petition from Robert Gingher, 60 Fed. Reg. 63758 (Dec. 1995) (stating "replacement part sales do not accurately reflect the number of occurrences of [an] alleged defect" where there is more than one failure mode for a part).[7] And Ford's expert Jeya Padmanaban ▮▮▮▮▮▮

▮▮▮▮▮▮

▮▮▮▮▮▮ *See* Dkt. #97 (Padmanaban Decl. Ex. A at 32) (filed under seal).

▮▮▮▮▮▮

▮▮▮▮▮▮

Wallace Decl. Ex. A (Hannemann Dep. I at 95:21-96:7, 169:3-8); *id.* Ex. B (Hannemann Dep. II at 79:17-80:5 & 149:18-23). Indeed, Hannemann's use of his speculative replacement rate alone makes his Occurrence Opinion unrepresentative of the Class Vehicles and therefore subject to exclusion. *See Fosmire v. Progressive Max. Ins. Co.*, 277 F.R.D. 625, 630 (W.D. Wash. 2011) (Leighton, J.) (holding that expert's testimony was subject to exclusion and not reliable because his data was "not representative of the vehicles in the class [Plaintiff] seeks to certify").

Hannemann's assumptions did not just stop there, as Hannemann doubled down, stating: "The replacement rates I have estimated are higher than I would expect to see in a non-defective sunroof and are higher than would be considered acceptable in the automotive industry." Dkt. #70 (Hannemann Decl. I ¶ 29) (filed under seal); *see also* Wallace Decl. Ex. A (Hannemann Dep. I at 170:9-170:23, 176:22-177:8); *id.* Ex. B (Hannemann Dep. II at 67:14-20). ▮▮▮▮▮▮

▮▮▮▮▮▮

---

[7] Ford's expert, Jeya Padmanaban confirmed that ▮▮▮▮▮▮ Dkt. #97 (Padmanaban Decl. Ex. A at 32) (filed under seal). Notably, Ms. Padmanaban analyzed claims data similarly to how NHTSA would analyze such data ▮▮▮▮▮▮

███████████████████████████████████. *Id.* Ex. A (Hannemann Dep. I at 169:25-170:14). He also failed to analyze how PSR replacement rates compare traditional sunroofs. *Id.* (Hannemann Dep. I at 134:7-9); *id.* Ex. B (Hannemann Dep. II at 67:21-25).[8] While Hannemann chose not to compare fracture or parts replacement rates between Class Vehicle PSRs and the traditional sunroofs that have been used for decades, Plaintiffs inadvertently did so. As part of the Complaint, Plaintiffs created a chart of PSR complaints from NHTSA consumer claims; however, 59 of the 99 examples of glass shattering were traditional sunroofs, not PSRs. *See* Dkt. #2 (Compl. at Ex. 1) *and compare with* Dkt. # 103 (Dawson Decl. Exs. A & B).

Hannemann's failure to compare Ford's PSR replacement rates to the rates of other manufacturers is likely attributable to the fact that such a comparison completely contradicts Plaintiffs' theory that Ford's PSRs are defective. Had he actually engaged in an expert analysis and performed a comparison similar to what was done by Ford's expert Jeya Padmanaban,[9] he would have discovered that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Dkt. #97 (Padmanaban Decl. Ex. A at 25, 27) (filed under seal). Thus, because Hannemann's Occurrence Opinion is based on nothing more than his say-so–that a replacement rate is the proper way to determine a failure rate and that the replacement rate for the Class Vehicles' PSRs is "too high," this opinion must be excluded.

### 2. *Hannemann's Safety Opinion is Grounded in No Relevant Data.*

Hannemann's Safety Opinion that "the panoramic sunroof shattering in the Ford Vehicles in this case is dangerous for drivers and passengers in the vehicles, and also for nearby pedestrians and other drivers" is likewise unreliable. Dkt. #70 (Hannemann Decl. ¶ 31) (filed under seal). Hannemann suggests that "spontaneous shattering" could distract drivers or could cut them upon shattering, *id.* ¶¶ 32-39, but he has done no analysis to confirm that this is true. While he collected

---

[8] Though Plaintiffs may maintain that Hannemann compared the Class Vehicles' PSRs to Hyundai or Kia's PSRs because he is an expert in those cases as well, such a comparison cannot serve as a basis for his opinions because the failures rates of the Hyundai and Kia PSRs have not been disclosed to Ford. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii) (requiring experts to disclose "the facts or data considered").

