THE HONORABLE RONALD B. LEIGHTON

1

2

3

4

5

6

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

7

8

JACOB BEATY and JESSICA BEATY, on
behalf of themselves and all others similarly
situated,

NO. 3:17-cv-05201 RBL

9

Plaintiffs,

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

10

11

vs.

12

FORD MOTOR COMPANY,

13

Defendant.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# TABLE OF CONTENTS

Page No.

I.     INTRODUCTION ........................................................................................1

II.    RELEVANT FACTS..................................................................................2

       A.     The Beatys' PSR shattered without warning because of the Defect ....................2

       B.     Ford learned in 2007 that the PSRs were defective..................................3

       C.     Ford failed to disclose and took steps to conceal the PSR Defect from
              consumers and NHTSA regulators, even after internal investigations
              confirmed the Defect ................................................................4

III.   STATEMENT OF ISSUES ........................................................................6

IV.    ARGUMENT AND AUTHORITY ...........................................................6

       A.     Summary judgment standard.................................................................6

       B.     Genuine issues of material fact as to the CPA claim precludes summary
              Judgment.................................................................................7

              1.     Ford's PSRs spontaneously shatter because of the Defect.......................7

              2.     Ford violated the CPA because it knew that its PSRs were
                     shattering as early as 2007, yet failed to disclose the Defect ...................9

       C.     Genuine issues of material fact regarding the fraudulent concealment
              claim preclude summary judgment ...............................................13

              1.     Ford had a duty to disclose the PSR Defect when it sold the Ford
                     Escape to the Beatys................................................................13

              2.     Ford's omission was material.................................................14

V.     PLAINTIFFS HAVE ESTABLISHED THEIR DAMAGES ........................17

       A.     Plaintiffs have established the fact of their damages.........................18

       B.     The Defendants' critique of conjoint analysis is unavailing ..............19

              1.     Plaintiffs do not have to field their conjoint survey at this stage ...........19

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - i
CASE NO. 3:17-CV-05201 RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

2.    Conjoint analysis is an appropriate methodology to determine class-wide damages ...................................................................20

C.    Should the Court require that Plaintiffs field their conjoint survey, Plaintiffs request additional time to do so ...........................................22

VI.   CONCLUSION .............................................................................................23

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - ii
CASE NO. 3:17-CV-05201 RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

2

# TABLE OF AUTHORITIES

**Page No.**

3

## FEDERAL CASES

4

5
*Addisu v. Fred Meyer, Inc.*,
    198 F.3d 1130 (9th Cir. 2000) ............................................................6

6
*Avedisian v. Mercedes-Benz USA, LLC*,
    43 F. Supp. 3d 1071 (C.D. Cal. 2014).........................................16

7

8
*Banks v. Nissan N. Am., Inc.*,
    301 F.R.D. 327 (N.D. Cal. 2013) .................................................17

9

10
*Blangeres v. United States Seamless, Inc.*,
    725 F. App'x 511 (9th Cir. 2018)..................................................10

11

12
*Blough v. Shea Homes, Inc.*,
    No. 2:12-cv-01493 RSM, 2014 WL 3694231 (W.D. Wash. July 23, 2014)...................8

13
*Bryde v. General Motors, LLC*,
    No. 16-cv-02421-WHO, 2016 WL 6804584 (N.D. Cal. Nov. 17, 2016).......................16

14

15
*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................7

16

17
*Chamberlan v. Ford Motor Co.*,
    314 F. Supp. 2d 953 (N.D. Cal. 2004)...........................................16

18

19
*Chavez v. Blue Sky Nat. Bev. Co*,
    268 F.R.D. 365 (N.D. Cal. 2010) .................................................20

20
*Coba v. Ford Motor Co.*,
    932 F.3d 114 (3d Cir. 2019) ..........................................................15

21

22
*Cooper v. Firestone Tire & Rubber Co.*,
    945 F.2d 1103 (9th Cir. 1991) ......................................................11

23

24
*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015) ......................................................15

25
*David v. Volkswagen Grp. of Am., Inc.*,
    No. CV 17-11301-SDW-CLW, 2018 WL 1960447 (D.N.J. Apr. 26, 2018) .................11

26

27

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - iii
CASE NO. 3:17-cv-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Davidson v. Apple, Inc.*,
No. 16-CV-04942-LHK, 2018 WL 2325426 (N.D. Cal. May 8, 2018),
*appeal dismissed sub nom. Siegal v. Apple Inc*., No. 18-80060, 2018
WL 6131860 (9th Cir. Aug. 24, 2018) ............................................................8

*George v. City of Long Beach*,
973 F.2d 706 (9th Cir. 1992) ......................................................................8

*Glenn v. Hyundai Motor Am.*,
No. SACV152052DOCKESX, 2016 WL 3621280 (C.D. Cal. June 24, 2016) ............12

*Grays Harbor Adventist Christian Sch. v. Carrier Corp*.,
242 F.R.D. 568 (W.D. Wash. 2007)..............................................................8

*Guido v. L'Oreal, USA, Inc.*,
No. 2:11-CV-01067-CAS, 2014 WL 6603730 (C.D. Cal. July 24, 2014) ....................20

*Harvey v. Centene Mgmt. Co. LLC*,
357 F. Supp. 3d 1073 (E.D. Wash. 2018)........................................................18

*Hilsley v. Ocean Spray Cranberries, Inc.*,
No. 17cv2335-GPC(MDD), 2018 WL 6300479 (S.D. Cal. Nov. 29, 2018)..................20

*Hovair Sys., Inc. v. Aero-Go, Inc*.,
935 F.2d 274 (9th Cir. 1991) ......................................................................9

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015) .......................................................19, 20

*In re Ford Tailgate Litig.*,
No. 11-CV-02953-RS, 2015 WL 7571772 (N.D. Cal. Nov. 25, 2015)..........................16

*In re MyFord Touch Consumer Litig.*,
46 F. Supp. 3d 936 (N.D. Cal. 2014) ............................................................14

*In re Myford Touch Consumer Litig.*,
291 F. Supp. 3d 936 (N.D. Cal. 2018)........................................................20, 21

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and
Prods. Liab. Litig.*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010) .........................................................16

*Intel Corp. v. Hartford Accident & Indem. Co*.,
952 F.2d 1551 (9th Cir. 1991) ....................................................................7

*Lightning Lube. Inc. v. Witco Corp*.,
4 F.3d 1153 (3d Cir. 1993) ........................................................................14

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - iv
CASE NO. 3:17-cv-05201 RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................................7

*MacDonald v. Ford Motor* Co.,
    37 F. Supp. 3d 1087 (N.D. Cal. 2014)...............................................................15

*Moodie v. Remington Arms Co., LLC.*,
    No. C13-0172-JCC, 2013 WL 12191352 (W.D. Wash. Aug. 2, 2013) .........14

*Morcom v. LG Elecs. USA, Inc*.,
    No. 16-CV-4833, 2017 WL 8784836 (D.N.J. Nov. 30, 2017).......................14

*Munch v. Sears Roebuck & Co.*,
    No. 06-cv-7023, 2007 WL 2461660 (N.D. Ill. Aug. 27, 2007).....................15

*O'Hara v. Gen. Motors Corp.*,
    508 F.3d 753 (5th Cir. 2007) ............................................................................17

*Olympia Oyster Co. v. Rayonier Inc*.,
    229 F. Supp. 855 (W.D. Wash. 1964) .............................................................18

*Paeschke v. Gen. Motors LLC*,
    No. 4:16-CV-5050-LRS, 2017 WL 5632442 (E.D. Wash. Oct. 11, 2017) .....9

*Pirv v. Glock, Inc.*,
    No. CV 06-145 PK, 2010 WL 11579455 (D. Or. July 19, 2010)...................11

*Roe v. Ford Motor Co.*,
    No. 218CV12528LJMAPP, 2019 WL 3564589 (E.D. Mich. Aug. 6, 2019) .................12

*Smith v. Ardew Wood Prod., Ltd.*,
    No. C07-5641 FDB, 2009 WL 691133 (W.D. Wash. Mar. 6, 2009) ...............9

