# EXHIBIT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JACOB BEATY and JESSICA BEATY on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>        v.<br><br>FORD MOTOR AMERICA,<br><br>                              Defendant. | Case No. 3:17-CV-05201-RBL |

Reply Declaration

of

**COLIN B. WEIR**

July 10, 2019

REFERENCES MATERIALS DESIGNATED "CONFIDENTIAL" AND "CONFIDENTIAL

ATTORNEYS' EYES ONLY" UNDER PROTECTIVE ORDER

I, Colin B. Weir, declare as follows:

I am Vice President at Economics and Technology, Inc. ("ETI"), One Washington Mall, 15th Floor, Boston, Massachusetts 02108.  ETI is a research and consulting firm specializing in economics, statistics, regulation and public policy.

## I.  QUALIFICATIONS, BACKGROUND, AND EXPERIENCE

1.    I hold a Masters of Business Administration, with honors, from the High Technology program at Northeastern University, Boston, Massachusetts.  I hold a Bachelor of Arts degree cum laude in Business Economics from The College of Wooster, Wooster, Ohio.  I have provided expert testimony before federal and state courts, the Federal Communications Commission, and state regulatory commissions, and have contributed research and analysis to numerous ETI publications and expert testimony at the state, federal, and international levels.  I have consulted on a variety of consumer and wholesale products cases, calculating damages relating to automobiles, food products, household appliances, herbal remedies, health/beauty care products, electronics, and computers.  My Statement of Qualifications, which outlines my professional experience, publications, and record of expert testimony during the last four years, is attached hereto as Exhibit 1.  This includes a list of all cases in which, during the previous four years, I have testified as an expert at trial or by deposition.

2.    Contained in Exhibit 1 is a list of numerous litigations in which I have participated in the design, execution and/or determination of the economic suitability of conjoint surveys, or have been found by the court to have expertise in conjoint analysis.  These cases include, but are not limited to *Jones v. Nutiva; Hunter v. Nature's Way; Looper v. FCA; Sanchez-Knutson v. Ford Motor Company; Belfiore v. Procter and Gamble; Kurtz v. Kimberly Clark; In re Scotts EZ Seed Litigation; In re: ConAgra Foods;* and *Hadley vs. Kellogg.*



Reply Declaration of Colin B. Weir
July 10, 2019
Page 2 of 21

3.    I received graduate level training in conjoint analysis as part of my MBA.  I take continuing education in advanced conjoint design, execution, and analysis through Sawtooth Software, a leading provider of conjoint analysis software.

## II.  RESPONSE TO MCCRARY

**Variations in purchase price do not alter the calculation of total, Class-wide damages**

4.    McCrary argues that our use of Manufacturer's Suggested Retail Prices ("MSRPs") is not accurate, for two reasons:  First, McCrary asserts that "automobile prices are affected by numerous individualized factors, which leads to seemingly similar vehicles selling for drastically different prices …"[1] Second, he claims that "MSRP is not an accurate proxy for the actual price [because] [i]n general, the MSRP far exceeds transaction prices."[2]  However, such variations in transaction price do not prevent the calculation of Class-wide damages or require individual inquiry.



6.    Moreover, such variations are also inapposite to the calculation of Class-wide damages because the ultimate distribution or allocation of damages to individuals during claims administration or a settlement does not alter or affect the calculation of total Class-wide damages.

---

[1] McCrary Declaration, at para. 17.

[2] *Id.*, at para. 56,

[3] *Id.,* at Exhibit A5.



Reply Declaration of Colin B. Weir
July 10, 2019
Page 3 of 21

7.    Class-wide damages under a diminished value model can be calculated from the bottom up as the sum of individual damages (as McCrary argues), or can be calculated from the top down, without individual inquiry, by finding the percentage price difference resulting from the Defect and then multiplying that percentage by the number of units or dollars sold.  As outlined in the February 22, 2019 Weir Declaration, I propose to use the latter technique, obviating the need for individual inquiry.

8.    Ultimately, no matter the method by which damages are distributed, it does not affect the calculation of, or the total amount of, Class-wide damages in this litigation.

9.    As to McCrary's assertion that the MSRP in general exceeds actual transaction prices, McCrary misunderstands my use of MSRP as a proxy for prices paid at this stage of this litigation.  My use of MSRP here is to illustrate the manner by which Class-wide damages can be calculated on a top-down basis without individual inquiry.  Actual transaction price data can be easily substituted for MSRPs in making the actual Class-wide damages calculation and, importantly, as McCrary has himself shown, such data is readily available.  McCrary advises that he

> [relies] on J.D. Power's Power Information Network ("PIN") database. Academic articles routinely use PIN data to analyze automobile prices. The PIN data contain daily retail transaction data for new and used vehicles collected from transactions at participating automobile dealers across the United States.  The PIN data contain an array of variables, such as the transaction date, whether the vehicle is new or used, the price of the vehicle, the vehicle's model-year, vehicle features (such as body type, number of doors, transmission, and number of cylinders), and geographical information on buyers and dealers.[4]

Precisely the same methodology that I have outlined[5] can be used with either MSRP or actual transaction price data.

---

[4] *Id.*, at para. 42. [citations omitted]

[5] Weir Declaration, at paras. 49-52.


ECONOMICS AND TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
July 10, 2019
Page 4 of 21

**The transaction price actually paid by a purchaser, and the extent to which it differs from MSRP or may have been influenced by factors unrelated to the Defect, are irrelevant to the determination of Class-wide damages**

10.   McCrary states that "automobile prices are affected by numerous individualized factors, which leads to seemingly similar vehicles selling for drastically different prices …"[6]  He cites, *inter alia,* factors such as the condition of a used vehicle, the dealer's inventory, the terms of the transaction, and the buyer's information and search process.[7]  Elsewhere he mentions factors such as the buyer's negotiating skills or approach to negotiation (e.g., via third parties, such as Costco) and dealer incentives and promotions.[8]  Conspicuously absent from McCrary's litany of "factors" is any reference to the presence of the Defect--and the resulting damages-- *at the time and point of purchase*.  Yet for purposes of this litigation, that is the only "factor" that has any relevance.

11.   Here, the existence of the Defect has never been disclosed by Ford to any putative Class member as of the point of purchase.  Indeed, Ford has never admitted that the defect even exists.  It has never issued a recall of affected vehicles to address and remedy the Defect and, as Plaintiffs have claimed, has aggressively resisted efforts of those owners who have experienced the effect of the Defect for compensation.

12.   Factors that impact the price of used vehicles do not impact the damages calculated at the time and point of first sale.  Factors that may have impacted historic prices at the time of first sale are already reflected in that historic data, and the use of that range of data in the conjoint, and the subsequent application of the conjoint results back to those prices, accounts for such factors.

---

[6] McCrary Declaration, at para. 17.

[7] *Id.*

[8] *Id*., at paras 35-37.

ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
July 10, 2019
Page 5 of 21

13.   McCrary appears to suffer from a fundamental misunderstanding of the Plaintiffs' theory of liability in this litigation.  He states, that "Plaintiffs' proposed method of assessing harm also ignores that many putative class members may not have been harmed because of the timing of their individual transaction.

14.   For example, McCrary argues that "any putative class member who bought and sold an at-issue vehicle before there was any disclosure or knowledge of the alleged defect may not have suffered any diminution in value."[9]  The undisclosed presence of the Defect at the time and point of purchase diminishes the value of the vehicle as of that point in time relative to whatever price the buyer actually paid.  That price paid by the purchaser relative to the undisclosed diminished value constitutes the diminished value damages suffered--and the total harm caused by Defendant.  Any subsequent resale of the vehicle does not change this overall harm.  If required by the Court, this total amount of damages resulting at the time and point of first sale can be apportioned between class members.  As above, any such apportionment would not impact the calculation or amount of total, aggregate classwide damages.


**The existence of the undisclosed Defect will negatively impact the value of the Vehicle for ALL consumers as of the point of purchase whether or not any particular buyer actually experiences the physical manifestation of the Defect**

15.   Calculating a but-for diminution in value does not depend on whether the Defect manifests itself for any particular purchaser or purchasers of the Vehicles.  If the value of the Vehicles was lower as a result of the undisclosed Defect than it would have been had no such Defect been present, then ALL consumers will have paid too high a price than if the presence of the Defect had been fully disclosed.

---

[9] *Id*., at para. 17.

ETI ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
July 10, 2019
Page 6 of 21

16.  Individual satisfaction with the Vehicles does not change the market value received by an individual purchaser.

17.  As I have discussed above, if there is a diminution in value as a result of the undisclosed Defect and consumers buy the Vehicles, they will pay a price greater than the market value received regardless of their level of satisfaction, because their individual subjective satisfaction does not change the price they had will pay.

18.  An individual that is allegedly "satisfied" with the Vehicles is still harmed because he or she has been denied the even greater satisfaction of acquiring the Vehicle at a lower price had the presence of the Defect been fully disclosed.

**McCrary's allegations are colored by his inappropriate refusal to accept the Plaintiffs' stated theory of liability**

19.  It is standard practice for a damages quantifier to assume that the plaintiffs will prevail on the merits and establish liability as to their stated theory of liability.  In this case, Plaintiffs allege that all Class members paid a price for the Vehicles, and that the Vehicles are of diminished value by the failure of Ford to disclose the Defect inherent in ALL Vehicles with panoramic sunroofs.  If the price paid would be lower had the Defect been disclosed, every single purchaser of the Vehicles will have been harmed regardless of whether the spontaneous shattering ever occurred for any given consumer.

20.  By suggesting that measures of damage might vary by individual rather than by the market overall, McCrary has effectively proclaimed that Plaintiffs will not prevail on their theory of liability.  This is an inappropriate misstep in a damages analysis.  As noted in the Reference Manual on Scientific Evidence, "In almost all cases, the damages expert proceeds on the hypothesis that the defendant committed the harmful act and that the act was unlawful."[10]

---

[10] Reference Manual on Scientific Evidence, at 432.



