THE HONORABLE RONALD B. LEIGHTON

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JACOB BEATY and JESSICA BEATY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | NO. 3:17-cv-05201 RBL<br><br>**NOTICE OF APPEAL** |

NOTICE IS HEREBY GIVEN that Plaintiffs Jacob Beaty and Jessica Beaty appeal to the United States Court of Appeals for the Ninth Circuit from the Order Granting Ford's Motion for Summary Judgment entered on February 11, 2020 (Dkt No. 228), attached hereto as Exhibit A.

RESPECTFULLY SUBMITTED AND DATED this 14th day of February, 2020.

TERRELL MARSHALL LAW GROUP PLLC


By:   /s/ Beth E. Terrell, WSBA #26759
      Beth E. Terrell, WSBA #26759
      Email: bterrell@terrellmarshall.com
      Amanda M. Steiner, WSBA #29147
      Email: asteiner@terrellmarshall.com
      Benjamin M. Drachler, WSBA #51021
      Email: bdrachler@terrellmarshall.com
      936 North 34th Street, Suite 300
      Seattle, Washington 98103-8869
      Telephone: (206) 816-6603

NOTICE OF APPEAL - 1
CASE NO. 3:17-CV-05201 RBL

Paul J. Hanly, Jr., *Admitted Pro Hac Vice*
Email: phanly@simmonsfirm.com
Mitchell M. Breit, *Admitted Pro Hac Vice*
Email: mbreit@simmonsfirm.com
SIMMONS HANLY CONROY LLC
112 Madison Avenue
New York, New York 10016-7416
Telephone: (212) 784-6400
Facsimile: (212) 213-5949

Gregory F. Coleman, *Admitted Pro Hac Vice*
Email: greg@gregcolemanlaw.com
Mark E. Silvey, *Admitted Pro Hac Vice*
Email: mark@gregcolemanlaw.com
Adam A. Edwards, *Admitted Pro Hac Vice*
Email: adam@gregcolemanlaw.com
Lisa A. White, *Admitted Pro Hac Vice*
Email: lisa@gregcolemanlaw.com
GREG COLEMAN LAW PC
First Tennessee Plaza
800 South Gay Street, Suite 1100
Knoxville, Tennessee 7929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

Eric S. Johnson, *Admitted Pro Hac Vice*
Email: ejohnson@simmonsfirm.com
SIMMONS HANLY CONROY
One Court Street
Alton, Illinois 62002
Telephone: (618) 259-2222

*Attorneys for Plaintiffs*

NOTICE OF APPEAL - 2
CASE NO. 3:17-CV-05201 RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on February 14, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Caryn Geraghty Jorgensen, WSBA #27514
>Email: caryn.jorgensen@stokeslaw.com
>John T. Fetters, WSBA #40800
>Email: john.fetters@stokeslaw.com
>Brett T. MacIntyre, WSBA #46572
>Email: brett.macintyre@stokeslaw.com
>Email: linda.wheeler@stokeslaw.com
>STOKES LAWRENCE, P.S.
>1420 5th Avenue, Suite 3000
>Seattle, Washington 98101
>Telephone: (206) 626-6000
>Facsimile: (206) 464-1496
>
>Cari K. Dawson, *Admitted Pro Hac Vice*
>Email: cari.dawson@alston.com
>Kyle G.A. Wallace, *Admitted Pro Hac Vice*
>Email: kyle.wallace@alston.com
>ALSTON & BIRD LLP
>One Atlantic Center
>1201 West Peachtree Street, Suite 4900
>Atlanta, Georgia 30309
>Telephone: (404) 881-7766
>Facsimile: (404) 881-7777
>
>Bradley W. Petersen, *Admitted Pro Hac Vice*
>Email: bpetersen@slatterypetersen.com
>SLATTERY PETERSEN PLLC
>2828 North Central Avenue, Suite 1111
>Phoenix, Arizona 85004
>Telephone: (602) 507-6108
>Facsimile: (866) 323-9593

