**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 2 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JACOB BEATY; JESSICA BEATY, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs-Appellants,<br><br> v.<br><br>FORD MOTOR COMPANY,<br><br>            Defendant-Appellee. | No.   20-35141<br><br>D.C. No. 3:17-cv-05201-RBL<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted March 10, 2021
San Francisco, California

Before: GOULD and FRIEDLAND, Circuit Judges, and ERICKSEN,[**] District Judge.

Plaintiffs-Appellants Jessica and Jacob Beaty ("the Beatys") appeal from the district court's grant of summary judgment in favor of Defendant-Appellee Ford

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, sitting by designation.

Motor Company ("Ford").

Ford started manufacturing cars with panoramic sunroofs ("PSRs") in 2007, and soon after began receiving complaints from customers who alleged that their PSRs exploded without warning. Ford later added PSRs to the Ford Escape model line. In 2017, Jessica Beaty was driving her 2013 Ford Escape when the sunroof suddenly shattered for no apparent reason, causing glass to fall on Jessica and her infant daughter. After the incident, the Beatys filed a putative class action complaint against Ford, asserting claims for fraudulent concealment under Washington common law and violations of the Washington Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86.010 *et seq*. On appeal, the Beatys challenge the district court's determinations that a reasonable factfinder could not conclude: (1) that Ford knew about the risk that its PSRs could spontaneously explode on the 2013 Ford Escape, the first Escape model to include a PSR option; and (2) that the tendency of Ford PSRs to spontaneously explode is not a material defect.

We review a district court's grant of summary judgment *de novo*. *Badgley v. United States*, 957 F.3d 969, 974 (9th Cir. 2020). We must determine, "viewing the evidence in the light most favorable to the non-movant, [whether] there is no genuine issue of material fact," and whether the district court applied the relevant substantive law. *See Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017).

Because this is a diversity case, we "approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017) (citation omitted). We are "solely guided by" state law as we believe Washington's highest court would apply it. *K F Dairies, Inc. & Affiliates v. Fireman's Fund Ins. Co. (In re K F Dairies, Inc. & Affiliates)*, 224 F.3d 922, 924 (9th Cir. 2000). We have jurisdiction under 28 U.S.C. § 1291. We reverse and remand.

    1. We conclude that there is a triable issue of material fact regarding whether Ford knew about the risk that PSRs in its 2013 Ford Escape model would spontaneously shatter.[1] Under Washington law, a common-law fraudulent

---

[1] For the first time on appeal, Ford contends that the Beatys' proffered evidence of pre-sale customer complaints is insufficient to show that Ford knew about the sunroof problem on *any* of its cars. Specifically, Ford maintains that the Beatys improperly relied on customer complaints that post-dated their purchase, involved standard sunroofs, or were determined to have been caused by an external impact. According to Ford, such complaints are irrelevant to the issue of the company's knowledge of a potential defect in 2013 Ford Escape PSRs, and after these complaints are disregarded, the district court decision can be affirmed because the Beatys did not cite to an "unusually high" number of relevant, pre-sale complaints in their opening brief that would have put Ford on notice of a defect. "[W]e ordinarily do not review issues raised for the first time on appeal," see *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002), but we do "have discretion to review issues not previously raised if 'the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed.'" *Id.* (quoting *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985)). Here, Ford never raised this argument in the district court,

concealment claim requires that "the vendor has knowledge of the [concealed] defect." *Alejandre v. Bull*, 153 P.3d 864, 872 (Wash. 2007) (en banc). Similarly, under the CPA, a duty to disclose arises only when the seller has knowledge of a latent defect. *See Short v. Hyundai Motor Co.*, 444 F. Supp. 3d 1267, 1280–81 (W.D. Wash. 2020). Pre-sale customer complaints to both Ford and the National Highway Traffic Administration ("NHTSA") create a triable issue as to whether Ford knew that its PSRs were prone to spontaneously explode under ordinary use. Under Washington law, pre-sale complaints can "amount[] to knowledge" of the defect. *Griffith v. Centex Real Est. Corp.*, 969 P.2d 486, 493 (Wash. Ct. App. 1998). Where pre-sale complaints are made directly to the manufacturer, and therefore a court can be sure that the manufacturer defendant received them, the complaints are circumstantial evidence that the defendant is on notice of the defect. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1027 (9th Cir. 2017).

Ford next contends that even if customer complaints can be enough for a rational juror to find knowledge, the Beatys' claims fail because the complaints involved PSRs on a different model of car. We disagree. "[W]hen a plaintiff attempts to introduce evidence of other accidents" to prove the defendant's "notice of [a] defect," "[a] showing of substantial similarity is required." *Cooper v.*

---

and we decline to reach this "alternate, fact-intensive bas[is] for affirming." *See Petersen v. Boeing Co.*, 715 F.3d 276, 283 (9th Cir. 2013).