[9] As explained below in Section III.C., Hannemann lacks the qualifications and experience to perform such an analysis.

anecdotes related to shattering sunroofs generally (which were non-specific to the Class Vehicles), he did not independently investigate these reported incidents, speak to the individuals involved, or otherwise try to determine why the individuals' PSR allegedly shattered. Wallace Decl. Ex. A (Hannemann Dep. I at 178:25-179:21). He also did not inspect or test a single Class Vehicle. *Id.* (Hannemann Dep. I at 134:17-135:21). He also is not aware of anyone (Class Vehicle owner or non-Class Vehicle owner) who has ever been involved in an accident because his or her PSR shattered. *Id.* (Hannemann Dep. I at 179:22-180:5). Likewise, he is not aware of anyone being seriously injured because of a shattering PSR. *Id.* (Hannemann Dep. I at 180:6-15). Thus, his suggestion that PSRs are unsafe because they could cause driver distraction or injury is rank speculation.

In stark contrast to Hannemann, Ford's experts collected data to evaluate whether a person might be distracted by an alleged shattering PSR and whether there was a substantial risk of injury posed by broken tempered glass. On the former point, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[10] On the latter point, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Dkt #97 (Padmanaban Decl. Ex. A at 28) (filed under seal).

Tempered glass, as plaintiffs' experts agree, is commonly referred to as "safety glass" within the glass industry. *See*, *e.g.*, Wallace Decl. Ex. D (Read Dep. I at 43:4-5) ("I might add that they call tempered safety glass 'safety glass'"). Indeed, tempered glass is specifically approved for use in roof applications in Federal Motor Vehicle Safety Standard ("FMVSS") 205. As explained in Ford's Motion for Summary Judgment, dkt. #102, NHTSA has issued these safety standards to "reduce injuries resulting from impact to glazing [i.e., glass] surfaces." 49 C.F.R. § 571.205.

---

[10] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dkt. #95 (Carhart Decl. Ex. A at 36) (filed under seal). By comparison, an engine backfire is 140 dB, a horn sounding is 150 dB, and a balloon popping is 157 dB.

Hannemann's Safety Opinion is not just conjecture, it is contrary to the opinions of the federal government and the only actual evidence presented on this issue by either party in this case.

### 3. By Offering Opinions Unsupported by a Reliable and Sound Methodology, Hannemann Takes the Same Flawed Approach That Has Resulted in His Opinions Being Excluded in Other Cases.

Hannemann's opinions are not supported by any relevant data or by any sound methodology. *See*, *e.g.*, *U.S. v. Gen. Motors Corp.*, 518 F.2d 420, 438 n.84 (D.C. Cir. 1975) (existence of a safety defect depends on, among other things, "the failure rate of the component in question, failure rates of comparable components, and the importance of the component to the safe operation of the vehicle"). These opinions are therefore inadmissible and should be excluded. *See Doyle v. Chrysler Grp. LLC*, 8:13-cv-620, 2015 WL 353993, at *7 (C.D. Cal. Jan. 21, 2015) (excluding expert opinion "that safety components such as window regulators should have a failure rate approaching zero per cent over the life of a vehicle" because the opinion "appears to be based more on [the expert's] personal experience and/or speculation than it is based on data and analysis").[11]

This is not the first time that Hannemann has attempted to offer speculation and his own *ipse dixit* in place of analysis based on sound scientific methodologies. In fact, Hannemann has a history of doing just that. For example, in a recent case against Chrysler, Hannemann's opinions were excluded because they were "pure speculation":

> The Court finds that these opinions must be excluded on the basis that they are a product of unreliable principles and methods. Mr. Hannemann provides no theory regarding the cause of the airbag deployment that can or has been tested. Indeed, Mr. Hannemann performed no testing on the vehicle or the airbag system at all. While Mr. Hanneman provides the conclusory opinion that the vehicle is defective, he was unable to provide any specific opinion pertaining to the alleged defect, much less whether the defect was one of design or manufacture . . . Because Mr. Hannemann fails to provide any specific theory for the inadvertent airbag deployment, his conclusory statements regarding the existence of a defect or negligent act attributable to Defendant amounts to pure speculation, and must be excluded.

---

[11] *See also Hathaway v. Bazany*, 507 F.3d 312, 318-19 (5th Cir. 2007) (trial court properly excluded expert testimony because it relied on insufficient factual support and "a host of unsupported conjectures that falls far short of a methodology"); *Neb. Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410, 416 (8th Cir. 2005) ("An expert opinion that fails to consider the relevant facts of the case is fundamentally unsupported.").