*Smith v. Ford Motor Co.*,
    749 F. Supp. 2d 980 (N.D. Cal. 2010), *aff'd*, 462 F. App'x 660 (9th Cir. 2011)............16

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ..........................................................................15

*W. Recreational Vehicles, Inc. v. Swift Adhesives, Inc., a Div. of Reichhold
   Chemicals, Inc.*,
    23 F.3d 1547 (9th Cir. 1994) ............................................................................12

*Zakaria v. Gerber Prods. Co.*,
    755 F. App'x 623 (9th Cir. 2018)......................................................................22

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - v
CASE NO. 3:17-CV-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Zwicker v. Gen. Motors Corp.*,
No. C07-0291-JCC, 2007 WL 5309204 (W.D. Wash. July 26, 2007).....................13, 14

**STATE CASES**

*Aspelund v. Olerich*,
56 Wn. App. 477 (1990)...................................................................................14

*Burbo v. Harley C. Douglass, Inc.*,
125 Wn. App. 684 (2005).................................................................................9

*Carlile v. Harbour Homes, Inc.*,
147 Wn. App. 193 (2008).................................................................................10

*Colonial Imports, Inc. v. Carlton Northwest, Inc.*,
121 Wn.2d 726 (1993).....................................................................................13

*Crisman v. Crisman*,
85 Wn. App. 15 (1997)....................................................................................13

*Deegan v. Windermere Real Estate/Ctr.-Isle, Inc.*,
197 Wn. App. 875 (2017)................................................................................7, 8

*Griffith v. Centex Real Estate Corp.*,
93 Wn. App. 202 (1998), *as amended on denial of reconsideration*
(Dec. 14, 1998)..............................................................................................9, 10

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
105 Wn.2d 778 (1986)....................................................................................7, 9

*Iannacchino v. Ford Motor Co.*,
888 N.E.2d 879 (2008)....................................................................................17

*Indoor Billboard/Wash., Inc. v. Integra Telecomm. of Wash., Inc.*,
162 Wn.2d 59 (2007).......................................................................................9

*Marr v. Cook*,
51 Wn.2d 338 (1957).......................................................................................19

*Mellon v. Regional Trustee Servs. Corp.*,
182 Wn. App. 476 (2014)................................................................................10, 11

*Klem v. Wash. Mut. Bank*,
176 Wn.2d 771 (2013).....................................................................................9, 10

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*O'Brien v. Larson,*
    11 Wn. App. 52 (1974) .................................................................................18

*Panag v. Farmers Ins. Co. of Washington,*
    166 Wn.2d 27 (2009) ....................................................................................10

*Schnall v. AT&T Wireless Services, Inc.,*
    171 Wn.2d 260 (2011) .................................................................................7, 8

*Testo v. Russ Dunmire Oldsmobile, Inc.,*
    16 Wn. App. 39 (1976) ...................................................................................9

*Thiedemann v. Mercedes-Benz USA, LLC,*
    872 A.2d 783 (N.J. 2005) .............................................................................15

## STATE STATUTES

49 U.S.C. § 30103(e) ...........................................................................................17

## FEDERAL RULES

Fed. R. Civ. P. 56(a) ..............................................................................................7

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# I.  INTRODUCTION

Ford failed to disclose a serious defect ("Defect") in its panoramic sunroofs ("PSRs") that affects thousands of consumers. Abundant evidence demonstrates that Ford first learned about problems with its PSRs shattering spontaneously as early as 2007 (shortly after their introduction), and certainly no later than 2008. Specifically, Ford knew that the PSRs were unable to withstand the normal wear and tear, and that they shattered without warning. Ford concealed the Defect from consumers. As a result, the Defect continues to manifest. The question is not if the PSRs will shatter, but when.

Plaintiffs Jacob and Jessica Beaty bought their Ford Escape in late 2012. A few years later, their PSR exploded while Mrs. Beaty drove at freeway speeds with her baby daughter in the backseat. The explosion left both in terror, with cuts and scratches to their hands and face, surrounded by shards of glass. The Beatys are not alone. ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████  *See* Dkt. No. 70, Hannemann Decl. ¶¶ 33-43; Dkt. No. 69, Exs. 12, 18, 29, 32-37. The Beatys and other similarly situated Washington consumers have suffered damages they would not have incurred if it were not for Ford's, unfair, deceptive, and fraudulent behavior.[1]

Ford now moves for summary judgment dismissal of Plaintiffs' claims. But there are triable issues of material fact regarding Ford's knowledge of the Defect, and its efforts to conceal the Defect from the public. Ford's misconduct and omissions constitute fraudulent concealment and deceptive and unfair practices in violation of the Washington Consumer Protection Act. Ford's summary judgment motion should be denied.

---

[1] Plaintiffs' motion to certify a class of similarly situated persons is pending. *See* Dkt. No. 68.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 1
CASE NO. 3:17-CV-05201 RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## II.  RELEVANT FACTS

**A.    The Beatys' PSR shattered without warning because of the Defect.**

Plaintiffs Jacob and Jessica Beaty (the "Beatys" or "Plaintiffs") bought a new 2013 Ford Escape with Ford's "Power Panoramic Vista Roof" ("PSR") in September 2012. Before buying the Escape, the Beatys researched extensively and were motivated to purchase in part because of the vehicle's safety features and the panoramic sunroof. Dkt. No. 69, Ex. 30 (Jessica Beaty Dep.) at 73:25-74:6; 85:20-86:2, 89:13-92:5, 97:6-99:21, 107:2-12, 116:12-117:10. In the early afternoon of February 8, 2017, Mrs. Beaty was driving home on I-5 with her daughter in the back seat. When they neared the Tacoma Dome at 55 or 60 miles per hour, Mrs. Beaty heard "this loud just gunshot sound, explosion, and then I was covered in glass. It was cutting my hands. It was in my hair. I got some under my glasses. Mrs. Beaty was "in shock of what happened" and "didn't know what had happened." She does not recall how she managed to navigate off the freeway "because I was in such shock." Mrs. Beaty's daughter "had little cuts all over her face" and "was screaming." Mrs. Beaty had scratches on her hands and face. *Id*. at 155:2-159:25.

Plaintiffs have since learned that Mrs. Beaty's terrifying experience was due to the Defect. The PSRs installed on the Ford Escape feature large, thin, curved panels of fully tempered glass fastened onto vehicle frames in a manner that causes stresses of vehicle movement or other environmental factors to be absorbed by the glass. Even slight chips or abrasions on the surface— which are ordinary and foreseeable for all vehicle glass—grow progressively. Given enough time, a minor scratch, crack, or chip penetrates through the compressive layer of glass and causes the PSR to shatter without warning. Dkt. No. 71, Read Decl. ¶¶ 39-41, 60. The PSR in the Beatys' Escape shattered because the Defect prevented it from reliably withstanding the ordinary and foreseeable conditions to which it was exposed, including exposure to a wide range of temperatures, vehicle movements, sudden shocks like a car wash on a hot day, and debris kicked up off the road. Dkt. No. 70, Hannemann Decl. ¶¶ 23-24; Dkt. No. 69, Ex. 9 at 0002537.

█████████████████████████████████████████████████████████████████
████████████████████████████ Dkt. No. 70 ¶¶ 38-41; Dkt. No. 69, Ex. 2. This process

1  strengthens the glass but has a downside: when a crack is introduced into the surface it eventually

2  propagates into the tensile glass core and causes the entire panel to shatter. Dkt. No. 71, Read

3  Decl. ¶¶ 38-41. Shattering can occur immediately, or later, as a scratch or chip slowly progresses

4  until it reaches the tensile core. *Id.* ██████████████████████████████████████

5  ████████████████████████████████████████████████████████████████████

6  *See, e.g.*, Dkt. No. 69, Exs. 3, 4, 5.