Reply Declaration of Colin B. Weir
July 10, 2019
Page 7 of 21

21.  McCrary has admitted that he cannot bring himself to follow that procedure in this

context, as demonstrated in the following exchange on redirect examination at his June 25, 2019

deposition:

> Q.   What is your understanding of Plaintiff's theory of harm in this specific
> case?
>
> A.   My understanding of Plaintiff's theory of harm is that there was
> diminished value in the marketplace.  That is to say a decline in the market
> price associated with the vehicle, attributable specifically to the alleged
> conduct.
>
> ******
>
> Q.   Can Mr. Gaskin and Mr. Weir's proposed methodology isolate and
> identify those alleged damages resulting from the Plaintiffs theory of harm?
>
> A.   No, I don't believe that it can.
>
> Q.   Why can't it?
>
> A.   There are several problems with the analysis from prevent them from
> being able to do that. The first is that their analysis, as said, is looking at only
> one side of the market.  The second is that it's hypothetical as opposed to real
> world.  ***But even setting that aside, not in a position to actually assess for
> example the question of causation, that is to say whether or not the
> shattering of a PSR may be attributable to Defendants alleged conduct***.[11]

And on re-cross:

> Q.   You were asked about Plaintiffs theory of harm or theory of liability
> during redirect.  Do you remember that?
>
> A.   I do, yes.
>
> Q.   Okay.  According to Plaintiffs theory of liability, when did the alleged
> harm take place?
>
> A.   My understanding of the Plaintiffs theory is that the Plaintiffs theory is
> that it took place at the point of sale.

---

[11] McCrary Deposition, at 165-167.  Emphasis supplied.



Reply Declaration of Colin B. Weir
July 10, 2019
Page 8 of 21

Q.   Okay.  And I think we established this earlier, but you didn't make an attempt to calculate damages at the point of sale in this case, it wasn't part of your assignment, right?

A.   My assignment was not to calculate damages at the point of sale, that's correct.  At the same time, the analysis in Exhibits B-1 through B-5 suggest to me that any such notion of damages is extremely limited and possibly de minimus or zero.[12]

---

[12] McCrary Deposition, at 173-174.

[13] McCrary Declaration, at paras. 53-54.

[14] *Id.*


ECONOMICS AND TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
July 10, 2019
Page 9 of 21

24.   The full extent of McCrary's refusal to accept Plaintiffs' theory of liability, for purposes of an analysis of damages, is revealed of his Declaration:

> Mr. Weir contends that such a class member would still be harmed, because he claims that the initial owner would recover only a portion of the alleged initial overpayment at the time of selling the car (and the second owner of the car would also incur harm).  Specifically, he asserts that any alleged initial overpayment would be divided between the two individuals who participated in this transaction, but his logic assumes that there was an initial overpayment due to the Challenged Conduct.  This is an empirical question that requires empirical analysis, which Mr. Weir has not performed.  As I show in Section 4, the real-world market data do not show an impact of the alleged defect on market prices.  Additionally, he has also not proposed a method to apportion any alleged initial overpayment between multiple class members who owned a given at-issue vehicle at different points in time.[15]

25.   McCrary is correct that I have "assume[d] that there was an initial overpayment due to the Challenged Conduct." And, as I explained at paragraph 19 above, that is precisely what I am required to do in providing a damages assessment.  McCrary states that "[t]his is an empirical question that requires empirical analysis, which Mr. Weir has not performed." Notwithstanding McCrary's attempt to dismiss Gaskin's conjoint analysis, the methodology that Gaskin and I have proposed will empirically determine whether "there was an initial overpayment due to the Challenged Conduct."  Moreover, McCrary's suggestion that resale transaction data can be used to assess damages at the time and point of first sale is misplaced.  He is analyzing data from a time other than first sale, and in a scenario where the Defect is never disclosed by Ford.

26.   Before turning to McCrary's so-called "real world" analysis, the final point he raises as quoted above is that I have "also not proposed a method to apportion any alleged initial overpayment between multiple class members who owned a given at-issue vehicle at different points in time."  Surely McCrary understands, or should certainly understand, that the matter of

---

[15] *Id.*, at para. 54.

ECONOMICS AND
TECHNOLOGY, INC.

how to "apportion any alleged initial overpayment between multiple class members who owned a given at-issue vehicle at different points in time" is a matter of claims administration, and one that will not alter the calculation of total, aggregate classwide damages.

**McCrary's so-called "real world" analysis is incapable of assessing the effect of the Defect upon resale value because the Defect was never disclosed or even admitted to during the entire period that he has examined**

27.   In the caption to Section 4 of his Declaration, McCrary summarizes his "real world" analysis by asserting that "transaction data show that at-issue vehicles retain their value at least as well as comparable vehicles."  He speculates that

> If Plaintiffs' theory of harm were correct, one would expect the prices of at-issue vehicles to be systematically lower [because] to the extent that owners of Ford vehicles with panoramic sunroofs were experiencing the defect, they would be more interested in selling their vehicle and/or willing to accept a lower price [and] to the extent that owners of Ford vehicles were experiencing the defect, news about the defect may trickle out in chat rooms, product reviews, or in the news.[16]

28.   Significantly, McCrary offers absolutely no facts or other evidence to support either of these speculations.  Indeed, McCrary notes that "less than 1% of the vehicles in the class manifested the defect."  McCrary does not demonstrate that those that experienced a failure of the panoramic sunroof would immediately surmise that the breakage was the result of a systematic Defect.  Additionally, there is no support at all for the suggestion that "news about the defect may trickle out in chat rooms, product reviews, or in the news" and McCrary has provided nothing to support such a claim.

---

[16] *Id*., at para 58.

ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
July 10, 2019
Page 11 of 21

29.  Worse, McCrary's analysis does not--and cannot--determine which vehicles in his
data set experienced a manifestation of the defect.  Even if the depreciation method sponsored by
McCrary could conceptually be used here--it cannot-- the necessary data to measure the impact
of information "trickling out" are simply not available.



Reply Declaration of Colin B. Weir
July 10, 2019
Page 12 of 21

---

ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
July 10, 2019
Page 13 of 21

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████

    █████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

████████████

    █████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

---

[19] Or more precisely, McCrary measures vehicles with "trim packages" that did and did not include a panoramic sunroof.  McCrary readily concedes this point:  "The PIN data do not show whether a given vehicle has a panoramic sunroof.  However, for analyses in which I want to focus on vehicles with or without a panoramic sunroof, I am able to use the vehicle's trim level as a proxy for whether the vehicle has a panoramic sunroof."



Reply Declaration of Colin B. Weir
July 10, 2019
Page 14 of 21

**The conjoint survey and my damages analysis have been carefully crafted to control for supply side factors**

37.   McCrary argues, incorrectly, that the Gaskin survey and my calculation of overpayment damages do not adequately account for supply side factors.[20]   He claims that "Mr. Gaskin and Mr. Weir's approach cannot determine how the market price would have changed--as opposed to how consumer willingness to pay would have changed--had Ford disclosed the alleged Defect."[21]   But the prices that consumers had paid for the Vehicles is a matter of historical fact, as is the quantity of vehicles sold to the class.   McCrary claims that Gaskin and I failed to consider the potential response of competitors.   But the actions of competitors, to the extent that they impacted the prices paid for class Vehicles, are also reflected in the prices that consumers have already paid for their Vehicles.

38.   As outlined in the Weir Declaration, Gaskin and I have accounted for myriad supply side considerations.   Chief among them is the understanding that the supply of the Vehicles to the Class is fixed as a matter of history.   The only logical quantity of supply in this case is the actual number of Class Vehicles.   If one were to follow McCrary's logic, the analysis might analyze a supply of Vehicles smaller than the actual quantity, leaving some class members out of the analysis.   Or even more illogical, McCrary's logic would allow for a supply of even great numbers of class Vehicles than were actually sold, resulting in the analysis of phantom transactions.

39.   The pricing data that was utilized in the Gaskin conjoint study and in my calculation of Class-wide damages **already** reflects and controls for the supply side factors of the Vehicles that existed during the relevant Class Period.   Indeed, McCrary seems to agree:

---

[20] McCrary Declaration, at paras. 17, 23 *et seq.*

[21] *Id.*, at para. 26.



Reply Declaration of Colin B. Weir
July 10, 2019
Page 15 of 21

Q.   I know you don't have the number.  And if I represent to you that the class does cut off at some point.  It doesn't go into the future.  You and I can agree that there are historical numbers indicating the vehicles supplied to class members, correct, even if we don't know what they are or even if you don't know what they are?

A.   To be clear, I am not sure whether it's right that that is something that is straightforward to assess.  I agree that something that occurred in the past might be defined to be historical.

Q.   Okay.  You told me you looked at PIN data earlier, correct?

A.   That's correct.

Q.   Was that for new vehicle purchases or used vehicle purchases or both?

A.   Both.

Q.   So the price that proposed class members actually paid for a class vehicle is also a historical fact, correct?

A.   I'll again invoke your earlier representation that the class has a cut off date.  And if it's right that the class does, then a purchase associated with the class would, by definition, have been historical.[22]

40.   The conjoint, and its application to historic sales data, accomplish exactly what McCrary prescribes: the Gaskin survey captures the supply side factors that I have discussed above and in the Weir Declaration, along with data on demand and interacts them in the market simulator to determine the change in price that would occur solely as a result of the disclosure of the Defect.  This data is then compared with the actual historic prices paid by consumers to determine the amount by which Class members, in aggregate, had been harmed.

41.   Gaskin used market data in the conjoint survey design where the price points to be shown to consumers are reflective of prices that were set by the interaction of supply and demand and that had actually existed during the Class period -- this is confirmed by Gaskin's

---

[22] McCrary Deposition, at 139-140.

ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
July 10, 2019
Page 16 of 21

market scan, and even McCrary's own data.  The Gaskin market simulator will also use these real world market data as part of the market simulation.

42.  Finally, the results of the Gaskin survey will then be applied back to aggregate market data that already reflects the then extant supply side.