NOTICE OF APPEAL - 3
CASE NO. 3:17-CV-05201 RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

| | |
|---|---|
| 1 | Sherry A. Rozell, *Admitted Pro Hac Vice* |
| 2 | Email: sherry.rozell@mcafeetaft.com |
|   | Email: Valerie.dixon@mcafeetaft.com |
| 3 | Email: cindy.porter@mcafeetaft.com |
|   | McAFEE & TAFT |
| 4 | Williams Center Tower II |
|   | Two W. Second Street, Suite 1100 |
| 5 | Tulsa, Oklahoma 74103 |
|   | Telephone: (918) 574-3001 |
| 6 | Facsimile: (918) 559-9317 |

*Attorneys for Defendant*

DATED this 14th day of February, 2020.

                TERRELL MARSHALL LAW GROUP PLLC

By:    /s/ Beth E. Terrell, WSBA #26759
       Beth E. Terrell, WSBA #26759
       Email: bterrell@terrellmarshall.com
       936 North 34th Street, Suite 300
       Seattle, Washington 98103
       Telephone: (206) 816-6603
       Facsimile: (206) 319-5450

*Attorneys for Plaintiffs*

NOTICE OF APPEAL - 4
CASE NO. 3:17-CV-05201 RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# — EXHIBIT A —

HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JACOB and JESSICA BEATY,

Plaintiff,

v.

FORD MOTOR COMPANY,

Defendant.

CASE NO. C17-5201RBL

ORDER GRANTING FORD'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendant Ford's Motion for Summary Judgment. [Dkt. # 102]. Plaintiff Jessica[1] Beaty purchased a 2013 Ford Escape with a panoramic glass sun roof ("PSR") in September 2012. She claims her Escape's PSR spontaneously shattered while she was driving on the freeway in February 2017, due to a manufacturing defect common to a wide range of Ford vehicles. She claims that Ford PSRs' tempered glass is too thin, leading to failure. She sued, seeking to represent a class of purchasers of such vehicles. She asserts claims[2]

---

[1] Jacob and Jessica Beaty, husband and wife, are the named plaintiffs. Jessica was the Escape's primary user and this Order refers to her in the singular for clarity.

[2] The Court dismissed with leave to amend Beaty's express and implied warranty claims. [Dkt. # 46]. Beaty did not amend those claims.

fraudulent concealment and breach of Washington's Consumer Protection Act, based on her allegation that Ford knew about and concealed the defect.

Ford seeks summary judgment on both of Beaty's claims, arguing:

(1)  There is no "defect," because PSRs' tempered glass breaks in the exact way the Federal Motor Vehicle Safety Standard specifies it must break: into small, round pieces rather than in shards that can cause far more serious injuries;

(2) The 2013 Escape was the first model year to include a PSR, and Beaty bought hers at the very beginning of production. Ford could not have "known," much less concealed, the defect (an unreasonably high PSR failure rate) at the time she purchased, as a matter of law. It therefore had no duty to disclose the claimed defect to Beaty;

(3) The allegedly known and concealed defect would not have been material to a purchaser, given its extremely low (0.05%) occurrence rate. Ford argues a failure rate below 1% is not material as a matter of law; and

(4) Beaty cannot demonstrate her claimed benefit-of-the-bargain damages as a matter of law. Beaty's experts have not yet performed their "conjoint analysis survey" to determine the difference in market value between an Escape as represented (with PSR that will not fail), and the one Beaty bought (with a PSR that will fail at a 0.05% rate). Ford claims the proposed conjoint analysis does not and cannot account for the supply side of the fair market value equation.

## I. DISCUSSION.

**A. Summary Judgment Standard.**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether

an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24. There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. 242, 248 (1986).

**B.  Ford's knowledge of and duty to disclose a material defect.**

Beaty's core claim is that Ford knew and had a duty to disclose that its PSRs could spontaneously shatter and were therefore defective. She argues that Ford had similar problems with shattering PSRs in other model lines dating back to 2007, years before she purchased her Escape, and that other manufacturers had had similar problem with PSRs. She claims Ford concealed its knowledge of the defect after it began receiving complaints and warranty claims, and after the NHTSA began investigating shattering PSRs on the Hyundai Veloster in late 2012.