4

*Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991).  Because the purpose of the "substantial similarity" inquiry is to determine relevance in the context of a defective product,[2] the relevant similarities are properly defined in terms of the defect at issue.  *See id.*

Here, the Beatys presented evidence based on customer complaints that PSRs in Ford-manufactured cars were prone to shatter for no apparent reason—the specific defect at issue.  The Beatys' expert in glass failure analysis opined that this defect exists in all Ford PSRs because they are built the same way by the same two manufacturers, and thus share five "common, defective design features, including their size, thickness, curvature, connection to the vehicles' unibody frames, and use of ceramic paint or frit."[3]  Ford maintains that its expert "demonstrated that there are significant differences between the Escape PSR and the PSRs in other vehicles about which customers complained," but the Beatys' expert disputes this, asserting that the differences Ford relies upon are merely cosmetic and "immaterial" to the defect at issue.  Though substantial similarity means something more than

---

[2] Ford also contends that there is no evidence Ford knew that their shattering PSRs were *defective*, *i.e.*, no evidence Ford knew they shattered for no apparent reason, as opposed to knowing the PSRs shattered only when struck by road debris.  Ford's argument is unpersuasive because there is a genuine dispute of material fact as to whether Ford could have believed that rock strikes caused all the reported PSR explosions.

[3] Because portions of the record have been filed under seal, we refer to those sections in general terms.

similarity "[a]t a very high level of generality," *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985), the Beatys' competing expert report presented sufficient rebuttal evidence to create a triable issue of fact. *See Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1067 (9th Cir. 2016) ("If [Ford's expert] said one thing and [the Beatys' expert] said another on the same subject, it is the role of the jury, not a court on summary judgment, to determine the facts."). Viewing the evidence in the light most favorable to the Beatys, as we must, a reasonable juror could find that Ford knew that the PSR defect would persist in the substantially similar PSRs installed in the 2013 Ford Escape. *See Cooper*, 945 F.2d at 1105.

    2. We also conclude that a reasonable juror could find that the risk of a spontaneously shattering PSR is material to consumers under Washington law. Materiality is an element of both of the Beatys' claims. A claim under the CPA involves an "unfair or deceptive act or practice"; "[i]mplicit in the definition of 'deceptive' under the CPA is the understanding that the practice misleads or misrepresents something of material importance." *Nguyen v. Doak Homes, Inc.*, 167 P.3d 1162, 1166 (Wash. Ct. App. 2007) (alteration in original) (citation omitted). Similarly, a party engages in fraud "if it conceals a material fact from the other party." *Wash. Mut. Sav. Bank v. Hedreen*, 886 P.2d 1121, 1123 (Wash. 1994) (en banc). A material fact is one "to which a reasonable person would attach

importance in determining his or her choice of action in the transaction in question." *Aspelund v. Olerich*, 784 P.2d 179, 183 (Wash. Ct. App. 1990).

Rather than focusing on what Washington consumer-protection law requires, the district court applied a standard of materiality applicable to NHTSA, a government body.  Even if, as Ford contends, the district court did not hold that the Beatys had to "formally satisfy any federal governmental standard," the district court's language suggests that it viewed its materiality analysis in those terms.  The district court cited *United States v. General Motors Corp.*, 656 F. Supp. 1555, 1579 (D.D.C. 1987), a district court order interpreting standards applicable to NHTSA, and then stated: "[V]iewed in the NHTSA's 'severity, frequency, and consequences' context . . . the Court cannot conclude that the defect at issue here was material, if it was a defect at all."

The NHTSA materiality standard as articulated in *General Motors* is inconsistent with Washington consumer-protection law.  First, Washington law does not require a risk to safety, much less an "unreasonable" one.  The district court erred by couching its materiality analysis in whether the risk of shattering is an "unreasonable[] . . . safety risk" under the NHTSA standards.  In *Griffith*, a Washington appeals court explained that "[t]he purposes of the CPA—to protect members of the public from injury in their property or business by reason of unfair or deceptive acts and practices in trade or commerce—would hardly be served if

7

deception were not actionable unless the consumers' very lives were at stake." 969 P.2d at 493. Second, unlike the brakes at issue in *General Motors*, a consumer does not need a panoramic sunroof to operate a car—it is a luxury accessory for which consumers pay a premium of between one thousand and several thousand dollars. So whether a consumer would consider PSR explosions to be a material fact—*i.e.*, any fact "to which a reasonable person would attach importance," *see Aspelund*, 784 P.2d at 183—should be seen through this lens. By failing to analyze the Beatys' materiality claim under the broader standards underlying Washington consumer-protection law, the district court erred as a matter of law.

Finally, even if the district court did not apply an erroneous standard of materiality, there is a triable issue of fact as to whether the PSR shattering issue would be material to a reasonable consumer. Ford makes much of its calculated failure rate of 0.05%,[4] but a reasonable juror could find that even a small risk that a PSR might explode without warning is a material fact, given that the practical question is whether to purchase a luxury accessory at a premium. The Beatys produced sufficient evidence that Ford's PSRs fail prematurely and in unexpected ways, which is contrary to consumer expectations. *See Griffith*, 969 P.2d at 493 (noting that purchasers expected high quality exterior finishes but received prematurely peeling paint).

---

[4] The Beatys contest this failure rate as underinclusive.

Other carmakers and NHTSA have also recognized that the distraction caused by an unexpected loud explosion and sudden shower of glass "could distract the driver" and create "the risk of a crash." Though Ford contends that no serious injuries have occurred yet, it is reasonable to assume that a consumer will attach importance to traumatic occurrences that result in "only" near-misses and relatively minor abrasions. In fact, as Jessica Beaty explained, "driving around with something that could randomly occur again" is "stressful" and prevents her from "us[ing] the car as intended." The Beatys have produced sufficient evidence to preclude summary judgment on materiality. *See SEC v. Phan*, 500 F.3d 895, 908 (9th Cir. 2007) ("Materiality typically cannot be determined as a matter of summary judgment. . . .").

**REVERSED AND REMANDED.**