1 *Weams v. FCA US L.L.C.*, No. 3:17-cv-4, 2019 U.S. Dist. LEXIS 31242, at *14-15 (M.D. La. Feb.
2 27, 2019). Hannemann has also had opinions excluded as speculative in prior cases against Ford.
3 *See Kramer v. Ford Motor Co.*, No. 0:12-cv-1149, 2015 U.S. Dist. LEXIS 176576, at *31 (D.
4 Minn. Dec. 30, 2015) ("Hannemann may not testify about Mr. Hille's bulb-drop
5 testing…[because] it does not appear to the Court that the underlying methodology for this testing
6 is sufficiently reliable to be presented to the jury."); *see also In re Toyota Motor Corp. Unintended*
7 *Acceleration,* 978 F. Supp 2d 1053, 1090 (C.D. Cal. 2013) (excluding Hannemann's speculation
8 about brake pedal force applied by the majority of drivers because "[t]he sources cited d[id] not
9 support []his conclusion").

          **B.    Hannemann's Unreliable Opinions Provide No "Appreciable Help."**

11       A second tenet of expert testimony is that it be relevant or helpful to the jury. Fed. R. Evid.
12 702 ("A witness who is qualified . . . may testify in the form of an opinion or otherwise if: the
13 expert's scientific, technical, or other specialized knowledge ***will help the trier of fact to***
14 ***understand the evidence or to determine a fact in issue.***") (emphasis added). Rule 702 "makes
15 inadmissible expert testimony as to a matter which obviously is within the common knowledge of
16 jurors because such testimony, almost by definition, can be of no assistance." *U.S. v. Freeman*,
17 498 F.3d 893, 905 (9th Cir. 2007) (internal quotation omitted). This is because there is a risk that
18 the trier of fact will give undue weight to what is otherwise lay testimony, when presented through
19 an expert. *Id.* at 903 (recognizing the danger that lay testimony given by an expert has the
20 "imprimatur of scientific or technical validity").

21       Hannemann's Occurrence Opinion and Safety Opinion will not assist the trier of fact
22 because each is inherently speculative and unreliable as described above. Moreover, both opinions
23 required no scientific, technical or specialized knowledge. Hannemann's Occurrence Opinion only
24 requires ███████████████████████████████████████████████████████
25 ███████████████████████████████████ Wallace Decl. Ex. C (Hannemann Decl. II ¶ 15);
26 *id.* Ex. A (Hannemann Dep. I at 108:12-109:1); *id.* Ex. B (Hannemann Dep. II at 18:24-20:4).

Similarly, Hannemann's collection and interpretation of unverified anecdotal evidence regarding driver distraction and the risk of injury created by shattering PSRs requires no scientific, technical or specialized knowledge. *See Johns v. Bayer Corp.*, No. 3:09-cv-1935, 2013 U.S. Dist. LEXIS 51823, at *97 (S.D. Cal. Apr. 10, 2013) (excluding expert report which offered "nothing more than a factual narrative" of otherwise admissible evidence"); *Berman v. Sink*, No. 1:13-cv-597, 2016 U.S. Dist. LEXIS 70048, at *30 (E.D. Cal. May 27, 2016) (quoting *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005)) ("[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence."). Because the trier of fact can use a calculator and analyze and assign weight to documents in the record, Hannemann's opinions are categorically unhelpful.

The Occurrence Opinion is also unhelpful because it relies on a replacement rate which Hannemann concedes is not the equivalent of an incident rate. Wallace Decl. Ex. C (Hannemann Decl. II ¶ 17) ("I have only presented the parts sales rate as that, the sales rate. I have never stated that this is an incident rate."); *see also id.* Ex. B (Hannemann Dep. II at 87:6-9) ("I have always stated that my part sales rate is not an incident rate. It's something you can use to approximate an incident rate, but it's not an incident rate."). Because Hannemann's replacement rate is not an incident rate, and is at best "***an approximation***"—and, in fact one that is indisputably overinclusive since PSRs are replaced for numerous reasons having nothing to do with the alleged defect and "spontaneous shattering"—it will not allow a trier of fact to better understand Plaintiffs' defect allegations or to determine whether PSRs are defective. *See* Fed. R. Evid. 702. Accordingly, as there is a risk that a finder of fact will give undue weight to Hannemann's opinions if they are admitted, this Court should exclude them.

### C.     Hannemann is Not Qualified to Render His Occurrence Opinion.

Hannemann's Occurrence Opinion is subject to exclusion for a third reason – Hannemann is not qualified to give it. In their Motion for Class Certification, Plaintiffs maintain that Hannemann is a "qualified automotive expert." Dkt. #68 at 20. Ford does not dispute that

Hannemann has some qualifications in the automotive field, but "[b]eing a professional testifying expert in the [automotive] area does not give an individual the qualifications to opine in every [automotive] area as to every type of analysis . . . ." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 679 (S.D.N.Y. 2013); s*ee*, *e.g.*, *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (excluding automotive expert who "has never been employed in any capacity dealing with the design or manufacture of tires. He has never published any articles regarding tires nor has he ever examined a tire professionally prior to this litigation"). Here, Hannemann lacks the requisite qualifications to opine that the frequency with which the Class Vehicles' PSRs are replaced renders them defective.