7           Several factors contribute to making tempered glass inappropriate for use in PSRs.

8  Scratches, chips, and small cracks grow in tempered glass when additional stresses are applied.

9  Dkt. No. 71, Read Decl. ¶ 61. ███████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████ Dkt.

11 No. 70, Hannemann Decl. ¶ 22; Dkt. No. 71, Read Decl. ¶¶ 17, 20; Ex. 6. Since PSRs span

12 virtually the entire roof, Dkt. No. 70, Hannemann Decl. ¶¶ 19-20, ████████████████

13 ████████████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████████████

15 ██████████████████████████████. *Id.* ¶ 22; Dkt. No. 71, Read Decl. ¶ 20. The

16 tempered glass that Ford incorporates into the PSRs, produced by Webasto and Inalfa, is

17 unsuitable for this application because the PSRs cannot withstand these types of additional

18 stresses. *Id.* ¶¶ 2, 30, 65. ███████████████████████████████████████████

19 ██████████████████████████████████. *Id.* ¶¶ 51, 53, 64; Dkt. No. 69, Ex. 7 at

20 0037438; *id.* Ex. 8.

21 **B.      Ford learned in 2007 that the PSRs were defective.**

22           Plaintiffs' experience was not isolated. Ford's records establish that it knew as far back

23 as 2007—the first model year that Ford began offering PSRs—that the PSRs were prone to

24 spontaneous shattering. ████████████████████████████████████████████████

25 ███████████████ Dkt. No. 69, Ex. 39. █████████████████████████████████████

26 ███████████████ Dkt. No. 69, Ex. 40, at 0027477-0027479 ██████████████████

27

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 3
CASE NO. 3:17-CV-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com



1  ███████████████████; at 0027480-0027481 ████████████████

2  ████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████

4  ████████████████████████████████); at 0027485-0027486 ███

5  ████████████████████████████████; at 0027487-0027488 █████

6  ████████████████████████████████████████████████████████

7  █████████████████████████████; at 0027489-0027490 ████████

8  ████████████████████████████████████████████████████████);

9  0027491-93 ███████████████████████████████████████████████

10  ██████

11      Despite these complaints, Ford continued installing the PSRs in more and more models.

12  ████████████████████████████████████████████████████████

13  ███████████████ *Id.* █████████████████████████████. *Id.* And, in

14  2013, Ford began selling them with the Escape. *Id.* ███████████

15  ████████████████████████████████████████████████████████

16  ████████. *See, e.g.*, Compl., Dkt. No. 1 at ¶¶ 2, 31-36, 39; Dkt. No. 71, Read Decl. ¶¶ 2,

17  30, 65; Dkt. No. 69, Exs. 10-29; Dkt. No. 69, Ex. 4.

18  **C.**    **Ford failed to disclose and took steps to conceal the PSR Defect from consumers**

19      **and NHTSA regulators, even after internal investigations confirmed the Defect.**

20      Ford conceals the risks associated with the defective PSRs and offers no permanent repair.

21  ████████████████████████████████████████████████████. *See, e.g.*,

22  Compl. Dkt. No. 1, ¶¶ 2, 31-36, 39; Dkt. No. 71, Read Decl. ¶¶ 2, 30, 65; Dkt. No. 69, Exs. 10,

23  16, 40. ██████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████

26  ───────────────

27  [2] Exhibits 61-80 are attached to the Declaration of Beth E. Terrell in Support of Plaintiffs' Reply in Support of Motion for Class Certification and Opposition to Defendant's Motion for Summary Judgment.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4
CASE NO. 3:17-CV-05201 RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   ██████████████████████████████████████ Ex. 69. ████████████████████

2   ████████████████████████ Ex. 63, Ex. 72. ███████████████████████████

3   ██████ (Ex. 64, Ex. 65), ████████████ (Ex. 66, Ex. 67, Ex. 68), and ███████ (Ex.

4   70, Ex. 71). ██████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████

6   ████████████████████████████████████. *Id.*

7       But the problem of shattering PSRs did not go away. In October 2012, shattering sunroofs

8   came to the national forefront when NHTSA opened an investigation into the 2012 model year

9   Hyundai Veloster, having received numerous driver complaints of PSRs shattering. In response

10  to an inquiry about that investigation, NHTSA stated that "[s]hattering glass could distract the

11  driver, and the glass particles produced could injure occupants." Dkt. No. 69, Ex. 41; *see also*

12  Ex. 73.

13      NHTSA's attention on the shattering PSRs may explain what happened next. ████████

14  ████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████

18  ██████████████████████████ *Id.* at 0030602; *see also* Ex. 75. ████████████

19  ████████████████████████████████████████████

20      In 2014, NHTSA expanded its inquiry into PSRs to other manufacturers. Dkt. No. 69, Ex.

21  42. ██████████████████████████████████████████████████████████████

22  ██████████████████████████████████████████████. *Id.*█████████

23  ████████████████████████████████████████████████████████████████

24  Dkt. No. 69, Ex. 43.

25      By concealing its knowledge of the PSR Defect from NHTSA regulators and the public

26  at large, Ford is able to sell vehicles with luxury upgrade PSRs at prices normally charged for

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

non-defective vehicles. Ford thus profited, and continues to profit, at the expense of Plaintiffs and other customers, who received defective vehicles worth less than the non-defective vehicles for which they had bargained. Had the Beatys known about the Defect, they would not have purchased the Escape. Dkt. No. 69, Ex. 30 at 86:23-25 ("If I had known the possibility of it exploding on me, I would have absolutely walked away from it.").

## III.   STATEMENT OF ISSUES

1.     Plaintiffs presented evidence that, although Ford knew that PSRs in its vehicles suffered from a Defect that led to spontaneous shattering, it not only failed to disclose the Defect, but also took steps to prevent Plaintiffs and class members from learning about it. Do genuine issues of material fact regarding Plaintiffs' claim under the Washington Consumer Protection Act preclude summary judgment? **Yes.**

2.     As a manufacturer, Ford had information about the PSR Defect that was not readily available to Plaintiffs and Ford took concerted steps to prevent Plaintiffs and other consumers from learning about the Defect. Had Plaintiffs known about the Defect, they would not have purchased a vehicle that included a PSR. Do genuine issues of material fact regarding Plaintiffs' claim for fraudulent concealment preclude summary judgment? **Yes.**

3.     Plaintiffs also presented evidence that they were damaged by Ford's unfair and deceptive actions. Should the Court deny Ford's motion for summary judgment? **Yes.**

## IV.   ARGUMENT AND AUTHORITY

**A.   Summary judgment standard.**

On a motion for summary judgment, the court draws all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate only where there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475

2  U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim

3  or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

4         Plaintiffs have presented evidence that Ford's PSRs are defective, that Ford knew about

5  the Defect when Plaintiffs purchased their Ford Escape but failed to disclose the Defect despite

6  its duty to do so, that the Defect was material to Plaintiffs and would be material to any reasonable

7  consumer, and that Plaintiffs and those similarly situated were damaged because of Ford's

8  behavior. Considering all facts and reasonable inferences in the light most favorable to Plaintiffs,

9  significant disputed issues of material fact prevent summary judgment on Plaintiffs' claims under

10  the CPA and for fraudulent concealment.

11  **B.     Genuine issues of material fact as to the CPA claim precludes summary judgment.**

12         The elements of a claim under the CPA are: (1) an unfair or deceptive act or practice; (2)

13  occurring in trade or commerce; (3) a public interest impact; (4) injury to plaintiff in his or her

14  business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title*

15  *Ins. Co.*, 105 Wn.2d 778, 780 (1986). Ford argues that Plaintiffs have failed to meet two of the

16  five elements: unfair or deceptive act or practice, and causation. Because Plaintiffs have

17  presented evidence that Ford knew its PSRs were defective, and the Defect caused PSRs in

18  Plaintiffs' and class members' vehicles to shatter spontaneously, Ford's motion must be denied.

19         1.     Ford's PSRs spontaneously shatter because of the Defect.