43.  McCrary clearly misunderstands how the market simulator can be used to incorporate supply side information.  Gaskin proposes to use the market simulator to model a very precise set of supply considerations.  The simulator models the but-for world where the supply of the Vehicles to the class is fixed as a matter of history.  Class members **did** purchase the Vehicles during the Class period, and Gaskin has measured the diminution in value that Class members experienced when they **actually purchased** the Vehicles during the Class period.  Modeling the supply side in any way in which the class did not actually purchase the Vehicles makes little sense, as such Class-wide damages should be determined by the diminution in value experienced as a result of Defendants' failure to disclose the Defect for actual purchases.

**McCrary misunderstands that conjoint can be used to calculate both the change in market value and "willingness to pay" in different contexts**

44.  McCrary asserts that the Gaskin survey cannot produce an estimate of the change in market value, and instead can only calculate so-called "willingness to pay."  "Willingness to pay" is the maximum amount any one individual would be willing to pay for a good or service.  This is **not** what the Gaskin survey is designed to measure--Gaskin proposes to measure a marketplace outcome.  I often illustrate the difference between these concepts using the example of Gilligan's Island.

45.  The concept of willingness to pay is akin to asking the rich couple, the Howells, "How much would you be willing to pay to get off the island right now, you never have to see Gilligan again, a nice boat ride home to safety?"  They would probably give an answer like



Reply Declaration of Colin B. Weir
July 10, 2019
Page 17 of 21

"untold millions."  And that value in and of itself is not particularly useful in determining a market valuation.

46.  If you were to say to the Howells, "There is a boat coming in half an hour and the price of a ride on that boat is $5,000, will you purchase that boat ride home?" That begins to tell you something about what will take place in the marketplace.

47.  Now, if you interview the Howells alone, that may not help you establish the market price. But if you interview the Howells and Ginger and Maryanne and the Professor, then suddenly now you understand the market value for Gilligan's Island, which might be less than the Howells would pay, but might be more than Ginger might pay.

48.  And the Gaskin conjoint exercise works in a similar way.  It is not determining the "willingness to pay" (which is the Howells' untold millions) for any individual or for the market, but it is taking information about the potential marketplace transactions, and then through the market simulator determining the change in market value that results from the disclosure of the Defect.

49.  We know the market prices that consumers have already paid for the Vehicles absent any knowledge of the Defect, and the conjoint is determining the likely market price that would prevail had the presence of the Defect been disclosed.

50.  As such, McCrary's criticisms founded on the premise of "willingness to pay" are untethered from the actual analysis that Gaskin and I propose, which remains conservative as described in the Weir Declaration.

**McCrary appears to conflate maximum willingness to pay with a different concept: the willingness to pay of the marginal consumer**

51.  McCrary references the concept of "willingness to pay" in his declaration, but that term can be used in different manners to mean different things.  In his declaration, Gaskin explains that the conjoint survey is designed to determine the change in market value attributable



Reply Declaration of Colin B. Weir
July 10, 2019
Page 18 of 21

to the nondisclosure of the Defect by measuring the difference in market price between Vehicles with no disclosed Defect and those with the Defect.  As a matter of economics, there is a concept called the willingness to pay of the marginal consumer, which is the same as the market price. This is consistent with the accepted use of conjoint in the academic literature and contrary to McCrary's assertion that the use of conjoint would result in measures of "consumer willingness to pay [which] is different from and typically higher than the market price of the product feature."[23]

52.   A recent court order certified a class based upon a price premium damages theory and a conjoint methodology utilizing calculations of "Willingness to Pay" to measure the market price premium.  The order summarizes the defendant's position (which parallels Defendants' and their experts' position in this litigation) and dismisses those arguments while explaining how "Willingness to Pay" can be used to determine a market price premium:

> Dial argues that Boedeker's model does not actually measure a market-determined price premium. The price of a product in a competitive market, Dial says, is determined by the intersection of market demand and market supply for a particular transaction at a particular time. Boedeker's model, however, measures only a difference in consumer "willingness to pay" for the challenged attribute, failing to take into consideration any market conditions or other factors that would affect the supply side curve and so influence product price in the market. [...]
>
> Dial's experts' criticism of Boedeker's model perhaps rests on a misunderstanding of what it purports to do. The model does not, as Dial contends, seek to determine an "average" or a "median" expression of consumer "willingness to pay" for the Dial Complete product without the claimed feature, unconnected to supply side market forces. Rather, Boedeker's model purports to calculate the "Marginal Consumer's Willingness to Pay" for that product in the actual market in which the products with the allegedly false claims were sold. The distinction is important, for, as explained in a brief paper co-authored by Lisa Cameron, Michael Craig, and Nobel Laureate in Economics Daniel McFadden:

---

[23] McCrary Declaration, at para 17.



Reply Declaration of Colin B. Weir
July 10, 2019
Page 19 of 21

> *Defendants have argued that WTP ["willingness to pay"] results emerging from the conjoint analysis do not directly address the value of the patents in question. However it is important to note that different research questions require different information about WTP. For example, if the researcher seeks qualitative information about how much consumers value the infringing level(s) of the attribute at issue, he can develop a conjoint survey that provides that average or median consumer WTP . . . .*

> *On the other hand, if the researcher wants to assess the price premium associated with the infringing feature, then he will need to develop a conjoint survey that assesses the WTP of the marginal consumer - i.e. the consumer who is indifferent between buying and not buying the infringing product. It is the WTP of the marginal consumer that is equivalent to the price premium associated with the infringing level of the attribute; this marginal consumer can be identified by offering respondents a "no buy" option. (Lisa Cameron, Michael Cragg, & Daniel McFadden, "The Role of Conjoint Surveys in Reasonable Royalty Cases," LAW360 (Oct. 16, 2013), http://www.law360.com/articles/475390/the-role-of- conjoint-surveys-in-reasonable-royalty-cases) (last visited Mar. 24, 2017) (emphasis supplied).*

In the example given, it was appropriate for the authors to directly equate the marginal consumer's "willingness to pay" with the price premium associated with a patented feature of a product, because in such cases it is the value added to the product that is of interest. In this case, however, another step is required to determine a price premium associated with the misrepresented product feature. **The marginal consumer's willingness to pay for the product without the feature is equivalent to the market price of that product in the actual market into which the set quantity of offending products was sold**, which price must then be subtracted from the market price actually paid for the product with the claimed feature. That calculation will yield the price premium associated with the "Kills 99.99% of Germs" claim.[24]

53.   As is made plain by the *In re: Dial* order, that output can still be used to determine the market value for the challenged Claims.  Gaskin does offer consumers a "no buy" option in his survey, and as such, can identify the marginal consumer -- and the diminution in market value due to the Defect -- in the market simulator.

---

[24] *In re: Dial Complete Marketing and Sales Practices Litigation*, MDL Case No. 11-md-2263-SM, Opinion No. 2017 DNH 051 [emphasis supplied].


ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
July 10, 2019
Page 20 of 21

54.  McCrary's criticisms as to "willingness to pay" are inapposite here because McCrary's criticisms center on the concept of maximum "willingnesss to pay,"[25] while Gaskin calculates something entirely different--the willingness to pay of the marginal consumer.

**McCrary lacks the necessary experience to understand and evaluate the Gaskin conjoint survey**

55.  McCrary's overarching opinions relate to what can and cannot be done with a conjoint analysis or conjoint market simulator.[26]  McCrary's assertions are literally baseless, as he has no experience with conjoint analysis whatsoever.  He has never tried to use the methods proposed by Gaskin and myself to answer any question, let alone the question of diminished value.[27]

56.  Clearly, McCrary's direct experience with Conjoint Analysis is highly limited and, more to the point, he appears to reject the use of this methodology to examine issues of the type being addressed in this litigation.

57.  McCrary's testimony in this regard is thus problematic, because he cannot and does not know, for example, how the conjoint market simulator can incorporate supply side factors or account for the presence of competitors in the marketplace.

58.  In contrast, Gaskin and I are both experienced with designing and executing conjoint studies.  I received graduate level training in conjoint analysis as part of my MBA.  I take continuing education in advanced conjoint design, execution, and analysis through Sawtooth Software, a leading provider of conjoint analysis software.  I have provided expert testimony about the design, execution and/or determination of the economic suitability of conjoint analysis

---

[25] McCrary Deposition, at 134.

[26] *See, generally,* McCrary Declaration.

[27] McCrary Deposition, at 40-43.



Reply Declaration of Colin B. Weir
July 10, 2019
Page 21 of 21

in more than two dozen litigations, and have been found by the courts to have expertise in

conjoint analysis.

59.   My combination of experience with conjoint and economic training puts me in a

position to evaluate whether the proposed conjoint design and market simulation are

economically appropriate for determining the amount of the overcharge paid by Class members

solely attributable to Defendant's failure to disclose the Defect in the subject Vehicles.  Nothing

in the McCrary Declaration causes me to change my opinion set forth in the Weir Declaration.


### III.  RESPONSE TO HANSSENS

60.   I understand that Hanssens has offered opinions regarding the abilities of conjoint

analysis, "willingness to pay", supply side considerations, and market prices that are largely

duplicative of the opinions advanced by McCrary.  As such, my comments on these topics above

apply equally to Hanssens.


### IV.  RESERVATION OF RIGHTS

61.   My testimony is based upon the information and data presently available to me.

Additional, different and/or updated data including market research data may be obtained in

advance of trial.  I therefore reserve the right to amend or modify my testimony.


### VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge, information, and belief, and that this declaration was executed at Boston,

Massachusetts this 10th day of July, 2019.