ORDER GRANTING FORD'S MOTION FOR
SUMMARY JUDGMENT - 3

Beaty's fraudulent concealment and Washington Consumer Protection Act claims are based on these same allegations, and on the same evidence.

In Washington, plaintiff claiming fraud must prove nine elements by clear, cogent, and convincing evidence: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages. *Stieneke v. Russi*, 145 Wash. App. 544, 563, 190 P.3d 60, 69–70 (2008), citing *Stiley v. Block,* 130 Wash.2d 486, 505, 925 P.2d 194 (1996).

A Washington CPA claim requires a plaintiff to prove (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) a public interest impact; (4) injury to plaintiff in her business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986). Beaty argues that Ford's failure to disclose the PSR shattering defect was an unfair or deceptive practice causing her injury in the form of benefit-of-the-bargain damages.

Beaty emphasizes that in the fraudulent concealment context, she need only "demonstrate that the defendant breached an affirmative duty to disclose a material fact," *Crisman v. Crisman*, 85 Wn. App. 15, 21, 931 P.2d 163, 166 (1997), and accurately claims that the heightened "fraud" pleading requirement is relaxed in cases of fraudulent omissions. *Zwicker v. General Motors Corp.*, No. C07—0291 JCC, 2007 WL 5309204 at *5 (W.D. Wash. July 26, 2007).

The Court need not parse the distinction here, because the heart of the dispute is Beaty's claim that Ford **knew** about and **failed to disclose** a **material defect** in its vehicles: Ford PSRs could shatter spontaneously. These bolded elements are also the core of Ford's motion. It argues

that it did not and could not have known about this "defect" when Beaty purchased her Escape, and that it therefore had no duty to disclose it to her before she purchased. It also emphasizes that the fact that the tempered glass PSRs break in the way they do is a safety feature required by the National Traffic and Motor Vehicle Safety Act of 1966, 49 U.S.C. §§ 30101 *et seq*.

Ford points out the Act is directed at "unreasonable risk of death or injury in an accident;" it is not aimed at every conceivable safety hazard. 49 U.S.C. § 30102(a)(8); *see U.S. v. General Motors Corp.*, 656 F. Supp. 1555, 1579 (D.D.C. 1987). Ford argues that a specific Federal Motor Vehicle Safety Standard, FMVSS 205, 49 C.F.R. § 571.205, requires the use of tempered glass that, by design, breaks into small round "nuggets" rather than (dangerous) shards of glass. Thus, it claims, the manner in which the PSRs shatter when they do break is not a defect; it is by design.

Ford also argues that even if it is a defect, the shattering occurs in only one out of 2000 vehicles, or 0.05%. It argues that such a failure rate is not material as a matter of law, particularly where there has been no recall, and there have been no reported accidents or serious injuries resulting from a shattering PSR. Finally, Ford argues that Beaty has not established that she suffered any benefit-of-the-bargain damage, because her expert's proposed conjoint analysis survey designed to establish a market value for a vehicle with a non-shattering PSR does not account for the "supply side" of the market (Ford's willingness and ability to build and sell such a vehicle at the price consumers would pay) and is fatally flawed. It seeks summary judgment on both of Beaty's claims on each of these bases.