Indeed, Hannemann concedes that he is not a glass expert. Wallace Decl. Ex. A (Hannemann Dep. I at 146:25-147:1) ("I wouldn't try to qualify as a glass expert."). He also concedes that he has no expertise in statistics. *Id.* Ex. B (Hannemann Dep. II at 89:23-24, 120:11-12, 129:21-22). He also has no experience calculating fracture or replacement rates of glass beyond what he has done in parallel PSR litigation against Hyundai and Kia. *Id.* Ex. A (Hannemann Dep. I at 17:21-18:5, 200:7-12). But experience gained in litigation alone is not enough. "[T]he crucible of litigation makes for a poor classroom" and experts are not qualified to testify when their first experience with an expert issue occurs in court. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 744 n.5 (3d Cir. 2000); *Daubert*, 43 F.3d at 1317 ("[i]n determining whether proposed expert testimony amounts to good science, we may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office"). Because Hannemann has no "knowledge, skill, experience, training or education" in glass replacement rates, he is not qualified to offer his Occurrence Opinion. It should be excluded for this additional reason.

## IV.   CONCLUSION

For all the foregoing reasons, Ford respectfully requests that this Court grant Ford's Motion to Exclude Neil Hannemann and preclude Plaintiffs from relying on any of his opinions.

DATED: September 17, 2019.

        STOKES LAWRENCE, P.S.
        Attorneys for Defendant Ford Motor Company

        By: */s/ Caryn Geraghy Jorgensen*
        Caryn Geraghty Jorgensen, WSBA # 27514
        John Fetters, WSBA # 40800
        Brett MacIntyre, WSBA # 46572
        Stokes Lawrence, P.S.
        1420 Fifth Avenue, Suite 3000
        Seattle, WA 98101
        Phone: 206-812-7463
        Caryn.Jorgensen@stokeslaw.com
        John.Fetters@stokeslaw.com
        Brett.MacIntyre@stokeslaw.com

        ALSTON & BIRD LLP
        Attorneys for Defendant Ford Motor Company

        Cari K. Dawson, Admitted *Pro Hac Vice*
        Kyle G.A. Wallace, Admitted *Pro Hac Vice*
        Alston & Bird LLP
        1201 West Peachtree Street, Suite 4900
        Atlanta, GA 30309
        Phone: 404-881-7000
        cari.dawson@alston.com
        kyle.wallace@alston.com

        SLATTERY PETERSEN PLLC
        Attorneys for Defendant Ford Motor Company

        Bradley W. Petersen, Admitted *Pro Hac Vice*
        Slattery Petersen, PLLC
        2828 N. Central Avenue, Suite 1111
        Phoenix, AZ 85004
        Phone: 602-507-6108
        bpetersen@slatterypetersen.com

        MCAFEE & TAFT
        Attorneys for Defendant Ford Motor Company

        Sherry A. Rozell, Admitted *Pro Hac Vice*
        McAfee & Taft
        Two West 2nd Street, Suite 1100
        Williams Tower II
        Tulsa, OK 74103
        Phone: (918) 587-0000
        sherry.rozell@mcafeetaft.com

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

Mitchell M. Breit, mbreit@simmonsfirm.com, jlucena@simmonsfirm.com

Gregory F. Coleman, greg@gregcolemanlaw.com, dawn@gregcolemanlaw.com

Adam A. Edwards, adam@gregcolemanlaw.com, jackie@gregcolemanlaw.com

Paul J. Hanly, Jr., phanly@simmonsfirm.com

Brittany A. Madderra, bmadderra@terrellmarshall.com

Mark E. Silvey, mark@gregcolemanlaw.com, connie@gregcolemanlaw.com

Amanda M. Steiner, asteiner@terrellmarshall.com bkinsey@terrellmarshall.com, docketrequests@terrellmarshall.com, enordby@terrellmarshall.com, hrota@terrellmarshall.com, filing@terrellmarshall.com

Beth E. Terrell, bterrell@terrellmarshall.com, bkinsey@terrellmarshall.com, docketrequests@terrellmarshall.com, enordby@terrellmarshall.com, hrota@terrellmarshall.com, filing@terrellmarshall.com

Lisa A. White, lisa@gregcolemanlaw.com, dcoleman@gregcolemanlaw.com

I further certify that I mailed a true and correct copy of the foregoing to the following non-CM/ECF participant:

N/A

DATED this 17th day of September 2019.

_____
Legal Assistant

Ford's MTE Hannemann No. 3:17-cv-05201-RBL – 14

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000