20         "Causation under the CPA is a factual question to be decided by the trier of fact." *Deegan*

21  *v. Windermere Real Estate/Ctr.-Isle, Inc.*, 197 Wn. App. 875, 885 (2017). To establish causation,

22  Plaintiffs need only show that class members would not have been injured if not for Ford's unfair

23  or deceptive conduct. *See Schnall v. AT&T Wireless Services, Inc.*, 171 Wn.2d 260, 278 (2011)

24  ("A plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff

25  would not have suffered injury." (citation omitted)). Plaintiffs "must merely show that the 'injury

26  complained of … would not have happened if not for defendant's violative acts.'" *Id.* (citation

27

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 7
Case No. 3:17-cv-05201 RBL

**Terrell Marshall Law Group PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  omitted).

2      In omissions cases, there is a "a rebuttable presumption of reliance." *Blough v. Shea*

3  *Homes, Inc*., No. 2:12-cv-01493 RSM, 2014 WL 3694231, at *13 (W.D. Wash. July 23, 2014);

4  *Grays Harbor Adventist Christian Sch. v. Carrier Corp*., 242 F.R.D. 568, 573 (W.D. Wash. 2007)

5  (employing rebuttable presumption of reliance in CPA fraud case); *Deegan*, 197 Wn. App. at

6  886 (same). This presumption "renders causation unproblematic because in omissions cases the

7  presumption of reliance resolves causation problems—plaintiffs are presumed to have relied on

8  omissions, and thus the omissions are presumed to have proximately caused plaintiffs' harm."

9  *Davidson v. Apple, Inc.,* No. 16-CV-04942-LHK, 2018 WL 2325426, at *16 (N.D. Cal. May 8,

10  2018), *appeal dismissed sub nom. Siegal v. Apple Inc*., No. 18-80060, 2018 WL 6131860 (9th

11  Cir. Aug. 24, 2018) (citing *Deegan*, 197 Wn. App. at 886; *Blough*, 2014 WL 3694231, at *13).

12  Plaintiffs have produced evidence through their expert, Dr. Read, that their Escape's PSR

13  shattered spontaneously because of the Defect, and that Ford knew about the Defect, but failed

14  to disclose it. Summary judgment should be denied on this basis.

15      Ford nevertheless argues that the Court should grant summary judgment based on their

16  experts' contrary hypothesis that no defect exists, and that shattered PSRs are instead the result

17  of some sort of immediate failure caused by external impact. However, when experts disagree

18  about causation, the question must be decided by a jury. "Questions of proximate causation are

19  issues of fact which are properly left to the jury if reasonable persons could reach different

20  conclusions." *George v. City of Long Beach*, 973 F.2d 706, 709 (9th Cir. 1992). "It is well within

21  the province of the jury to understand the evidence and weigh the credibility of the competing

22  experts and their results." *Paeschke v. Gen. Motors LLC*, No. 4:16-CV-5050-LRS, 2017 WL

23  5632442, at *7 (E.D. Wash. Oct. 11, 2017). Here, Plaintiffs' evidence contradicts Ford's theories,

24  creating material issues of fact as to what caused the PSRs to shatter. As a result, summary

25  judgment is improper. *Smith v. Ardew Wood Prod., Ltd*., No. C07-5641 FDB, 2009 WL 691133,

26  at *3 (W.D. Wash. Mar. 6, 2009) (finding that lay and expert evidence created "a material issue

27

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 8
Case No. 3:17-cv-05201 RBL

**Terrell Marshall Law Group PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

of fact as to causation, precluding summary judgment on this issue").[3]

2.   Ford violated the CPA because it knew that its PSRs were shattering as early as 2007, yet failed to disclose the Defect.

A plaintiff establishes an unfair or deceptive act or practice by showing "an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of the public interest." *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787 (2013). An act or practice need not be intended to deceive—it need only have the capacity to deceive a substantial portion of the public." *Indoor Billboard/Wash., Inc. v. Integra Telecomm. of Wash., Inc.*, 162 Wn.2d 59, 74-75 (2007) (quoting *Hangman Ridge*, 105 Wn.2d at 785) (internal quotation marks omitted). "What constitutes an unfair and deceptive act or practice is a question for the fact finder." *Burbo v. Harley C. Douglass, Inc.*, 125 Wn. App. 684, 700 (2005) (citation omitted).

"Knowing failure to reveal something of material importance is deceptive within the CPA." *Indoor Billboard/Wash.*, 162 Wn.2d at 74-75. A seller has a duty to disclose facts material to a transaction "when the facts are known to the seller but not easily discoverable by the buyer." *Griffith v. Centex Real Estate Corp.*, 93 Wn. App. 202, 214 (1998), *as amended on denial of reconsideration* (Dec. 14, 1998) (citing *Testo v. Russ Dunmire Oldsmobile, Inc.*, 16 Wn. App. 39, 51 (1976)). For example, in *Testo*, an automobile dealer failed to disclose that a Camaro had been modified for racing, thereby increasing the costs of repairs and maintenance. 16 Wn. App. at 51–52. The court held that the dealer's act of withholding facts material to the sale was a deceptive act under the CPA. *Id.* In *Griffith*, a class of homeowners alleged that a homebuilder committed unfair or deceptive acts by "failing to disclose known defects in the exterior finish"

---

[3] Ford also challenges the Beatys' recitation of facts, relying on hearsay documentation of the Beatys' insurance claim that suggests their PSR was hit by a rock. Dkt. No. 102 at 2:18-3:5. But Mrs. Beaty testified, in no uncertain terms, their PSR shattered spontaneously while she drove at freeway speeds on the interstate. Dkt. No. 69, Ex. 30 (Jessica Beaty Dep.) at 173:1-175:5; 182:1-183:15 ("The cause was not a rock" and the sunroof "just exploded on its own."). Any dispute about the accuracy of these statements "is a factual inquiry … reserved for the jury; the court may not weigh the evidence or judge witness credibility." *Hovair Sys., Inc. v. Aero-Go, Inc.*, 935 F.2d 274 (9th Cir. 1991) (reversing summary judgment) (citation omitted).

1    of their homes. *Id*. at 214, 492. Because the home builder "knew that the exterior finish on its

2    homes was prematurely deteriorating" and had received numerous complaints about the

3    deterioration but failed to advise homebuyers of this material fact, it committed an unfair or

4    deceptive act under CPA. *Id*. at 215–16, 493.

5         Here, there are disputed issues of fact as to whether Ford failed to disclose a known defect.

6    Plaintiffs presented evidence that Ford knew in 2007 that the PSRs were prone to spontaneous

7    shattering. Despite this knowledge, Ford failed to notify consumers of the latent Defect and

8    continued to offer the PSRs in more and more models. As in *Testo* and *Griffith*, a fact-finder

9    could conclude that its failure to disclose this Defect constitutes a deceptive act in violation of

10   the CPA. *See also Blangeres v. United States Seamless, Inc*., 725 F. App'x 511, 515 (9th Cir.

11   2018) (reversing summary judgment where plaintiff provided evidence that created a genuine

12   issue of material fact regarding whether defendant knew its siding was defective); *Carlile v.

13   Harbour Homes, Inc*., 147 Wn. App. 193, 213–14 (2008) (reversing summary judgment against

14   homeowners and finding that failure to disclose known defects in homes and marketing

15   deficiently constructed homes as being of high quality were unfair or deceptive acts).

16        A fact-finder could also conclude that Ford's practices were unfair. "The universe of

17   'unfair' business practices is broader than, and encompasses, the universe of 'deceptive' business

18   practices. Business practices that are 'deceptive' are, ipso facto, 'unfair.'" *Panag v. Farmers Ins.

19   Co. of Washington*, 166 Wn.2d 27, 51 (2009). A practice is unfair if it "offends public policy as

20   established by statutes or the common law" or is "unethical, oppressive, or unscrupulous, among

21   other things." *Klem*, 176 Wn.2d at 787 (citation omitted). An act or practice may also be unfair

22   if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable

23   by consumers themselves and is not outweighed by countervailing benefits." *Id*. An act or

24   practice is unfair if either of those standards are met. *See Mellon v. Regional Trustee Servs. Corp*.,

25   182 Wn. App. 476, 489–90 (2014) (discussing alternative standards for determining whether

26   conduct is unfair or deceptive).

27

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 10
CASE NO. 3:17-cv-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    Separate and apart from Plaintiffs' allegation that Ford engages in deceptive business

2    practices, Ford's failure to disclose the Defect is unfair. Ford ignores this aspect of Plaintiffs'

3    CPA claim altogether. As a result of Ford's failure to disclose the Defect, consumers like the

4    Beatys had no way to know about the Defect before purchasing their vehicles. Had Ford disclosed

5    the Defect industry-wide in 2007 when it learned of the problem, Plaintiffs would not have

6    purchased the Escape. They would not be in the position they are in now. A fact-finder could

7    conclude that Ford's failure to disclose the Defect to consumers like Plaintiffs is unfair.