Colin B. Weir



**Exhibit 1**

**Statement of Qualifications
of**

**COLIN B. WEIR**

## Statement of Qualifications

## COLIN B. WEIR

Colin B. Weir is Vice President at Economics and Technology, Inc.  Mr. Weir conducts economic, statistical, and regulatory research and analysis, and testifies as an expert witness. Mr. Weir's work involves econometric and statistical analysis, multiple regression, surveys, statistical sampling, micro- and macroeconomic modeling, accounting and other economic analysis.  Such analysis often involves analysis of databases, call detail records, and other voluminous business records.  Mr. Weir is familiar with common statistical and econometric software packages such as STATA and Sawtooth Software.  Mr. Weir assists with analysis of economic, statistical and other evidence; and preparation for depositions, trial and oral examinations.  Mr. Weir has provided expert testimony before federal and state courts, the FCC, and state regulatory commissions, and has contributed research and analysis to numerous ETI publications and testimony at the state, federal, and international levels.  Prior to joining ETI, Mr. Weir worked at Stop and Shop Supermarkets as a cash department head, grocery/receiving clerk, and price-file maintenance head.

Mr. Weir's experience includes work on a variety of issues, including: economic harm and damage calculation; liquidated damages provisions; lost profits; false claims; diminution in value; merger/antitrust analysis; Early Termination Fees (ETFs); Late Fees; determination of Federal Excise Tax burden; and development of macroeconomic analyses quantifying the economic impact of corporate actions upon the US economy and job markets.

Mr. Weir has conducted research and analysis in numerous litigation and regulatory matters on behalf of corporate, government and individual clients, including AT&T, MTS Allstream (Canada), The US Department of Justice, Office of the Attorney General of Illinois, Pennsylvania Department of Revenue,  Thomas v. Global Vision, (class action litigation, Superior Court, County of Alameda), Ayyad v. Sprint (class action litigation,  Superior Court, County of Alameda), Forcellati v. Hylands (class action, U.S. District Court, Central District of California), and Ebin v. Kangadis Foods (class action, U.S. District Court, Southern District of New York).

Mr. Weir holds an MBA with honors from Northeastern University.  He also holds a Bachelor of Arts degree *cum laude* in Business Economics from The College of Wooster.

Mr. Weir is a member of the Boston Economic Club, a business member of the Boston Bar Association, serves on the Board of Trustees of the Waring School, and serves as the comptroller for the Sybaris Investment Partnership.

1

ECONOMICS AND
TECHNOLOGY, INC.

**Publications and Testimony of Colin B. Weir**

Mr. Weir has co-authored the following:

*Interoperability and Spectrum Efficiency: Achieving a Competitive Outcome in the US Wireless Market* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, July 2012.

*The Price Cap LECs' "Broadband Connectivity Plan": Protecting Their Past, Hijacking the Nation's Future* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, September 2011.

*Regulation, Investment and Jobs: How Regulation of Wholesale Markets Can Stimulate Private Sector Broadband Investment and Create Jobs* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of Cbeyond, Inc., Covad Communications Company, Integra Telecom, Inc., PAETEC Holding Corp, and tw telecom inc., February 2010.

*Revisiting Us Broadband Policy: How Re-regulation of Wholesale Services Will Encourage Investment and Stimulate Competition and Innovation in Enterprise Broadband Markets*, (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, February 2010.

*Longstanding Regulatory Tools Confirm BOC Market Power: A Defense of ARMIS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, January 2010.

*Choosing Broadband Competition over Unconstrained Incumbent Market Power: A Response to Bell and TELUS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, April 2009.

*The Role of Regulation in a Competitive Telecom Environment: How Smart Regulation of Essential Wholesale Facilities Stimulates Investment and Promotes Competition* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, March 2009.

*Special Access Overpricing and the US Economy: How Unchecked RBOC Market Power is Costing US Jobs and Impairing US Competitiveness* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, August 2007.

*The AWS Spectrum Auction: A One-Time Opportunity to Introduce Real Competition for Wireless Services in Canada* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, June 2007.

*Comparison of Wireless Service Price Levels in the US and Canada* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of MTS Allstream, May 2007.



*Hold the Phone! Debunking the Myth of Intermodal Alternatives for Business Telecom Users In New York* (with Susan M. Gately and Lee L. Selwyn) Economics and Technology, Inc., prepared for the UNE-L CLEC Coalition, August 2005.

Mr. Weir has submitted the following testimony:

**United States District Court, Eastern District Of Michigan, Southern Division,** *Suresh Persad, Daniel G. Wright and Robert S. Drummond, individually and on behalf of all others similarly situated, v. Ford Motor Company*, Case No. 2:17-cv-12599-TGB-MKM, on behalf of Kessler Topaz Meltzer & Check, LLP, Declaration submitted on June 25, 2019.

**United States District Court, Southern District of Florida, Fort Lauderdale Division,** *Milita Barbara Dolan, on behalf of herself and all others similarly situated, v. Jetblue Airways Corporation*, CASE NO.: 18-cv-62193-RNS, on behalf of Robbins Geller Rudman & Dowd, LLP, Declaration submitted on May 23, 2019.

**United States District Court, Northern District of California,** *Joseph Gregorio, Patrick Quiroz and Adam Cooper individually and on behalf of all others similarly situated, v. The Clorox Company,* Case 4:17-cv-03824-PJH, on behalf of Bursor & Fisher, P.A., Declaration submitted on May 15, 2019,

**United States District Court, District of Minnesota,** *Hudock, et al., v. LG Electronics U.S.A., Inc., et al.*, Lead Case No. 0:16-CV-01220-JRT-KMM, Relating to All Consolidated Actions, on behalf of Zimmerman Reed, LLP, Declaration submitted on May 10, 2019; deposition on June 6, 2019.

**United States District Court, Central District of California, Western Division,** *Jennifer Reitman and Carol Shoaff, individually and on behalf of a class of similarly situated individuals, v. Champion Petfoods USA, Inc. and Champion Petfoods LP*, Case: 2:18-cv-01736-DOC-JPR, on behalf of Gustafson Gluek PLLC, Declaration submitted on April 8, 2019, Deposition on April, 26, 2019.

**United States District Court, Central District of California, Western Division,** *Barry Braverman, et al., v. BMW of North America, LLC, et al.*, Case No. 8:16-cv-00966-TJH-SS, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on March 29, 2019; Deposition on May 30, 2019.

**United States District Court, Southern District of Florida, West Palm Beach Division,** *Judith Marilyn Donoff on behalf of herself and all others similarly situated, v. Delta Air Lines, Inc.*, Case No. 9:18-cv-81258-DMM, on behalf of Robbins Geller Rudman & Dowd, LLP, Declaration submitted on March 26, 2019.

3



**United States District Court, Western District of Washington,** *Jacob Beaty and Jessica Beaty on, behalf of themselves and all others similarly situated, v. Ford Motor America*, Case No. 3:17-CV-05201-RBL, on behalf of Simmons Hanly Conroy LLC; Declaration submitted on February 22, 2019; Deposition on March 29, 2019.

**United States District Court, Southern District of New York,** *Nicholas Parker, on behalf of himself and all others similarly situated, v. United Industries Corporation*, Case No. 1:17-cv-05353, on behalf of Bursor & Fisher, P.A., Declaration submitted February 3, 2019; Declaration submitted March 21, 2019; Declaration submitted on May 3, 2019.

**United States District Court, Northern District of California,** *Debbie Krommenhock and Stephen Hadley, on behalf of themselves, all others similarly situated, and the general public, v. Post Foods, LLC,* Case No. 3:16-cv-04958-WHO (JSC), on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted January 11, 2019; Deposition on March 1, 2019; Declaration on April 24, 2019; Deposition on May 14, 2019; Supplemental Declaration submitted on June 21, 2019.

**United States District Court, Southern District of New York,** *Leona Hunter and Anne Marie Villa, on behalf of themselves and all others similarly situated, v. Time Warner Cable Inc*., Case No. 15-cv-06445-JPO (JLC), on behalf of Bursor & Fisher, P.A. Declaration submitted on November 30, 2018; Deposition on December 21, 2018; Reply Declaration submitted on February 27, 2019.

**United States District Court, Northern District of California,** *Jeremiah Revitch, on Behalf of Himself and all Others Similarly Situated, v. Citibank, N.A*., Case No. 17-cv-06907-JCS, on behalf of Bursor & Fisher, P.A. Declaration submitted on November 27, 2018; Deposition on December 28, 2018; Reply Declaration submitted on February 1, 2019; Deposition on February 26, 2019.

**United States District Court, Central District of California,** *Kaylee Browning and Sarah Basile, on behalf of themselves and all others similarly situated, v. Unilever United States Inc.*, Case No. 8:16-cv-02210, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 22, 2018; Deposition on November 1, 2018; Reply Declaration submitted on November 23, 2018.

**United States District Court, Southern District of New York,** *Lori Canale, individually, and on behalf of all others similarly situated, v. Colgate-Palmolive Co.,* Case No. 7:16-CV-03308-CS, on behalf of Bursor & Fisher, P.A., Declaration submitted on September 19, 2018.

**Superior Court for the State of California, In and for the County of San Francisco,** *Michelle Gyorke-Takatri and Katie Silver on behalf of themselves and all others similarly situated, v. Nestlé USA, Inc. and Gerber Products Company,* Case No. CGC 15-546850, on behalf of Stanley Law Group, Declaration submitted on September 7, 2018.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, Northern District of Illinois, Eastern Division,** *Ryan Porter and Haarin Kwon, individually and on behalf of all others similarly situated, NBTY, Inc., United States Nutrition Inc., Healthwatchers (DE), Inc., and MET-RX Nutrition, Inc*., Case No. 15-cv-11459, on behalf of Bursor & Fisher, P.A., Declaration submitted on August 15, 2018; Deposition on October 12, 2018; Reply Declaration on December 21, 2018.

**Superior Court of the State of California, For The County of San Francisco,** *Deanna Gastelum and Heather Bryden individually and on behalf of all other persons similarly situated, v. Frontier California Inc.*, Case No. CGC-11-511467, on behalf of Bramson, Plutzik, Mahler and Birkhaeuser; Declaration submitted on July 31, 2018, Declaration submitted August 13, 2018.