1. **Ford's knowledge of a defect.**

Beaty argues that Ford knew about the PSR shattering defect before she purchased her 2013 Escape because it had experienced similar issues with similar PSRs in other model lines dating to 2007. Ford argues that the existence of similar alleged defects in different Ford

ORDER GRANTING FORD'S MOTION FOR
SUMMARY JUDGMENT - 5

vehicles' PSRs is not sufficient evidence that Ford knew that Beaty's 2013 Escape's PSR was defective. It argues that there was no "failure rate" on Escape PSRs at the time that Beaty purchased her vehicle; it was one of the first vehicles sold in a new model line. It also argues and demonstrates that the PSR failure rates in other model lines were very low, and falling, by 2012. It relies on *David v. Volkswagen Grp. of Am., Inc*., No. C17-113-1-SDW, 2018 WL 1960447 at *7 (D.N.J. April 26, 2018). In *David*, the plaintiffs' Colorado CPA claim was dismissed because Volkswagen's knowledge (through a recall) of a defect in the Beetle model was not sufficient to demonstrate knowledge of a similar defect in his 2014 Touareg model.

Beaty argues that she need show only that there was a substantially similar defect to demonstrate Ford's knowledge that Beaty's PSR was defective. *Cooper v. Firestone Tire & Rubber Co*., 945 F.2d 1103, 1105 (9th Cir. 1991). She argues that Ford knew of "industry-wide" problems with PSRs in other Ford lines and in other manufacturers' vehicles as early as 2007 and argues that articles and reports about shattering tempered glass PSRs were published in late 2012. She emphasizes that the "minor" differences between Escape PSR and the slightly differently shaped PSRs in other model lines is "inconsequential" for purposes of demonstrating Ford's knowledge of the defect. She claims Ford knew before it even introduced the Escape PSR that its manufacturing method led to spontaneous shattering; the tempered glass is too thin and susceptible to shattering once it is scratched or chipped or twisted. She argues that *David* is distinguishable because Volkswagen's Beetle recall occurred *after* the plaintiff bought his Touareg. But there has been no recall of the any Ford PSRs; if there were one today the facts of *David* would be more similar to the facts here. As it is, Beaty has not established that Ford knew when she purchased that the Escape's PSR was defective.

1    Ford cites a series of cases in and out of the automotive context standing for the
2    proposition that knowledge of a defect in one model line does not establish knowledge of a
3    defect in a different model line. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146 (9th
4    Cir. 2012); *Stevenson v. Mazda Motor of Am., Inc.*, No. 14-cv-5250, 2015 U.S. Dist. LEXIS
5    70945, at *16 (D.N.J. June 2, 2015); and *Fisher v. Honda N. Am.*, No. 13-cv-09285, 2014 U.S.
6    Dist. LEXIS 84570, at *14 (C.D. Cal. June 12, 2014). Ford argues that in *Cooper, supra*, and
7    similar cases, in order to introduce evidence of other accidents involving the same product, the
8    plaintiff must first establish substantial similarity between the accidents (not the products).
9    Ford also accurately points out that to the extent Beaty relies on her expert's opinion that
10   the Escape PSRs are similar to PSRs in other model line or other manufacturers' vehicles, it is
11   flawed, because Dr. Read has not inspected the Escape. Ford has demonstrated without rebuttal
12   that there are significant differences between the Escape PSR and the PSRs in other vehicles, and
13   that some of the "similar" other models had extremely low PSR failure rates, which were
14   declining.
15   Even assuming that the Escape's PSR shattering is a material defect, and even if Ford
16   would be required to disclose it to potential purchasers—issues discussed below—Beaty has not
17   met her summary judgment burden of providing evidence from which a reasonable trier of fact
18   could find that Ford knew about alleged PSR defect when Beaty purchased her 2013 Escape in
19   September 2012. Ford's Motion for Summary Judgment on this basis is GRANTED.
20   **2. <u>Ford's duty to disclose the defect.</u>**
21   Ford's duty to disclose a defect depends, obviously, on its knowledge of that defect. It is
22   also inextricably intertwined with the bigger issue, discussed below: whether the Escape's
23   shattering PSR is material defect.
24

ORDER GRANTING FORD'S MOTION FOR
SUMMARY JUDGMENT - 7

Beaty argues that once Ford knew that PSRs generally might shatter, it was required to disclose that fact to potential purchasers. She argues that "the rate or likelihood of manifestation" is not a factor in determining whether Ford had a duty to disclose the risk, or in determining whether failing to do so was unfair or deceptive.