8    The fact that the Beatys purchased their Ford Escape during the first year that Ford

9    installed PSRs on that model does not make Ford's failure to disclose the known Defect any less

10   deceptive or unfair. In the Ninth Circuit, Plaintiffs need only establish that the Defect in the

11   Beatys' Ford Escape was "substantially similar" to other known defects. *Cooper v. Firestone*

12   *Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991) ("[a] showing of substantial similarity

13   is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of

14   ... a design defect."); *see also Pirv v. Glock, Inc.*, No. CV 06-145 PK, 2010 WL 11579455, at

15   *13 (D. Or. July 19, 2010) (accounts of other incidents were admissible to show that defendants

16   had notice of other incidents involving their products). As far back as 2007, Ford knew that the

17   PSRs were experiencing incidences of spontaneous shattering. ████████████████████

18   ████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████

20   ████████████████████████████  Ex. 76 at 81:20-86:20.

21   Ford does not dispute that it knew about problems with the PSRs in its other models when

22   it sold the Beatys their Ford Escape. Instead, Ford relies on *David v. Volkswagen Grp. of Am.,*

23   *Inc.,* No. CV 17-11301-SDW-CLW, 2018 WL 1960447, at *7 (D.N.J. Apr. 26, 2018), a

24   distinguishable case in which the court dismissed a claim under the Colorado Consumer

25   Protection Act that alleged Volkswagen was aware of a defect with its 2014 Touareg because of

26   a recall of a different Volkswagen model. There, the recall "occurred *after* the Plaintiff made his

27

purchase," which appeared to have been a strong influence on the court's decision. *Id.* (emphasis added). Ford cannot make the same argument here, because it began receiving reports of shatters *before* Plaintiffs purchased their Escape, not after. Nor does it matter that the Defect first arose in a different model. "Minor dissimilarities"—like the geometric differences between the PSR in an Escape and other Ford vehicles—are inconsequential. *See, e.g., W. Recreational Vehicles, Inc. v. Swift Adhesives, Inc., a Div. of Reichhold Chemicals, Inc.*, 23 F.3d 1547, 1555 (9th Cir. 1994) (evidence of delamination problems experienced by a second manufacturer admissible to establish knowledge of a design defect despite minor dissimilarities); *see also Glenn v. Hyundai Motor Am.*, No. SACV152052DOCKESX, 2016 WL 3621280, at *16 (C.D. Cal. June 24, 2016) (a plaintiff could pursue class claims regarding vehicle models she had not purchased where there was "sufficient similarity" between the vehicle models purchased and those models not purchased). Ford knew that the PSRs in the Escape were defective because it knew that the PSRs in its other models were defective, but rather than notify consumers of the Defect, Ford chose to conceal it.

Finally, the rate or likelihood of manifestation does not factor into whether Ford's failure to disclose the Defect was deceptive or unfair. Ford relies on out-of-circuit decisions interpreting consumer protection statutes in New Jersey, Illinois, and Wisconsin to argue that Plaintiffs' allegations that the PSRs "*may* fail" are insufficient to support their claims.[4] Dkt. No. 102 at 14:8-24. (emphasis in original). According to Ford, Plaintiffs' claims cannot survive unless they can prove the PSRs *will* fail. *Id*. But this is not the law in Washington. Plaintiffs need only present evidence of "a systematic failure of a specific automotive part of which [Ford] was allegedly aware and concealed from the public." *Zwicker v. Gen. Motors Corp.*, No. C07-0291-JCC, 2007 WL 5309204, at *5 (W.D. Wash. July 26, 2007). Because Plaintiffs have presented evidence that

---

[4] Ford also relies on *Roe v. Ford Motor Co.*, No. 218CV12528LJMAPP, 2019 WL 3564589, at *7 (E.D. Mich. Aug. 6, 2019), which included fraud and consumer protection claims under the CPA and the consumer protection protections statutes of other states. Decided on a motion to dismiss, *Roe* is distinguishable because plaintiffs did not allege that "repairs of the water pumps were anything more than a blip on Ford's" radar, and therefore knowledge could not be inferred. *Id*.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 12
CASE NO. 3:17-cv-05201 RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Ford knew, but failed to disclose, that its PSRs suffered from a Defect, Ford's motion for summary judgment should be denied.

**C.**   **Genuine issues of material fact regarding the fraudulent concealment claim preclude summary judgment.**

To establish fraudulent concealment under Washington law, a plaintiff "may simply show that the defendant breached an affirmative duty to disclose a material fact." *Crisman v. Crisman,* 85 Wn. App. 15, 21 (1997).[5] As explained below, Ford knew its PSRs were defective when the Beatys purchased their Escape, and the Beatys did not have this knowledge, due to Ford's failure to disclose. The defective nature of the PSRs is a material fact that would have affected the Beatys' decision to purchase their vehicle. As a result, Ford's motion, which argues that Plaintiffs have failed to establish the elements of duty and materiality, should be denied.

1.   Ford had a duty to disclose the PSR Defect when it sold the Ford Escape to the Beatys.

The duty to disclose arises in situations "where a seller has knowledge of a material fact not easily discoverable by the buyer." *Colonial Imports, Inc. v. Carlton Northwest, Inc.*, 121 Wn.2d 726, 732 (1993) (quoting *Favors v. Matzke*, 53 Wn. App. 789, 796 (1989)). "When [] a manufacturer has superior information regarding defects that are not readily ascertainable to customers, it has a duty to disclose that information." *Zwicker,* 2007 WL 5309204 at *4.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████ Ex. 74. The reasonable inference is that Ford did not want such discussions to be discoverable. Plaintiffs relied on Ford's silence to their detriment by purchasing an automobile they otherwise would not have purchased, or by paying an inflated price for the vehicle. Once Ford knew about the Defect, it had a duty to disclose it, but failed to do so. Had Ford disclosed the Defect, Plaintiffs would have been fully informed about the risks

---

[5] Ford argues that Plaintiffs are required to prove much more than Washington law requires. Dkt. No. 102 at 4:8-13. Ford is mistaken. "[The heightened pleading requirement is relaxed in cases of fraudulent omissions." *Zwicker,* 2007 WL 5309204, at *4.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    associated with the PSR on their Ford Escape when they purchased it in 2012.

2    Ford cites case law interpreting New Jersey law, but "Washington and New Jersey law

3    conflict regarding a defendant's duty to disclose in fraudulent omission claims." *Morcom v. LG*

4    *Elecs. USA, Inc.*, No. 16-CV-4833, 2017 WL 8784836, at *11 (D.N.J. Nov. 30, 2017) (engaging

5    in choice of law analysis). In New Jersey, "where a claim for fraud is based on silence or

6    concealment," there is no duty to disclose "unless such disclosure is necessary to make a previous

7    statement true or the parties share a 'special relationship.'" *Lightning Lube. Inc. v. Witco Corp*.,

8    4 F.3d 1153, 1185 (3d Cir. 1993) (quoting *Berman v. Gurwicz*, 189 N.J. Super. 89 (Ch. Div.

9    1981)). By contrast, "[c]ourts in Washington have imposed that duty on manufacturers who failed

10   to disclose a latent defect in a product about which the manufacturer allegedly knew." *Morcom,*

11   2017 WL 8784836, at *11 (citing *Zwicker*, 2007 WL 5309204, at *1, 3-4).

12   Finally, Ford's suggestion that it satisfied any duty through warranty language stating its

13   vehicles may "chip, scratch, crack, or break" wholly misses the mark. The Beatys did not bring

14   this lawsuit because they experienced a cosmetic problem with their sunroof. They seek to hold

15   Ford responsible for knowingly installing defective PSRs that shatter spontaneously, and in this

16   case, sent glass cascading into the passenger compartment onto Mrs. Beaty and her young

17   daughter.

18            2.    Ford's omission was material.