**United States District Court, For the Southern District of New York,** *Suzanna Bowling, individually and on behalf of all others similarly situated, v. Johnson & Johnson and McNeil Nutritionals, LLC*, Case No. 1:17-cv-03982-AJN, on behalf of Bursor & Fisher, P.A., Declaration submitted on July 30, 2018, Deposition on September 6, 2018; Reply Declaration submitted on November 16, 2018.

**United States District Court, Southern District of New York,** *Anne De Lacour, Andrea Wright, and Loree Moran individually and on behalf of all others similarly situated, v. Colgate-Palmolive Co., and Tom's of Maine Inc.*, Case No. 1:16-cv-08364-RA, on behalf of Bursor & Fisher, P.A., Declaration submitted on June 15, 2018; Deposition on August 28, 2018; Reply Declaration submitted on November 21, 2018.

**United States District Court, Northern District of California, San Francisco Division,** *In re: Chrysler-Dodge-Jeep EcoDiesel® Marketing, Sales Practices, and Products Liability Litigation Dorun Bali, et al., v. Fiat Chrysler Automobiles N.V., FCA US LLC, Sergio Marchionne, VM Motori S.p.A., VM North America, Inc., Robert Bosch GmbH, Robert Bosch LLC, and Volkmar Denner*, Case No. MDL 2777-EMC, on behalf of Lieff Cabraser Heimann & Bernstein, Declaration submitted on June 6, 2018, Deposition on July 18, 2018, Reply Declaration submitted on September 4, 2018.

**United States District Court, Northern District of California,** *Stephen Hadley, on behalf of himself, all others similarly situated, and the general public, v. Kellogg Sales Company*, Case No. 5:16-cv-04955-LHK-HRL, on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted April 30, 2018, Deposition on May 31, 2018; Reply Declaration submitted June 25, 2018; Declaration submitted on September 20, 2018; Deposition on September 28, 2018.



**United States District Court, Northern District of Illinois, Eastern Division,** *Teresa Elward, Dennis Keesler, Leasa Brittenham, Kathy Beck and Nathaniel Beck, Angelia East, Sarah LaVergne, Tony And Lauren Fitzgerald, Gregory Gray, Bethany Williams, John McLaughlin, Stacy Cisco, and William Ferguson and Cheryl Ferguson, individually and on behalf of all others similarly situated, v. Electrolux Home Products, Inc.*, Case No. 1:15-cv-09882-JZL, on behalf of Greg Coleman Law, Declaration submitted April 20, 2018; Reply Declaration submitted on July 13, 2018; Deposition on August 17, 2018.

**United States District Court for the Northern District of California,** *Jackie Fitzhenry-Russell, an individual, on behalf of herself, the general public and those similarly situated v. The Coca Cola Company, and Does 1-50*, Case No. 5:17-CV-00603-EJD, on behalf of Gutride Safier, LLP, Declaration submitted April 16, 2018; Deposition on October 3, 2018.

**United States District Court for the Southern District of New York,** *Josephine James Edwards, individually and on behalf of all others similarly situated, v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT, on behalf of Bursor & Fisher, P.A., Declaration submitted April 16, 2018; Deposition on June 7, 2018.

**United States District Court, Northern District of California,** *Jackie Fitzhenry-Russell, Robin Dale, and Gegham Margaryan, as individuals, on behalf of themselves, the general public and those similarly situated, v. Dr. Pepper Snapple Group, Inc., Dr Pepper/Seven Up, Inc., and Does 1-50,* Case No. 5:17-cv-00564-NC (lead); Case No. 5:17-cv-02341-NC (consolidated); Case No. 5:17-cv-04435-NC (consolidated)*, on behalf of Gutride Safier, LLP, Declaration submitted April 9, 2018; Deposition on April 19, 2018; Reply Declaration submitted June 6, 2018; Supplemental Declaration submitted on November 19, 2018.

**United States District Court for the Western District of Texas, Austin Division,** *Sylvia Morris, on behalf of herself and all others similarly situated, v. Modernize Inc.*, Case No. 17:-cv-963-SS, on behalf of Bursor & Fisher, P.A., Declaration submitted March 13, 2018; Deposition on June 14, 2018.

**United States District Court, Northern District of California, San Jose Division,** *In re: Arris Cable Modem Consumer Litigation*, Case No. 17-cv-1834-LHK, on behalf of Schubert Jonckheer & Kolbe, Declaration submitted on March 9, 2018; Reply Declaration submitted April 9, 2018; Deposition on April 11, 2018; Declaration submitted June 13, 2018; Declaration submitted January 31, 2019; Deposition on February 14, 2019; Reply Declaration submitted on March 14, 2019.

**United States District Court, Southern District of New York,** *In re: Amla Litigation*, Case No. 1:16-cv-06593-JSR, on behalf of Levi & Korsinsky LLP, Declaration submitted on March 5, 2018; Declaration submitted November 14, 2018; Deposition on November 28, 2018.



**United States District Court, Eastern District of Michigan,** *Toby Schechner, Barbara Barnes, Laura Bliss, Kathleen Jordan, Kathryn Limpede, Louise Miljenovic, Candace Oliarny, Beverly Simmons, Richard Thome And Mary Ellen Thome, V. Whirlpool Corporation,* Case No. 16-cv-12409-SJM, on behalf of Robbins Geller Rudman & Dowd, LLP, Declaration submitted February 12, 2018; Deposition on May 15, 2018; Reply Declaration submitted May 17, 2018.

**United States District Court, Southern District of California,** *Jose Conde, et al., v. Sensa, et al.,* Case No. 14-cv-51 JLS (WVG), on behalf of Bursor & Fisher, P.A., Declaration submitted February 6, 2018; Declaration submitted February 21, 2019.

**United States District Court, Northern District Of Illinois, Eastern Division,** *Angel Bakov, Julie Herrera, and Kinaya Hewlett, individually and on behalf of all others similarly situated, v.Consolidated World Travel, Inc. d/b/a Holiday Cruise Line, a Florida corporation,* Case No. 15-cv-02980-HDL SEC, on behalf of Bursor & Fisher, P.A., Declaration submitted February 6, 2018; Deposition on April 25, 2018.

**United States District Court, Northern District of Illinois,** *Jennifer Beardsall, Daniel Brown, Jennifer Carlsson, Deborah Cartnick, Amy Connor-Slaybaugh, Phyllis Czapski, Raelee Dallacqua, Autumn Dean, Skye Doucette, Christopher Draus, Gerald Gordon, Alexandra Groffsky, Emma Groffsky, Joyce Ivy, La Tanya James, Michelle Jessop, Joy Judge, Kathy Mellody, Susan Nazari, Megan Norsworthy, Deborah Ostrander, Martina Osley, Dana Phillips, Thomas Ramon, Jr., Nancy Reeves, Matthew Robertson, Shelley Waitzman, Jamilla Wang, and Amber Wimberly, Individually and on Behalf of All Others Similarly Situated, v. CVS Pharmacy, Inc., Target Corporation, Walgreen Co., Wal-Mart Stores, Inc., and Fruit of the Earth, Inc.,* Case No. 1:16-cv-06103, on behalf of Greg Coleman Law, Declaration submitted December 22, 2017; Reply Declaration on May 4, 2018.

**United States District Court, Southern District of New York,** *Jaish Markos, individually and on behalf of all others similarly situated, v. Russell Brands, LLC,* Case No. 16-CV-04362(CS), on behalf of The Sultzer Law Group, Declaration submitted on December 1, 2017, Deposition on January 4, 2018.

**United States District Court, Northern District of California,** *Siera Strumlauf, Benjamin Robles, and Brittany Crittenden, individually and on behalf of all others similarly situated, v. Starbucks Corporation,* Case No. 16-CV-01306-YGR, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 31, 2017, Deposition on December 13, 2017.

**United States District Court, Southern District of California,** *Sheila Dashnaw, William Meier, and Sherryl Jones, individually, and on behalf of all others similarly situated, v. New Balance Athletics, Inc., a corporation; and DOES 1 through 50, inclusive,* Case No. 3:17-cv-00159-L-JLB, on Behalf of The Wand Law Firm, Declaration submitted on September 8, 2017; Deposition on October 5, 2017; Rebuttal Declaration submitted December 11, 2017.



**United States District Court, Central District of California,** *Veronica Brenner, on behalf of herself and all others similarly situated, v. Procter & Gamble Co.*, Case No. 8:16-1093-JLS-JCG, on behalf of Bursor & Fisher, P.A., Declaration submitted September 5, 2017; Deposition on October 10, 2016.

**United States District Court, Eastern District of California,** *Joann Martinelli, individually and on behalf of all others similarly situated, v. Johnson & Johnson And McNeil Nutritionals, LLC*, Case No. 2:15-cv-01733-MCE-DB, on behalf of Bursor & Fisher, P.A., Declaration submitted August 28, 2017, Deposition on December 20, 2017; Reply Declaration submitted on January 5, 2018.

**United States District Court, Northern District of California, San Francisco Division,** *Martin Schneider, Sarah Deigert, Laurie Reese, Theresa Gamage, Tiffanie Zangwill, and Nadia Parikka, Individually and on Behalf of All Others Similarly Situated, v. Chipotle Mexican Grill, Inc.*, Case No. 3:16-cv-02200-HSG, on behalf of Kaplan Fox & Kilsheimer LLP, Declaration submitted August 11, 2017; Deposition on September 22, 2017.

**United States District Court, Southern District of Ohio,** *Tom Kondash, on behalf of himself and all others similarly situated, v. Kia Motors America, Inc., and Kia Motors Corporation*, Case No. 1:15-cv-00506-SJD, on behalf of Gibbs Law Group, LLP, Declaration submitted July 10, 2017, Deposition on November 29, 2017.

**United States District Court, Northern District of Illinois, Eastern Division,** *Ryan Porter and Haarin Kwon, individually and on behalf of all others similarly situated, v. NBTY, Inc., United States Nutrition Inc., Healthwatchers (DE), Inc., and MET-RX Nutrition, Inc.*, Case No. 15-cv-11459, on behalf of Bursor & Fisher, P.A., Settlement Declaration submitted June 22, 2017; Declaration submitted on August 15, 2018; Deposition on October 12, 2018.