Ford's position[3] is at the other end of the spectrum: it argues Beaty can establish a duty to disclose the PSR problem only if she can prove the PSR *will* fail. Beatty argues persuasively that this is not the law in Washington[4]. But she claims that Ford has a duty to disclose "any systemic failure of a specific automotive part of which it was aware and concealed from the public." Citing *Zwicker*, supra at *5. But unless "systemic"[5] is analogous to "material," this claim too overstates the rule. It defies common sense to claim that a manufacturer must disclose every single failure of any component or part to every potential purchaser, even if the failure is minor and not dangerous, or even if it has only happened a handful of times.

---

[3] Ford also argues that its warranty expressly informed purchasers that Ford glass may chip, scratch, crack or break, and that any such damage is not covered by the warranty. Beaty argues this related to cosmetic damage, not the sort of "explosion" she suffered. For purposes of this Motion, the Court will accept that Ford did not disclose the specific risk of which Beaty complains, but as discussed elsewhere, when tempered glass "breaks" it shatters, on purpose.

[4] Ford correctly claims that consumer protection laws generally "do not require a manufacturer to disclose things it does not know." But if and to the extent the cited out-of-Circuit (New Jersey District Court) cases hold that a duty to disclose arises only if "all or substantially all of the defendant's products are certain to fail," they are not persuasive. Dkt. # 105 at 14, citing *Alban v. BMW or N. Am.*, No. C09-5298, 2010 WL 3636253 (D.N.J. Sept. 8, 2010); *Glauberzon v. Pella Corp.*, No C10-5929, 2011 WL 1337509 at *9 (D.N.J. April 7, 2011); and *Greene v. BMW of N. Am.*, C11-4220, 2013 WL 5287314 at *3 (D.N.J. Sept 17, 2013). Such a rule is unworkable and it there are no Washington cases applying it in anything approaching the blanket manner that New Jersey Courts apparently do. *See also Zwicker* at *5 (describing as "meritless" GM's argument that a failure to disclose is not deceptive unless plaintiff actually believed the parts would "never fail.").

[5] Ford cites the dictionary for the proposition that "systemic" means "with regularity."

ORDER GRANTING FORD'S MOTION FOR
SUMMARY JUDGMENT - 8

1  In the Court's view, even if Ford had knowledge of a defect, its corresponding duty to

2  disclose necessarily depends on whether that defect—the risk that the PSR might shatter, and the

3  consequences of it doing so—is material. *See* Beaty's Summary Judgment Response, Dkt. # 141

4  at 13: "The duty to disclose arise in situations where the seller has knowledge of a **material fact**

5  not easily discovered by the buyer." Citing *Colonial Imports, Inc. v. Carlton Northwest, Inc.*, 121

6  Wn.2d 726, 732 (1993) (emphasis added, other citations omitted). *See also Clemens v.*

7  *DaimlerChrysler Corp.*, 534 F.3d 1017, 1027 (9th Cir. 2008) (summary judgment on consumer

8  fraud claim where plaintiff "has produced insufficient evidence that the failure rate of the head

9  gasket was material to a reasonable consumer"). This issue is discussed below.

10  **3. The Ford Escape PSRs' risk of shattering is not a material defect.**

11  Beaty accurately recites that a "material fact" is one "to which a reasonable person would

12  attach importance" in determining her course of action in a given transaction. Citing *Aspelund v.*

13  *Olerich*, 56 Wn. App. 477, 483 (1990) (internal citations omitted). She claims that in the product

14  defect context, the failure to disclose a defect is material if the omission led consumers to believe

15  the defective product was safe. Citing *Moodie v Remington Arms Co., LLC.*, No. C13-01172-

16  JCC, 2013 WL 12191352 at *5 (W.D. Wash. Aug 2, 2013). She argues that materiality is

17  typically a question of fact for the jury, and correctly claims that a NHTSA recall is not a

18  prerequisite for claim that a defect is material. But she does not cite a case holding that a defect

19  of the sort she claims—shattered PSR glass with no accident or injuries, occurring in far less

20  than 1% of the subject vehicles—is material.