19   A "material fact" is one "to which a reasonable [person] would attach importance in

20   determining his or her choice of action in the transaction in question." *Aspelund v. Olerich*, 56

21   Wn. App. 477, 483 (1990) (quoting *Shermer v. Baker*, 2 Wn. App. 845, 855 (1970)). In the

22   product defect context, the failure to disclose a defect is material if the omission led consumers

23   to believe the defective product was safe. *Moodie v. Remington Arms Co., LLC.*, No. C13-0172-

24   JCC, 2013 WL 12191352, at *5 (W.D. Wash. Aug. 2, 2013) ("The defective fire control trigger

25   rendered the Model 700 prone to firing without a trigger pull" was a material fact that the

26   defendant failed to disclose). Similarly, courts assess whether a safety risk is "unreasonable"

27

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 14
CASE NO. 3:17-cv-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    from a reasonable consumer's perspective. *See, e.g., In re MyFord Touch Consumer Litig.*, 46 F.

2    Supp. 3d 936, 960 (N.D. Cal. 2014) ("[A] reasonable jury could find a safety concern here with

3    respect to MFT that gives rise to a duty to disclose."). Materiality is typically a question of fact

4    reserved for a jury. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011). Here,

5    Ford's failure to disclose the defective PSRs was material because the Beatys and other

6    consumers relied on the omission to conclude the PSRs were safe and free of defects.

7         The question of materiality does not turn, as Ford suggests, on NHTSA's decisions about

8    whether to issue vehicle recalls for other manufacturers. Plaintiffs need not allege regulatory

9    violations to establish materiality. *See, e.g., Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1221 (9th

10   Cir. 2015) (permitting claim for fraudulent omission based on "alignment/geometry" defect

11   causing premature tire wear; no safety regulation was allegedly breached); *MacDonald v. Ford*

12   *Motor* Co., 37 F. Supp. 3d 1087 (N.D. Cal. 2014) (permitting claim based on defective coolant

13   pumps to proceed, but no safety regulation allegedly violated).

14        Nor does materiality depend on rate of manifestation. The out-circuit cases Ford cites are

15   inapposite. In *Munch v. Sears Roebuck & Co.*, No. 06-cv-7023, 2007 WL 2461660, at *2-3 (N.D.

16   Ill. Aug. 27, 2007), the court dismissed consumer protection claims where plaintiffs' contention

17   that Sears concealed a defect in its washing machines was "based solely on the allegations that

18   their particular machines required a single repair" and thus failed to satisfy Rule 9(b)'s

19   heightened pleading standard. In *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 794-

20   95 (N.J. 2005), the court concluded plaintiffs suffered no ascertainable loss as a result of an

21   alleged defect that did not show when the gas tank was full because Mercedes repaired it and

22   provided loaner vehicles. Finally, in *Coba v. Ford Motor Co.*, 932 F.3d 114, 126 (3d Cir. 2019),

23   the court affirmed summary judgment based on "undisputed evidence that Ford then believed

24   biodiesel to be the culprit" and that "Ford had every reason to believe that risk was mitigated."

25   *Coba* is inapplicable here, where causation is in dispute and Ford has done nothing to mitigate

26   the risks its defective PSRs pose to consumers.

27

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 15
CASE NO. 3:17-CV-05201 RBL

The Beatys' case does not hinge on "anecdotal accounts." *See* Dkt. No. 102 at 15 (citing decisions dismissing cases based only on anecdotal accounts). And their safety risks are not comparable to scenarios involving cracked appliqués, peeling trim, or failed ignition locks. *See In re Ford Tailgate Litig.,* No. 11-CV-02953-RS, 2015 WL 7571772, at *1 (N.D. Cal. Nov. 25, 2015) (appliqué*); Avedisian v. Mercedes-Benz USA, LLC,* 43 F. Supp. 3d 1071, 1074 (C.D. Cal. 2014) (trim); *Smith v. Ford Motor Co.,* 749 F. Supp. 2d 980, 991 (N.D. Cal. 2010), *aff'd,* 462 F. App'x 660 (9th Cir. 2011) (ignition). The PSRs in Ford's vehicles shatter spontaneously in significant numbers. Even based on Ford's claims rate, incidences number in the thousands. ███

████████████████████████████████████████████████████████████

███ ; *see also* Ex. 78 (describing U.S. Sales of 590,249 vehicles in the first quarter of 2019 alone). The evidence establishes that the existence of the Defect is material to the Beatys and would be material to any reasonable consumer. Ford's motion should be denied.

**D.     Ford's compliance with NHTSA regulations does not excuse its conduct.**

As stated above, allowing consumers to pursue state remedies for dangerous defects complements rather than interferes with NHTSA's authority to investigate and address safety defects in vehicles. *See, e.g., Bryde v. General Motors, LLC*, No. 16-cv-02421-WHO, 2016 WL 6804584, at *5-8 (N.D. Cal. Nov. 17, 2016) (rejecting argument that plaintiff's state law claims conflicted with NHTSA's authority); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1198-99 (C.D. Cal. 2010) (rejecting argument that plaintiffs' request for a nationwide court-ordered recall would conflict with NHTSA ongoing investigation of the safety issue and noting that plaintiffs' state law claims "are within the conventional competence of the courts"); *Chamberlan v. Ford Motor Co.*, 314 F. Supp. 2d 953, 962-67 (N.D. Cal. 2004) (explaining why plaintiffs' consumer protection claim on behalf of a statewide class did not conflict with NHTSA's authority).

Ford ignores these authorities, instead urging the adoption of a standard NHTSA applies to its own investigations, Dkt. No. 102, at 5-10, under which "NHTSA has ordered only one

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 16
CASE NO. 3:17-CV-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    recall since 1979." *Banks v. Nissan N. Am., Inc.*, 301 F.R.D. 327, 335 (N.D. Cal. 2013). Ford

2    fails to offer any compelling reason for this Court to scrap years of settled authority. For example,

3    Ford's citation to *Iannacchino v. Ford Motor Co*., 888 N.E.2d 879 (2008) is misplaced. The

4    plaintiffs in *Iannacchino* alleged that vehicles were "defective" by equating the defect to

5    regulatory noncompliance. *Id.* at. 887-88. The *Iannocchino* manufacturer, however, established

6    that it had complied with the regulation at issue. *Id.* Thus, the *Iannocchino* Court unsurprisingly

7    dismissed the complaint, finding "the complaint does not state an adequate claim of

8    noncompliance with FMVSS 206, the[ ] intertwined assertions of 'defect' must also fail." *Id*. at

9    888. Here, Ford's liability is not tied to any regulatory violation.

10       Contrary to Ford's suggestion, Plaintiffs are not asking the Court to "unilaterally alter

11    FMVSS 205," which merely sets requirements for tempered glass that auto manufacturers use

12    for vehicle windows to reduce injuries from impact, ensure visibility, and minimize the

13    possibility of passengers being thrown from vehicles. 49 C.F.R. § 571.205, S2; s*ee also O'Hara

14    v. Gen. Motors Corp*., 508 F.3d 753, 757-63 (5th Cir. 2007) (plaintiffs' strict liability and

15    negligence claims were not preempted by FMVSS 205, which "is best understood as a minimum

16    safety standard"); *see also* 49 U.S.C. § 30103(e) (compliance with Federal Safety Act standards

17    does not preempt common law suits). Moreover, FMVSS 205 references windshields and side

18    windows but does not mention sunroofs, much less PSRs. It says nothing about a manufacturer's

19    duty to disclose PSR defects, let alone establish standards by which courts impose liability for

20    failing to comply with such duty.

21                              **V.  PLAINTIFFS HAVE ESTABLISHED THEIR DAMAGES**

22       Ford argues that Plaintiffs cannot prove that they were individually damaged sufficiently

23    to survive summary judgment because Plaintiffs' conjoint survey has not yet been fielded, and

24    the conjoint survey does not adequately consider supply-side factors.[6] Dkt. No. 102 at 17:13-23.

25    Ford, however, ignores that (1) Plaintiffs have established the fact of their damages for their

26

27    _____
      [6] Ford lists three reasons Plaintiffs' damages model will not work, but its second and third reasons are generally the
      same critique: that Plaintiffs' damages model does not consider supply-side factors.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 17
CASE NO. 3:17-CV-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

benefit of the bargain claims—namely, overpayment at the point of sale—and out-of-pocket expenses resulting from repairs to their exploding panoramic sunroof; (2) Plaintiffs are not yet required to field their conjoint survey at the class certification stage; and (3) Ninth Circuit precedent shows that Plaintiffs' damages model and proposed conjoint analysis adequately account for supply-side factors.