**United States District Court, Northern District of California,** *Sandra McMillion, Jessica Adekoya And Ignacio Perez, on Behalf of Themselves and all Others Similarly Situated, v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR, on behalf of Bursor & Fisher, P.A., Declaration submitted May 30, 2017, Declaration submitted August 25, 2017, Declaration submitted on October 16, 2017; Declaration submitted on August 10, 2018; Declaration submitted on November 6, 2018; Declaration submitted on November 12, 2018; Deposition on December 11, 2018; Oral Testimony and Cross Examination May 7 - 8, 2019.

**United States District Court, Northern District of California,** *Vincent D. Mullins, et al., v. Premier Nutrition Corporation*, Case No. 13-cv-01271-RS, on behalf of Blood, Hurst, & O'Reardon, LLP, Reply Declaration submitted May 19, 2017; Deposition on July 20, 2017.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, Southern District of California,** *Preston Jones and Shirin Delalat, on behalf of themselves, all others similarly situated, and the general public, v. Nutiva Inc.*, Case No. 16-cv-00711 HSG, on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted May 9, 2016; Deposition on August 23, 2017; Reply Declaration submitted January 12, 2018; Reply Declaration submitted March 2, 2018.

**United States District Court, Central District of California, Southern Division,** *Billy Glenn, Kathy Warburton, Kim Fama, and Corinne Kane, on behalf of themselves and all others similarly situated, v. Hyundai Motor America And Hyundai Motor Company*, Case No. 15-cv-02052-DOC-KES, on behalf of Gibbs Law Group, LLP, Declaration submitted May 1, 2017; Deposition on July 27, 2017; Reply Declaration submitted on October 2, 2017; Reply Declaration submitted on October 6, 2017; Declaration submitted on March 23, 2018.

**United States District Court, Southern District of California,** *Sherry Hunter, on behalf of herself, all others similarly situated, and the general public, v. Nature's Way Products, LLC, and Schwabe North America, Inc.,* Case No. 3:16-cv-00532-WQH-BLM, on behalf of Law offices of Jack Fitzgerald, PC, Declaration submitted March 24, 2017; Reply Declaration submitted May 26, 2017; Reply Declaration submitted on July 11, 2017.

**United States District Court, Southern District Of New York,** *Joanne Hart, and Sandra Bueno, on behalf of themselves and all others similarly situated, v. BHH, LLC d/b/a Bell + Howell and Van Hauser LLC*, Case No. 1:15-cv-04804-WHP, on behalf of Bursor & Fisher, P.A., Declaration submitted March 16, 2017; Deposition on January 10, 2018; Supplemental Declaration submitted January 30, 2018; Declaration submitted on March 2, 2018; Supplemental Declaration submitted on March 30, 2018; Supplemental Declaration submitted on November 26, 2018; Deposition on December 20, 2018.

**United States District Court, Eastern District Of New York, Brooklyn Division,** *Reply All Corp., v. Gimlet Media, Inc.,* Case No. 15-cv-04950-WFK-PK, on behalf of Wolf, Greenfield & Sacks, P.C., Declaration submitted March 15, 2017; Deposition on April 26, 2017.

**United States District Court, Northern District of California,** *James P. Brickman, individually and as a representative of all others similarly situated, v. Fitbit, Inc.*, Case No. 3:15-cv-02077-JD, on behalf of Dworken & Bernstein LPA, Declaration submitted February 28, 2017; Deposition on March 8, 2017.

**United States District Court, Northern District of California,** *Jamie Pettit, an individual, on behalf of herself, the general public and those similarly situated, v. Procter & Gamble Company; and Does 1 Through 50*, Case No. 15-cv-02150-RGS, on behalf of Gutride Safier LLP, Declaration submitted February 14, 2017; Deposition on March 3, 2017; Reply Declaration submitted May 11, 2017.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, Southern District of New York,** *Alan Gulkis, individually and on behalf of all others similarly situated, Zicam LLC and Matrixx Initiatives, Inc.*, Case No. 7:15-cv-09843-CS, on behalf of Bursor & Fisher, P.A., Declaration submitted on February 8, 2017; Deposition on July 14, 2017.

**United States District Court, Central District of California,** *Elisabeth Martin, on behalf of herself, all others similarly situated, and the general public, v. Monsanto Company*, Case No. 16-02168-JFW (SPx), on behalf of the Law Office of Jack Fitzgerald, PC, Declaration submitted February 6, 2017; Deposition on February 9, 2017; Reply Declaration on February 27, 2017.

**United States District Court, Southern District of New York,** *Walt Famular, on behalf of himself and all others similarly situated, v. Whirlpool Corporation*, Case No. 16-cv-00944, on behalf of Bursor & Fisher, P.A., Declaration submitted February 3, 2017, Deposition on August 15, 2017, Rebuttal Declaration on March 20, 2018.

**United States District Court, Central District of California,** *In re: 5-Hour Energy Marketing and Sales Practices Litigation*, Case No. 2:13-ml-02438 PSG, on behalf of Bursor & Fisher, P.A., Declaration submitted September 26, 2016; Reply Declaration submitted October 14, 2016; Deposition on October 27, 2016; Declaration submitted on December 22, 2016; Rebuttal Declaration submitted on March 15, 2017.

**United States District Court, Southern District of Florida,** *Benjamin Hankinson, James Guerra, Jeanette Gandolfo, Lisa Palmer, Donald Anderson, Catherine Long, and Lisa Prihoda, individually and on behalf of others similarly situated, v. R.T.G. Furniture Corp., d/b/a Rooms to Go, RTG America, LLC, The Jeffrey Seaman 2009 Annuity Trust, RTG Furniture Corp. of Georgia, d/b/a Rooms to Go, Rooms to Go North Carolina Corp., d/b/a Rooms to Go, RTG Furniture of Texas, L.P., d/b/a Rooms to Go, RTG Texas Holdings, Inc., and R.T.G. Furniture Corp. of Texas*, Case No. 9:15-cv-81139-COHN/SELTZER, on behalf of Cohen Milstein, Declaration submitted September 1, 2016; Declaration submitted October 3, 2016; Deposition on November 4, 2016; Declaration submitted on January 5, 2017.

**Circuit Court Of Cook County, Illinois County Department, Chancery Division,** *Amy Joseph, individually and on behalf of all others similarly situated, Benjamin Perez, individually and on behalf of all others similarly situated, Intervening Plaintiff, v. Monster Inc., a Delaware Corporation, and Best Buy Co., Inc., a Minnesota Corporation*, Case No. 2015 CH 13991, on behalf of Interveners, Declaration submitted August 8, 2016; Supplemental Declaration submitted January 22, 2018.

**United States District Court, Central District of California, Eastern Division,** *Jeff Looper, Michael Bright, Scott Johnson, individuals on behalf of themselves and all others similarly situated, v. FCA US LLC, f/k/a Chrysler Group LLC, a Delaware limited liability company, and DOES 1-100 inclusive*, Case No. 14-cv-00700-VAP-DTB, on behalf of Gibbs Law Group, LLP; Declaration submitted August 7, 2016; Deposition on September 29, 2016.



**United States District Court, Eastern District of California,** *Chad Herron, individually, on behalf of himself and all others similarly situation, v. Best Buy Stores, LP, a Virginia limited partnership*, Case No. 12-cv-02103-TLN-CKD, on behalf of Stonebarger Law, A Professional Corporation; Declaration submitted June 24, 2016; Deposition on July 29, 2016; Supplemental Declaration submitted September 8, 2016.

**United States District Court for the Southern District of Florida,** *Angela Sanchez-Knutson v. Ford Motor Company*, Case No. 14:61344-CIV DIMITROULEAS, on behalf of Kelley Uustal Trial Attorneys; Deposition on June 1, 2016.

**United States District Court, Central District of California,** *Jacqueline Dean, on behalf of herself and all others similarly situated, v. Colgate-Palmolive Co.*, Case No. 5:15-cv-00107, on behalf of Bursor & Fisher, P.A.; Declaration submitted April 29, 2016; Deposition on July 13, 2016; Reply Declaration submitted on May 2, 2017; Declaration submitted on October 2, 2016; Reply Declaration submitted on December 14, 2017.

**United States District Court, District of New Jersey,** *In re: AZEK Decking Marketing & Sales Practices Litigation*, Case No. 12-cv-06627-MCA-MAH, on behalf of Seeger Weiss, LLP; Declaration submitted February 26, 2016; Declaration submitted May 16, 2016; Deposition on July 6, 2016; Reply Declaration submitted August 29, 2016.

**United States District Court. Northern District of California,** *In re: Nest Labs Litigation*, Case No. 5:14-cv-01363-BLF, on behalf of Bursor & Fisher, P.A.; Declaration submitted on January 22, 2016; Deposition on March 2, 2016; Reply Declaration submitted on June 3, 2016.

**United States District Court, Northern District of California,** *Rohini Kumar, an individual, on behalf of herself, the general public and those similarly situated, v. Salov North America Corp.; And Italfoods, Inc.*, Case No. 4:14-cv-02411-YGR, on behalf of Gutride Safier LLP; Declaration submitted on January 19, 2016; Deposition on February 24, 2016; Reply Declaration submitted on May 10, 2016; Declaration submitted on April 11, 2017, Declaration submitted on May 16, 2017.

**United States District Court, Northern District of Ohio, Eastern Division,** *Christopher Meta, On Behalf Of Himself And All Others Similarly Situated v. Target Corporation, et al.*, Case No. 4:14-0832-DCN, on behalf of Tycko & Zavareei, LLP, Declaration submitted January 6, 2016; Deposition on March 15, 2016; Reply Declaration submitted on March 18, 2016.