21  Ford argues initially that Beaty has produced no evidence of any design or manufacturing

22  defect. As discussed above, the manner in which automotive glass is used and is designed to

23  break is a matter of well-considered governmental regulation. Automakers must use tempered

24  glass, and it must be designed and manufactured to break into small, non-lethal nuggets. Ford

argues that all glass breaks and that is not a defect in its design, at all. Ford also points out that Beaty's experts have not "laid a hand" on her car or any other Escape; expert Hannemann simply claims that "the PSR replacement rate" he calculated is "higher than he would have expected" and "higher than what would be acceptable" in the industry. He does not articulate what would be an acceptable rate, and Beaty seems to suggest that any failure rate of any component must be disclosed, which is not the law.

Ford argues that the Court should engage in the same sort of analysis that the NHTSA does to determine whether the risk of shattering is unreasonable. It argues that the unreasonableness of any safety risk must be assessed relatively in at least three dimensions: (1) the *severity* of the harm it threatens; (2) the *frequency* with which that harm occurs in the threatened population relative to its incidence in the general population; and (3) the economic, social, and safety *consequences* of reducing the risk to a so-called "reasonable" level. Citing *Gen. Motors*, 656 F. Supp. at 1578 (emphasis added).

Ford emphasizes there have been no reported serious injuries or accident caused by shattering PSRs (in Escapes or other models). It demonstrates that the NHTSA has declined to recall the PSRs, and that their failure rate—one in 2000, or 0.05%—is lower than or on par with other auto manufacturers' rates and is declining. It is lower than the PSR failure rate on the Cadillac SRX, which the NHTSA also declined to recall. Ford therefore argues the fact that chipped or scratched or rock-impacted PSRs might occasionally break in the mandated manner is not a defect, at all, and it is not in any event a material defect that it had to disclose to potential purchasers.

Ford relies on Third Circuit authority for the proposition that a failure rate of less than 1% is not material[6]: "no reasonable factfinder could conclude that this information would be material to a reasonable consumer prospectively deciding [at the time the plaintiff purchased] whether to purchase [a Ford Truck]." *Coba v. Ford Motor Co.*, 932 F.3d 114, 125-126 (3rd Cir. 2019). Ford argues that Beaty has provided no contrary authority about what failure rate is material in an analogous case. It argues, persuasively, that Beaty's experts have failed to provide any evidence or any context[7] from which the Court could determine that the failure rate is material. It argues that a product's rate of failure must be contextualized against the relevant industry to ascertain whether a given rate is "material." It argues that "a product's rate of failure would be material to a reasonable person only if it exceeded a standard rate of failure in the industry for compatible machines produced by comparable manufacturers." Citing *Munch v Sears Roebuck & Co.*, No C06-7023, 2007 WL 2461660 at *3 (N.D. Ill. August 27, 2007).

Ford also demonstrates that its failure rates are low by industry standards. Beaty's claim that there are hundreds of similar complaints does not address or rebut the failure rate, and even her own expert's claimed "PSR replacement rate" of 0.41% (which includes replacements for reasons other than shattering, such as leaking or sticking) is still within the range of other manufacturers and lower than some competitors.

The Court is not willing to adopt the Third Circuit's "bright line" 1% threshold, and it is not willing to hold broadly that any failure is not material if it is similar to failure rates in

---

[6] *Coba* also held that Ford "had every reason to believe" that the alleged defect at issue there (delaminating fuel tanks) was caused by biodiesel. Beaty argues that that is a distinguishing fact, but Ford demonstrates that it similarly believes that the PSRs shatter only when they are subjected to an external force like twisting or a rock strike, or when they are already scratched or chipped. *Coba* is similar, and it is persuasive.