**A.    Plaintiffs have established the fact of their damages.**

In Washington, a plaintiff must present "some rational basis" for his damages. *O'Brien v. Larson,* 11 Wn. App. 52, 54 (1974). But "the precise amount need not be shown with mathematical certainty." *Olympia Oyster Co. v. Rayonier Inc*., 229 F. Supp. 855, 861 (W.D. Wash. 1964).

Plaintiffs pursue claims: (1) for violation of Washington's Consumer Protection Act ("WCPA") and (2) for fraudulent concealment. Under the WCPA:

> Damages, for purposes of the [WCPA], must be broadly construed. Even minimal injury is sufficient to meet the damages element of a [WCPA] claim. Damages are established if the consumer's property interest or money is diminished because of the unlawful conduct even if the expenses are minimal. Even nonquantifiable injuries such as loss of use of property will suffice.

*Harvey v. Centene Mgmt. Co. LLC*, 357 F. Supp. 3d 1073, 1081 (E.D. Wash. 2018) (internal citations and quotations omitted). Mrs. Beaty testified that she would not have purchased her vehicle had she known about the Defect. Dkt. No. 69, Ex. 30 at 214:16-18. Mrs. Beaty further explained that because of the Defect, she had to pay an insurance deductible and rent a car. Ex. 79 at 219:24-220:3. Mr. Beaty also testified about the damages Plaintiffs experienced:

> Q.    Okay. What specific damages do you believe you and your wife have incurred as a result of owning the Ford Escape?
>
> A.    Well, we purchased a vehicle that we probably wouldn't have purchased. Out of pocket we've got deductible expenses and rental car expenses that we've paid for around 650 bucks, give or take. We would disclose the fact that the sunroof shattered if we tried to trade it in, which would probably diminish the value of the trade-in. And I'm driving around with something that could randomly occur again, so it's somewhat stressful, and I can't use the car as intended.

Ex. 80 at 160:8-19. This is more than sufficient to establish Plaintiffs' damages under the WCPA.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 18
CASE NO. 3:17-CV-05201 RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    For Plaintiffs' fraudulent concealment claims, they can recover any damages proximately

2 caused by the fraud, including benefit of the bargain damages and out-of-pocket costs. *Marr v.*

3 *Cook*, 51 Wn.2d 338, 344 (1957) (noting that out-of-pocket costs are recoverable in fraud cases).

4 Plaintiffs sustained out-of-pocket expenses proximately caused by the Defect. Plaintiffs further

5 explained that, had Ford disclosed the Defect, they would not have purchased their Class Vehicle.

6 This evidence, combined with the fact that the Defect—by its very existence—reduced the value

7 of the Class Vehicle, is sufficient to establish damages.

8    Plaintiffs have proposed a damages model that quantifies their benefit of the bargain

9 claims by calculating the amount of overpayment based upon the reduction in economic value at

10 the point of sale attributable to the Defect. Dkt. No. 72, Weir Decl. ¶ 24. This overpayment

11 amount—damages suffered by *both* Plaintiffs and all Class Members—is an issue as to the

12 *quantum* of damages that will be calculated after class certification. *See, e.g.*, *In re ConAgra*

13 *Foods, Inc.*, 90 F. Supp. 3d 919, 1031 (C.D. Cal. 2015); *see also infra* Section IV.A. However,

14 because Plaintiffs have offered factual support for the damages they claim to have suffered, proof

15 of the actual amount of damages is not necessary to survive summary judgment.

16  **B.    The Defendants' critique of conjoint analysis is unavailing.**

17      1.    Plaintiffs do not have to field their conjoint survey at this stage.

18    Ford's motion concerns only Plaintiffs *individually*, not their claims on behalf of the

19 proposed Class. Order on Stipulated Motion to Extend Deadlines in Class Certification Briefing

20 Schedule, Dkt. No. 63, at 2 (stating that Ford's summary judgment motion was to be "direct[ed]

21 to individual Plaintiffs"). Ford ignores this directive and Ninth Circuit precedent, arguing that

22 Plaintiffs cannot establish class-wide damages because their conjoint survey has not yet been

23 fielded. Def.'s Mot., Dkt. No. 102, 18:12-14. However, Plaintiffs are not required to field

24 conjoint surveys at the class certification stage. *See, e.g.*, *In re ConAgra Foods, Inc.*, 90 F. Supp.

25 3d at 1031 (requiring only a likely method for determining class damages); *Chavez v. Blue Sky*

26 *Nat. Bev. Co*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (same); *Guido v. L'Oreal, USA, Inc.*, No.

27

1   2:11-CV-01067-CAS, 2014 WL 6603730, at *10 (C.D. Cal. July 24, 2014) (same).

2         Moreover, although conjoint analysis will be the means by which Plaintiffs will determine

3   class-wide damages, Plaintiffs have already demonstrated that they *individually* have suffered

4   the same benefit of the bargain damages that they allege the Class as a whole has suffered—in

5   addition to out-of-pocket expenses. Dkt. No. 69, Ex. 30 at 214:16-18; Ex. 80 at 160:8-19. Despite

6   Ford's premature assertion to the contrary, Plaintiffs need not field their conjoint analysis at this

7   stage, especially where they have already demonstrated that they suffered damages individually.

8         2.    <u>Conjoint analysis is an appropriate methodology to determine class-wide</u>

9                 <u>damages.</u>

10         Even assuming it is appropriate to discuss the conjoint analysis at this time, there exists

11   sufficient evidence to create triable issues. Ford criticizes Plaintiffs' conjoint analysis because

12   the survey allegedly does not include evidence of market value and it purportedly fails to account

13   for supply-side factors. Def.'s Mot., Dkt. No. 102 at 18:25-24:18. Courts in the Ninth Circuit,

14   however, "have found that the supply side of the conjoint analysis damages model is satisfied if

15   the prices in the surveys reflect the actual market prices during the class period and the quantities

16   used reflect the actual quantities of products sold." *Hilsley v. Ocean Spray Cranberries, Inc.*, No.

17   17cv2335-GPC(MDD), 2018 WL 6300479, at *15 (S.D. Cal. Nov. 29, 2018). This includes in

18   both mislabeling cases like *Hilsley* and in product defect cases like the instant case. *See, e.g., In*

19   *re Myford Touch Consumer Litig.*, 291 F. Supp. 3d 936, 970 (N.D. Cal. 2018) (denying Ford's

20   motion to exclude plaintiffs' damages expert for failing to consider supply-side considerations

21   where "he measure[d] the difference in value by assuming that the supply—the quantity—was

22   fixed"); *Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654, 657 (9th Cir. 2017) (referring to

23   conjoint analysis as "well-established").

24         Just like the damages expert in *In re Myford Touch Consumer Litigation*—Plaintiffs'

25   economics expert, Mr. Colin Weir, adequately considered supply-side factors:

26       I have also considered supply side factors in my damages framework. First, unlike
    in a Lanham Act or intellectual property litigation where a but-for quantity of

27

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 20
CASE NO. 3:17-cv-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

sales may need to be determined, in this litigation, the historic number of units sold is a fact (as I have discussed above) and in this litigation, it would be antithetical to the reality of the actual Class purchases and leases to suggest that the quantity supplied be anything other than the actual number of units sold by Defendants and purchased or leased by Class members.

. . . .

One of the most important and most frequent topics of discussion between Mr. Gaskin and me was **the data on actual sales of the Vehicles in the real-world marketplace. These real-world transactions occurred at prices that *already* reflect the supply side factors then extant in the marketplace. I understand that Mr. Gaskin relied upon these historical data in setting the prices used in his conjoint survey**. We also discussed that variability in pricing both at the wholesale and retail level showed that Defendants' and dealers' pricing was responsive to changing market forces.

Another important supply-side factor that Mr. Gaskin and I discussed was the fact that the **quantity of the Vehicles supplied is a known quantity, and fixed as a matter of history**, which Gaskin accounted for in his market simulations.