**United States District Court, District of New Jersey,** *Charlene Dzielak, Shelley Baker, Francis Angelone, Brian Maxwell, Jeffery Reid, Kari Parsons, Charles Beyer, Jonathan Cohen, Jennifer Schramm, and Aspasia Christy on behalf of themselves and all others similarly situated, v. Whirlpool Corporation, Lowe's Home Center, Sears Holdings Corporation, The Home Depot, Inc., Fry's Electronics, Inc., And Appliance Recycling Centers Of America, Inc.*, Case No. 12-cv-0089-KM-JBC, on behalf of Bursor & Fisher, P.A., Declaration submitted December 28, 2015; Deposition on April 22, 2016; Rebuttal Declaration submitted June 10, 2016; Responding Declaration submitted July 6, 2018; Rebuttal Declaration submitted on August 10, 2018.



**United States District Court, District of New Jersey,** *In re: Tropicana Orange Juice Marketing and Sales Practices Litigation,* Case No. 12-cv-7382-WJM-JBC, on behalf of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, PC.; Declaration submitted on November 6, 2015; Deposition on January 28, 2016.

**United States District Court, Northern District of California**, *Scott Koller, an individual, on behalf of himself, the general public and those similarly situated v. Deoleo USA, Inc. and Med Foods, Inc.*, Case No. 3:14-cv-02400-RS, on behalf of Gutride Safier LLP; Declaration submitted on October 29, 2015; Deposition on December 21, 2015; Reply Declaration submitted on April 3, 2017.

**United States District Court, Eastern District Of New York,** *Patrick Hughes and Nafisé Nina Hodjat, individually and on behalf of others similarly situated, v. The Ester C Company; NBTY, Inc.; and Naturesmart, LLC*, Case No. 12-cv-00041-JFB-ETB, on behalf of Reese LLP and WhatleyKallas LLP; Declaration submitted October 22, 2015; Deposition on December 1, 2015; Reply Declaration submitted on January 28, 2016; Surrebuttal Declaration submitted on April 20, 2016; oral testimony and cross examination on September 20, 2016.

**United States District Court, District Of Connecticut,** *Glen Grayson, and Doreen Mazzanti, individually and on behalf of themselves and all others similarly situated, v. General Electric Company*, Case No. 3:13-cv-01799-WWE, on behalf of Izard Nobel LLP; Declaration submitted October 15, 2015; Deposition on November 17, 2015; Rebuttal Declaration submitted March 23, 2016.

**United States District Court, District of New Jersey,** *Lynne Avram, on behalf of herself and all others similarly situated, v. Samsung Electronics America Inc., and Lowe's Home Centers, Inc.*, Case No. 11-cv-6973-KM-MCA, on behalf of Faruqi & Faruqi LLP; Declaration filed July 15, 2015; Deposition September 29, 2015.

**United States District Court, District of Connecticut,** *Heidi Langan, on behalf of herself and all others similarly situated, v. Johnson & Johnson Consumer Companies, Inc.*, Case No. 3:13-cv-01471-RNC, on behalf of Izard Nobel LLP; Declaration filed June 23, 2015; Deposition on July 21, 2015; Reply Declaration filed October 15, 2015.

**United States District Court, Eastern District of California,** *Yesenia Melgar, on behalf of herself and all others similarly situated, v. Zicam LLC, and Matrixx Initiatives, Inc.*, Case No. 2:14-cv-00160-MCE-AC, on behalf of Bursor & Fisher, PA; Declaration filed June 8, 2015.

**United States District Court, Central District of California, Eastern Division-Riverside** *Michael J. Otto, individually, and on behalf of other members of the general public similarly situated, v. Abbott Laboratories, Inc.*, Case No. 12-01411-SVW(DTBx), on behalf of Baron & Budd; Declaration filed May 25, 2015; Deposition on June 2, 2015; Supplemental Declaration filed July 6, 2015.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, Central District of California,** *Russell Minoru Ono, individually and on behalf of others similarly situated, v. Head Racquet Sports USA, a corp. and Head USA Inc.*, Case No. 13-04222-FMO, on behalf of Baron & Budd; Declaration filed April 24, 2015, Deposition on June 30, 2015; Reply Declaration filed July 2, 2015.

**United States District Court, Southern District of Florida,** *Vanessa Lombardo, on behalf of herself and all others similarly situated, v. Johnson & Johnson Consumer Companies and Neutrogena Corporation*, Case No. 13-60536-SCOLA, on behalf of Morgan & Morgan; Declaration filed March 31, 2015.

**United States District Court, Eastern District of New York,** *D. Joseph Kurtz, individually and on behalf all others similarly situated, v. Kimberly-Clark Corporation and Costco Corporation*, Case No. 14-01142-JBW, on behalf of Robbins Geller Rudman & Dowd LLP; Declaration filed February 27, 2015; Rebuttal Declaration filed March 27, 2015; Supplemental Declaration submitted on July 9, 2019.

**United States District Court, Eastern District of New York,** *Anthony Belfiore, on behalf of himself and all others similarly situated, v. Procter & Gamble*, Case No. 14-04090-JBR, on behalf of Wolf Popper LLP; Declaration filed February 27, 2015; Rebuttal Declaration filed April 30, 2015; Supplemental Declaration submitted on July 9, 2019.

**United States District Court, Northern District of California,** *Patrick Hendricks, individually and on behalf of all others similarly situated, v. StarKist Co.*, Case No. 13-0729-YGR, on behalf of Bursor & Fisher, PA; Declaration filed January 20, 2015; Deposition on February 10, 2015; Reply Declaration filed April 7, 2015.

**United States District Court, Northern District of California, San Francisco Division,** *Scott Miller and Steve Leyton, individually and on behalf themselves, the general public and those similarly situated v. Ghirardelli Chocolate Company*, Case No. 12-04936-LB, on behalf of Gutride Safier LLP, Declaration filed January 8, 2015; Reply Declaration filed February 5, 2015.

**United States Bankruptcy Court, Eastern District of New York,** *In re: Kangadis Food Inc., d/b/a The Gourmet Factory, Debtor*, Case No. 14-72649-REG, on behalf of Bursor & Fisher, PA; Declaration filed August 5th, 2014; Oral testimony on November 24, 2014.

**United States District Court, Southern District of New York,** *Joseph Ebin and Yeruchum Jenkins, individually and on behalf of all others similarly situated v. Kangadis Family Management LLC, Aristidia Kangadis a/k/a "Mr. Aris," Andromahi Kangadis a/k/a "Mrs. Mahi," and Themis Kangadis*, Case No. 14-cv-1324-JSR, on behalf of Bursor & Fisher, PA; Declaration filed August 5, 2014; Deposition on October 9, 2014.

**United States District Court, Northern District of California, San Francisco Division,** *Erin Allen, on behalf of herself and all others similarly situated, v. Con Agra Foods, Inc.*, Case No. 13-cv-01279-VC, on behalf of Hagens Berman Sobol Shapiro LLP and The Eureka Law Firm; Declaration submitted August 11, 2014; Deposition on September 30, 2014; Declaration submitted July 9, 2018; Deposition on March 7, 2019; Reply Declaration submitted on May 22, 2019.



**United States District Court, Eastern District of California,** *Kyle Dei Rossi and Mark Linthicum, on behalf of themselves and those similarly situated, v. Whirlpool Corporation*, Case No. 12-cv-00125-TLN-CKD, on behalf of Bursor & Fisher, P.A.; Declaration filed July 31, 2014, Deposition on August 20, 2014.

**United States District Court, Northern District of Illinois, Eastern Division,** *In re: Southwest Airlines Voucher Litigation.*, Case No. 11-cv-8176, Hon. Matthew Kennelly, on behalf of Siprut PC; Declaration filed June 4, 2014; Oral testimony and cross examination on June 16, 2014.

**United States District Court, Central District of California, Western Division,** *In re: ConAgra Foods, Inc.*, Case No. 11-cv-05379-MMM, MDL No. 2291, on behalf of Milberg LLP and Grant & Eisenhofer, P.A.; Declaration filed May 5, 2014; Deposition on May 23, 2014; Declaration filed June 30, 2014; Declaration filed September 8, 2014; Deposition on September 16, 2014, Declaration filed October 27, 2014; Declaration submitted on March 8, 2019.

**United States District Court, Southern District of New York,** *In re: Scotts EZ Seed Litigation*, Case No. 12-cv-4727-VB, on behalf of Bursor & Fisher, PA; Declaration filed March 31, 2014; Deposition on May 21, 2014; Declaration filed on January 8, 2016; Deposition on February 10, 2016; Reply Declaration submitted June 30, 2016; Declaration submitted September 1, 2016; Declaration submitted on October 20, 2016.

**United States District Court, Central District of California,** *Julie Fagan, Michael Fagan, Melissa Pennalatore, Amy Sapeika and Shelley Trinchero, individually and on behalf of all others similarly situated v. Neutrogena Corporation*, Case No. 13-cv-01316-SVW, on behalf of Izard Nobel LLP; Declaration filed March 21, 2014; Deposition on April 3, 2014; Supplemental Declaration filed August 4, 2014; Deposition on August 13, 2014; Declaration filed September 9, 2014.

**United States District Court, Central District of California,** *Enzo Forcellati and Lisa Roemmich, individually and on behalf of all others similarly situated v. Hyland's Inc., Standard Homeopathic Laboratories, Inc. and Standard Homeopathic Company*, Case No. 12-cv-01983-GHK, on behalf of Faruqi and Faruqi; Declaration filed December 13, 2013; Deposition on February 27, 2014.

**United States District Court, Southern District of Florida,** *Adam Karhu, on behalf of himself and all others similarly situated, v. Vital Pharmaceuticals, Inc., d/b/a VPX Sports*, Case No. 13-cv-60768-JIC, on behalf of Thornton, Davis, & Fein, P.A., Declaration filed December 13, 2013; Declaration filed January 6, 2014; Declaration filed March 31, 2014.

**Trial Court of Massachusetts, District of Edgartown,** *Schepici v. JetBlue Airways Corp.,* on behalf of plaintiff; Mediation on December 4, 2013.