[7] Beaty's expert's opinion that a "plain steel roof" will not shatter, for example, is not useful in determining how often a glass roof must fail for it to be a material defect.

comparable products. A truly dangerous failure (like an exploding gas tank) is material even if it is rare, and in a different case a duty to disclose a material defect may arise even if the defect occurs only infrequently. But viewed in the NHTSA's "severity, frequency and consequences" context, the actual failure rates, and the evidence in the record, the Court cannot conclude that the defect at issue here was material, if it was a defect at all.

Ford's Motion for Summary Judgment on its claim that the PSR is not a material defect is GRANTED.

### 4. Beaty's benefit-of-the-bargain damages.

In light of the holdings above, the Court need not delve deeply into Ford's final argument, regarding the evidentiary support for the fact and measure of Beaty's and her class's claimed damages. Ford argues that Beaty has no evidence of her claimed benefit-of-the-bargain damages, because her expert's proposed conjoint analysis survey should have already been performed, and even if it had, it would be flawed and inadmissible.

Beaty seeks[8] for herself and her class the difference in market value between the vehicle as she claims it was represented (with a PSR with no potential for shattering) and the market value of the vehicle she purchased (with a PSR with a one-in-2000 chance of shattering). She claims these benefit-of-the-bargain damages (or "overpayment" damages) are available for fraudulent concealment and for a violation of the CPA. She also argues she is not required to prove the amount of her damages to survive summary judgment, and that the damages issue is more appropriately evaluated at the class certification stage. If Beaty's claims survived the

---

[8] Beaty's Response clarifies that she also seeks out of pocket expenses. Ford's Reply acknowledges that it seeks summary judgment on only Beaty's benefit-of-the-bargain damage claim, not her out of pocket damages claim.

motion, the Court might be inclined to agree. But it will address briefly what it views as a fundamental flaw in Beaty's benefit-of the-bargain damages theory.

Beaty's expert proposes to measure the overpayment using a survey method designed to determine how much consumers will pay for a given product attribute. Ford argues that conjoint analysis surveys are conceptually flawed to measure damages in products liability or consumer class action cases, because they account only for the demand side of the "fair market value" equation: what a willing purchaser would pay for a vehicle with a given set of attributes. The proposed survey does not and cannot account for the *supply side* of the fair market value equation: what a willing seller, under no obligation to sell, would accept. *See General Motors, supra*, at \*11: "Fair market value is the price that a willing buyer would pay to a willing seller, neither being under compulsion to buy or sell, and both having knowledge of all pertinent facts." (internal citations omitted).

A conjoint analysis survey could perhaps determine what willing buyers would pay in the marketplace for a Ford Escape with the alternate attributes. But as Southern District of New York explained in *General Motors*, a conjoint survey purporting to use sales figures from the "actual world" cannot adequately account for changes in supply in the "but for" world—where the seller discloses the defect at the point of sale. Like the plaintiff's expert there, Beaty's expert does not purport to address Ford's willingness to sell vehicles in the "but for" world. *General Motors* at \*13-14. In short, a conjoint analysis that does not (and perhaps cannot) account for factors in a functioning marketplace other than consumers' willingness to pay is not competent evidence of the quantum of damages. This Order need not determine whether Beaty's conjoint analysis-based damages claim could survive summary judgment or class certification, even if it had been performed, given the Court's determinations above. But it is worth noting that the

ORDER GRANTING FORD'S MOTION FOR
SUMMARY JUDGMENT - 13

better-reasoned cases reject the sort of damages calculations that Beaty's expert proposes. Such a determination would not address Beaty's alternate, out-of-pocket damages claim.

## II. CONCLUSION

Beaty cannot establish the elements of her fraudulent concealment or Washington CPA claims against Ford as a matter of law: she cannot show that Ford knew of and failed to disclose a material defect. She cannot establish that any such failure caused her benefit-of-the-bargain damage. Ford's Motion for Summary Judgment is GRANTED and Beaty's fraudulent concealment and CPA claims are DISMISSED with prejudice. All other pending motions are DENIED as moot.

IT IS SO ORDERED.

Dated this 11th day of February, 2020.

Ronald B. Leighton
United States District Judge