Dkt. No. 72, Weir Decl. ¶¶ 29, 34-35 (italicized emphasis in original and emboldened emphasis added); *see generally id*. ¶¶ 28-45 (setting forth all of the supply-side factors Mr. Weir considered). Plaintiffs' conjoint analysis expert, Mr. Steve Gaskin, also took supply-side factors into consideration when designing his methodology:

It is my opinion, based on conversations with Plaintiff's economics expert, Mr. Colin Weir, that the conjoint methodology set forth in this declaration accounts for appropriate supply side factors, including that (1) **the price range used in the survey reflects the actual market prices that prevailed during the Class Periods**; and (2) the quantity of class vehicles used (or assumed) in the damages calculations reflects the actual quantity of such vehicles sold during the Class Period (**the number of class vehicles sold being fixed as a matter of history**).

Dkt. No. 73, Gaskin Decl. ¶ 22 (emphasis added and footnotes omitted). Thus, the damages methodology offered by Plaintiffs is the same methodology previously accepted by courts in the Ninth Circuit. *See, e.g.*, *In re Myford Touch Consumer Litig.*, 291 F. Supp. 3d at 970.

Only in *Zakaria v. Gerber Prods. Co.*, 755 F. App'x 623, 624 (9th Cir. 2018), an unpublished decision about product mislabeling, did the Ninth Circuit uphold a district court's decertification of a class requesting restitution damages over an infant formula product that was allegedly mislabeled. The Court declined to overrule the district court's decertification because

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 21
CASE NO. 3:17-CV-05201 RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   the conjoint analysis did not reflect "market realities" when it "showed only how much

2   consumers subjectively valued the [product], not what had occurred to the actual market price of

3   [the product] with or without the [challenged] label." *Id.* at 624-625. However, Plaintiffs here

4   address the *exact concerns* the *Zakaria* Court voiced. Mr. Gaskin and Mr. Weir ensured that the

5   "market realities" were reflected in their conjoint survey by examining the "actual market price"

6   of Class Vehicles in calculating the diminution in value attributable to the Defect. Put simply,

7   Plaintiffs' conjoint analysis relied on actual Class Vehicle pricing to calculate the difference in

8   value between a Class Vehicle with the Defect (what was purchased) and a Class Vehicle without

9   the Defect (what consumers believed they were purchasing). Dkt. No. 72, Weir Decl. ¶¶ 34-35;

10  Dkt. No. 73, Gaskin Decl. ¶ 22. In *Zakaria* a flawed conjoint analysis examined only subjective

11  value, while wholly ignoring historical data—namely the actual market price of the product at

12  issue. 755 F. App'x at 624-25. Here, Plaintiffs' conjoint analysis accounts for these very factors.

13  **C.**     **Should the Court require that Plaintiffs field their conjoint survey, Plaintiffs**
14          **request additional time to do so.**

15          In the event the Court would like Plaintiffs to perform their conjoint analysis of class-

16  wide damages before ruling on Ford's motion against Plaintiffs individually, Plaintiffs request

17  six additional weeks to field their conjoint survey and analyze responsive data.

18                          **VI.  CONCLUSION**

19          For the foregoing reasons, Plaintiffs respectfully request the Court deny Ford's motion

20  for summary judgment with respect to their claims under the CPA and for fraudulent

21  concealment.

22

23

24

25

26

27

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 22
CASE NO. 3:17-CV-05201 RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    RESPECTFULLY SUBMITTED AND DATED this 23rd day of October, 2019.

2                                      TERRELL MARSHALL LAW GROUP PLLC

3

4                           By:   /s/ Beth E. Terrell, WSBA #26759
                                  Beth E. Terrell, WSBA #26759
5                                 Email:  bterrell@terrellmarshall.com
                                  Amanda M. Steiner, WSBA #29147
6                                 Email:  asteiner@terrellmarshall.com
                                  Benjamin M. Drachler, WSBA #51021
7                                 Email: bdrachler@terrellmarshall.com
                                  936 North 34th Street, Suite 300
8                                 Seattle, Washington 98103-8869
                                  Telephone: (206) 816-6603
9                                 Facsimile: (206) 319-5450

10

11                                Paul J. Hanly, Jr., *Admitted Pro Hac Vice*
                                  Email:  phanly@simmonsfirm.com
12                                Mitchell M. Breit, *Admitted Pro Hac Vice*
                                  Email:  mbreit@simmonsfirm.com
13                                SIMMONS HANLY CONROY LLC
                                  112 Madison Avenue
14                                New York, New York 10016-7416
                                  Telephone: (212) 784-6400
15                                Facsimile: (212) 213-5949

16

17                                Gregory F. Coleman, *Admitted Pro Hac Vice*
                                  Email:  greg@gregcolemanlaw.com
18                                Mark E. Silvey, *Admitted Pro Hac Vice*
                                  Email:  mark@gregcolemanlaw.com
19                                Adam A. Edwards, *Admitted Pro Hac Vice*
                                  Email:  adam@gregcolemanlaw.com
20                                Lisa A. White, *Admitted Pro Hac Vice*

21

22

23

24

25

26

27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Email:  lisa@gregcolemanlaw.com
GREG COLEMAN LAW PC
First Tennessee Plaza
800 South Gay Street, Suite 1100
Knoxville, Tennessee 7929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

Eric S. Johnson, *Admitted Pro Hac Vice*
Email: ejohnson@simmonsfirm.com
SIMMONS HANLY CONROY
One Court Street
Alton, Illinois 62002
Telephone: (618) 259-2222

*Attorneys for Plaintiffs*

1

CERTIFICATE OF SERVICE

2      I, Beth E. Terrell, hereby certify that on October 23, 2019, I electronically filed the

3   foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4   such filing to the following:

5

6          Caryn Geraghty Jorgensen, WSBA #27514
            Email: caryn.jorgensen@stokeslaw.com
            John T. Fetters, WSBA #40800
7          Email: john.fetters@stokeslaw.com
            Brett T. MacIntyre, WSBA #46572
8          Email: brett.macintyre@stokeslaw.com
            STOKES LAWRENCE, P.S.
9          1420 5th Avenue, Suite 3000
            Seattle, Washington 98101
10          Telephone: (206) 626-6000
            Facsimile: (206) 464-1496
11

12          MILLS MEYERS SWARTLING
            1000 Second Avenue, Suite 3000
13          Seattle, Washington 98104-3028
            Telephone: (206) 382-1000
14          Facsimile: (206) 386-7343

15
            Cari K. Dawson, *Admitted Pro Hac Vice*
16          Email: cari.dawson@alston.com
            Kyle G.A. Wallace, *Admitted Pro Hac Vice*
17          Email: kyle.wallace@alston.com
            ALSTON & BIRD LLP
18          One Atlantic Center
            1201 West Peachtree Street, Suite 4900
19          Atlanta, Georgia 30309
            Telephone: (404) 881-7766
20          Facsimile: (404) 881-7777
21

22          Bradley W. Petersen, *Admitted Pro Hac Vice*
            Email: bpetersen@slatterypetersen.com
23          SLATTERY PETERSEN PLLC
            2828 North Central Avenue, Suite 1111
24          Phoenix, Arizona 85004
            Telephone: (602) 507-6108
25          Facsimile: (866) 323-9593

26

27

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 25
CASE NO. 3:17-CV-05201 RBL

1    Sherry A. Rozell, *Admitted Pro Hac Vice*
     Email: sherry.rozell@mcafeetaft.com
2    Email: Valerie.dixon@mcafeetaft.com
     Email: cindy.porter@mcafeetaft.com
3    McAFEE & TAFT
     Williams Center Tower II
4    Two W. Second Street, Suite 1100
     Tulsa, Oklahoma 74103
5    Telephone: (918) 574-3001
     Facsimile: (918) 559-9317
6

7    *Attorneys for Defendant*

8    DATED this 23rd day of October, 2019.

9                           TERRELL MARSHALL LAW GROUP PLLC

10

11        By:    /s/ Beth E. Terrell, WSBA #26759
                 Beth E. Terrell, WSBA #26759
12               Email: bterrell@terrellmarshall.com
                 936 North 34th Street, Suite 300
13               Seattle, Washington 98103
                 Telephone: (206) 816-6603
14               Facsimile: (206) 319-5450

15        *Attorneys for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 26
CASE NO. 3:17-CV-05201 RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com