**Superior Court of California, County of Alameda,** *In re: Cellphone Termination Fee Cases, Ramzy Ayyad, et al, v. Sprint Spectrum, L.P.,* JCCP No. 4332, Case No. RG03-121510, on behalf of the Executive Committee; Declaration filed September 18, 2013.



**United States District Court, Northern District of California,** *Maria Torres, Gabriel Rojas, and Ian Kerner, individually and on behalf of all others similarly situated v. JC Penney Corporation, Inc.; and JC Penney Company, Inc.,*, Case No. cv-12-01105-RS, on behalf of Bramson, Plutzik, Mahler and Birkhaeuser; Declaration filed September 13, 2013; Deposition on October 2, 2013.

**United States District Court, Southern District of New York,** *Joseph Ebin and Yeruchum Jenkins, individually and on behalf of all others similarly situated v. Kangadis Foods Inc*, Case No. 13-cv-02311-JSR, on behalf of Bursor & Fisher, PA; Declaration filed August 26, 2013; Deposition on October 21, 2013.

**United States District Court, Northern District of California,** *Desiree Moore, on behalf of themselves, the general public, and all those similarly situated, v. Verizon Communications*, Case No. 4:09-cv-01823-SBA, on behalf of David Schachman and Associates PC, Jacobs Kolton Chtd., and Keller Grover, LLP; Declaration filed June 24, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on March 1, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 20, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 19, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of  Claimant; Oral testimony and cross examination on February 13, 2013.

**American Arbitration Association,**  *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 7, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 4, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on January 24, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on December 12, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on December 10, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on November 28, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant, Declarations filed October 4, 2012 and November 5, 2012; Oral testimony and cross examination on November 27, 2012.



**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant, Declaration filed April 16, 2012; Oral testimony and cross examination on May 11, 2012.

**United States District Court, District of Massachusetts,** *Marcy Cruz v. Justin Kagan, Arthur Hegarty, Ronald Teachman, and the City of New Bedford*, Case No. 1:09-cv-11793-RGS, on behalf of Marcy Cruz, Expert Report filed February 28, 2011; Oral testimony and cross examination on December 1, 2011.

**United States District Court, Southern District of New York,** *Bursor & Fisher P.A., v. Federal Communications Commission*, Case No. 1:11-cv-05457-LAK, on behalf of Bursor & Fisher P.A., Declaration filed August 17, 2011.

**United States District Court, District of New Jersey,** *In Re: Sprint Premium Data Plan Marketing and Sales Practices Litigation,* Master Case No. 10-6334 (SDW) MDL No. 2228, on behalf of Thornton, Davis, & Fein, P.A., Declaration filed August 11, 2011.

**United States District Court, Northern District of California,** *Patrick Hendricks, on behalf of himself and all others similarly situated, v. AT&T Mobility LLC,* Case No. C11-00409, on behalf of Bursor & Fisher, P.A., Declaration filed August 7, 2011.

**Federal Communications Commission,** *In the Matter of Applications of AT&T Inc. & Deutsche Telekom AG for Consent to Assign or Transfer Control of Licenses and Authorizations*, WT Docket No. 11-65, on behalf of Butch Watson, Declaration filed June 20, 2011.

**California Public Utilities Commission,** *Pacific Bell Telephone Company d/b/a AT&T California (U1001C) Complainant, vs. O1 Communication, Inc. (U 6065 C), Defendant*, Case No. C.08-03-001, on behalf of the O1 Communications, Inc., Reply Testimony filed November 6, 2009; Oral testimony and cross examination on November 16, 2009.

**Superior Court of California, County of Alameda**, *James Thomas, on behalf of themselves, the general public, and all those similarly situated, v. Global Vision Products, Inc., Anthony Imbriolo, Derrike Cope, David L. Gordon, Powertel Technologies, Inc., Craig Dix, Henry Edelson and Robert Debenedictis,* Case No. RG03-091195, on behalf of the Law Offices Of Scott A. Bursor, Oral testimony and cross examination on November 9, 2009.

**United States District Court, District of New Jersey,** *Judy Larson, Barry Hall, Joe Milliron, Tessie Robb, and Willie Davis, individually and on behalf of all others similarly situated, v. AT&T Mobility LLC f/k/a Cingular Wireless LLC and Sprint Nextel Corporation and Sprint Spectrum L.P. d/b/a Sprint Nextel and Nextel Finance Company, Civ. Act. No. 07-5325 (JLL),* on behalf of PinilisHalpern, LLP and Law Offices of Scott A. Bursor, Declaration filed *under seal* October 19, 2009.

**California Public Utilities Commission,** *Pacific Bell Telephone Company d/b/a AT&T California (U1001C) Complainant, vs. Pac-West Telecomm, Inc. (U 5266 C), Defendant*, Case No. C.08-09-017, on behalf of the Pac-West Telecomm, Inc., Rebuttal Testimony filed May 1, 2009.



*Statement of Qualifications – Colin B. Weir*

**Illinois Commerce Commission,** Illinois Bell Telephone Company Annual Rate Filing for Non-Competitive Services Under an Alternative Form of Regulation, Ill. C. C. Docket No. 08-0249, on behalf of the People of the State of Illinois, Declaration filed May 2, 2008.

**Federal Communications Commission,** Qwest Petition for Forbearance Under 47 U.S.C. §160(c) From Title II and  *Computer Inquiry Rules* with Respect to Broadband Services, Petition of AT&T Inc, For Forbearance Under 47 U.S.C. §160(c) From Title II and *Computer Inquiry Rules* with Respect to Broadband Services, Petition of BellSouth Corporation For Forbearance Under 47 U.S.C. §160(c) From Title II and *Computer Inquiry Rules* with Respect to Broadband Services, Petition of the Embarq Local Operating Companies for Forbearance Under 47 U.S.C. §160(c) From Application of *Computer  Inquiry* and certain Title II Common Carriage Requirements; WC Docket Nos. 06-125 and 06-147, on behalf of the AdHoc Telecommunications Users Committee, Declaration filed October 9, 2007.

**Superior Court of California, County of Alameda**, *James Thomas, on behalf of themselves, the general public, and all those similarly situated, v. Global Vision Products, Inc., Anthony Imbriolo, Derrike Cope, David L. Gordon, Powertel Technologies, Inc., Craig Dix, Henry Edelson and Robert Debenedictis,* Case No. RG03-091195, on behalf of the Law Offices Of Scott A. Bursor, Declaration filed January 5, 2007; Deposition on November 13, 2007; Oral testimony and cross-examination on December 19, 2007; Oral testimony on January 9, 2008.

Mr. Weir has served as a consultative expert in numerous proceedings that did not result in testimony, and has contributed research and analysis to numerous additional publications and testimony at the state, federal, and international levels.

ECONOMICS AND
TECHNOLOGY, INC.

**Exhibit 2**


**Documents Reviewed**

- Class Action Complaint, filed March, 16, 2017

- Declaration of Steven P. Gaskin, February 22, 2019

- Declaration of Steven P. Gaskin, July 10, 2019

- Expert Report of Justin McCrary, May 24, 2019 (and associated exhibits and backup material

- Deposition of Justin McCrary, June 25, 2019

- Expert Report of Dominique Hanssens, May 24, 2019

- Sawtooth Software technical papers, available online at

http://www.sawtoothsoftware.com/support/technical-papers

- *When "All Natural" May Not Be*, Analysis Group Forum (Winter 2013)

http://www.analysisgroup.com/forums/winter-2013/when-all-natural-may-not-be/

- Applying Conjoint Analysis to Legal Disputes: A Case Study, Wind, Yoram, et al.

- Khoday v. Symantec Corp., 2014 WL 1281600, at *10 (D. Minn. March 13, 2014)

- Sanchez-Knutson v. Ford Motor Company, 310 F.R.D. 529, 538-39 (S.D. Fl. 2015)

- In re: Lenovo Adware Litigation, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016)

- Guido v. L'Oreal, USA, Inc., 2014 WL 6603730, at *5, *10-*14 (C.D. Cal. July 24, 2014)

- Brown v. Hain Celestial Group, Inc., 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014)

- Microsoft v. Motorola, Inc., 904 F.Supp.2d 1109, 1119-20 (W.D. Wa. 2012)

- In re Scotts EZ Seed Litig., 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015)

- Dzielak v. Maytag, 2017 WL 1034197, at *6 (D. NJ. March 17, 2017)

- TV Interactive Data Corp. v. Sony Corp., 929 F. Supp. 2d 1006, 1022 & n.6 (N.D. Cal. 2013)

- Briseno v. ConAgra Foods, Inc., 844 F.3d 1121 (9th Cir. 2017)

- Fitzhenry-Russell v. Dr Pepper Snapple Group, Inc., 2018 WL 3126385 (N.D. Cal. June 26, 2018)

- In Re Arris Cable Modem Consumer Litig., 2018 WL 3820619, at *25-*31 (N.D. Cal. Aug. 10, 2018)

- Hadley v. Kellogg Sales Co., 2018 WL 3954587, at *11-*16 (N.D. Cal. Aug. 17, 2018)

- *Getting Started with Conjoint*, Brian Orme, 2014

- Ford Motor Co., Form 10-K Annual Report filed with the US Securities and Exchange Commission, February 9, 2018

- Fiat Chrysler Automobiles N.V, Form 20-F filed with the US Securities and Exchange Commission, February 20, 2018

- AutoNation Inc., Form 10-K Annual Report filed with the US Securities and Exchange Commission, February 15, 2018

- Sonic Automotive, Inc., Form 10-K Annual Report filed with the US Securities and Exchange Commission, February 28, 2018

- Lithia Motors, Inc., Form 10-K Annual Report filed with the US Securities and Exchange Commission, February 23, 2018

- Ford's Second Amended And Supplemental Responses and Objections To Plaintiffs' First Set of Requests for Production of Documents Propounded To Defendant Ford Motor Company

- Ford Vehicle Brochures, Order Guides, and Price Lists

- ford.com