THE HONORABLE THOMAS S. ZILLY

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

JACOB BEATY and JESSICA BEATY, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

FORD MOTOR COMPANY,

Defendant.

NO. 3:17-cv-05201-TSZ

**PLAINTIFFS' RESPONSE TO DEFENDANT FORD MOTOR COMPANY'S MOTION FOR SUMMARY JUDGMENT**

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

RELEVANT FACTS .............................................................................................. 2

    A.    The PSR Defect exists in Plaintiffs' vehicle, and in all Ford
            vehicles with PSRs installed ............................................................. 2

    B.    Ford was aware of the Defect prior to Plaintiffs' purchase of their vehicle ....... 3

    C.    Ford refused to disclose and actively concealed the Defect ............................. 4

ARGUMENT AND AUTHORITY ......................................................................... 5

    A.    Summary judgment standard .............................................................. 5

    B.    Summary judgment is not appropriate because Plaintiffs have
            adduced evidence that Ford knew of the Defect in Plaintiffs' vehicle at
            the time of sale ............................................................................... 5

    C.    Summary Judgment is not appropriate because Plaintiffs have adduced
            evidence establishing that Ford's conduct was unfair or deceptive
            under the CPA .................................................................................. 8

         1.    Genuine issues of material fact preclude summary judgment
               on Plaintiffs' claims for deceptive acts or practices ............................. 9

         2.    Genuine issues of material fact preclude summary judgment
               on Plaintiffs' claims for unfair acts or practices .................................. 13

    D.    Summary judgment is inappropriate as to any of Plaintiffs' damages ............. 16

CONCLUSION ...................................................................................................... 17

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### FEDERAL CASES

4
5
*Addisu v. Fred Meyer, Inc.*,
198 F.3d 1130 (9th Cir. 2000) ........................................ 5

6
7
*Anderson v. Ford Motor Co.*,
No. 17-cv-03244,
2020 U.S. Dist. LEXIS 66549 (W.D. Mo. Feb. 14, 2020) ........................................ 10

8
9
*Beaty v. Ford Motor Co.*,
854 F. App'x 845 (9th Cir. 2021) ........................................ 9, 10, 13

10
*Bieghler v. Kleppe*,
633 F.2d 531 (9th Cir. 1980)) ........................................ 12

11
12
*Campanelli v. Allstate Life Ins. Co.*,
93 F. App'x 159 (9th Cir. 2004) ........................................ 16

13
14
*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................ 5

15
16
*Chamberlayne Sch. v. Banker*,
568 N.E.2d 642 (Mass. App. 1991) ........................................ 14

17
18
*Elfaridi v. Mercedes-Benz USA, LLC*,
No. 4:16-cv-1896,
2018 U.S. Dist. LEXIS 145196 (E.D. Mo. Aug. 27, 2018) ........................................ 10

19
20
*In re Apple Computer Sec. Litig.*,
886 F.2d 1109 (9th Cir. 1989) ........................................ 12

21
*In re Int'l Harvester Co.*,
104 F.T.C. 949, 1984 WL 565290 (Dec. 21, 1984) ........................................ 9, 10, 15

22
23
*In re K F Dairies Inc. & Affiliates v. Fireman's Fund Ins. Co.*,
224 F.3d 922 (9th Cir. 2000) ........................................ 10

24
25
*Intel Corp. v. Hartford Accident & Indem. Co.*,
952 F.2d 1551 (9th Cir. 1991) ........................................ 5

26
*Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ........................................ 5

27

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION FOR SUMMARY
JUDGMENT - ii
CASE NO. 3:17-CV-05201-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Novartis Corp. v. F.T.C.*,
  223 F.3d 783 (D.C. Cir. 2000) ................................................................ 15

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  5 F.4th 950 (9th Cir. 2021) ...................................................................... 6

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  993 F.3d 774 (9th Cir. 2021) .................................................................... 6

*Olympia Oyster Co. v. Rayonier Inc.*,
  229 F. Supp. 855 (W.D. Wash. 1964). ..................................................... 16

*Paeschke v. Gen. Motors LLC*,
  No. 4:16-CV-5050-LRS, 2017 WL 5632442 (E.D. Wash. Oct. 11, 2017) ................... 9

*Syria v. AllianceOne Receivables Mgmt., Inc.*,
  C17-1139 TSZ, 2018 WL 3455499 (W.D. Wash. Jul. 18, 2018) ............................ 14

*Ticknor v. Choice hotels Int'l, Inc.*,
  265 F.3d 931 (9th Cir. 2001) .................................................................... 10

*Tomasella v. Nestle USA, Inc.*,
  962 F.3d 60 (1st Cir. 2020) ...................................................................... 10

**STATE CASES**

*Aspelund v. Olerich*,
  56 Wn. App. 477 (1990). .......................................................................... 11

*Griffith v. Centex Real Estate Corp.*,
  93 Wn. App. 202 (1998) ................................................................... 10, 11
  *as amended on denial of reconsideration* (Dec. 14, 1998),
  *rev. denied*, 137 Wn.2d 1034 (Jun. 1, 1999) ........................................... 10

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
  105 Wn.2d 778 (1986) ......................................................................... 15, 9

*Indoor Billboard/Wash., Inc. v. Integra Telecomm. Of Wash., Inc.*,
  162 Wn.2d 59 (2007) ............................................................................ 9, 11

*Klem v. Wash. Mut. Bank*,
  176 Wn.2d 771 (2013) .............................................................................. 13

*Marr v. Cook*,
  51 Wn. 2d 338 (1957) .............................................................................. 16

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION FOR SUMMARY
JUDGMENT - iii
CASE NO. 3:17-CV-05201-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*O'Brien v. Larson,*
    11 Wn. App. 52 (1974) ......................................................................................... 16

*Panag v. Farmers Ins. Co. of Wash.,*
    166 Wn.2d 27 (2009) ....................................................................................... 9, 14

*Rush v. Blackburn,*
    190 Wn. App. 945 (2015) ................................................................................... 14

*Seely v. Roden,*
    118 Wn. App. 1004, 2003 WL 21916387 (2003) ............................................... 14

*Tallmadge v. Aurora Chrysler Plymouth, Inc.,*
    25 Wn. App. 90 (1979) ....................................................................................... 10

*Young v. Toyota Motor Sales, U.S.A.,*
    196 Wn.2d 310, 472 P.3d 990 (2020) .................................................................. 9

**FEDERAL RULES**

Fed. R. Civ. P. 56(a) .................................................................................................... 5

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

## **INTRODUCTION**

2    Defendant Ford Motor Company ("Ford") failed to disclose, or actively refused to

3    disclose, a serious, dangerous defect in its vehicles wherein the panoramic sunroof ("PSR")

4    would spontaneously shatter, causing shards of glass to rain down on the driver. Ford concealed

5    this information from consumers and Plaintiffs despite knowing of the Defect going all the way

6    back to 2007, shortly after the PSRs were introduced in their vehicles. Ford knew that the PSRs

7    as designed were unable to withstand normal use within the vehicle, and would shatter without

8    warning, including while the vehicle is moving, posing a serious risk to the driver, passengers,

9    and others.

10    Plaintiffs Jacob and Jessica Beaty bought their Ford Escape in late 2012. Within a few

11    years, the PSR in their vehicle spontaneously shattered while Mrs. Beaty was driving at high

12    speeds, showering her and her baby daughter with shards of glass. This experience is not isolated.

13    Numerous complaints to Ford recount similar experience, illustrating a widespread, dangerous

14    Defect. These shattering events create a loud noise, similar to a gunshot, which can be startling,

15    confusing, and distracting. Hannemann Decl. ¶¶ 33-43, ECF No. 70; *see also* ECF Nos. 69-12,

16    69-18, 69-29, 69-32 to 69-37.

17    Ford moves for summary judgment, hoping to escape liability for selling vehicles with a

18    known Defect and actively concealing that Defect from consumers. Ford focuses its myopic

19    arguments on the Court's decision to exclude the testimony of Dr. Thomas Read, one of

20    Plaintiffs' liability experts with expertise in glass failure analysis. *See generally* Def.'s Mot. for

21    Summ. J., ECF No. 257 ("Def.'s Br."). Even without Dr. Read's testimony, however, dismissal

22    of Plaintiffs claims for fraudulent concealment and violation of the Washington Consumer

23    Protection Act ("CPA") is inappropriate. Although Dr. Read's testimony has been excluded, his

24    opinions are not the sole proof of Plaintiffs' claims.[1] Plaintiffs have offered a second liability

25

26    ---

[1] Plaintiffs continue to object to the Court's exclusion of Dr. Read's testimony and its denial of
27    class certification, ECF No. 245, and intend to appeal both rulings.

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION FOR SUMMARY
JUDGMENT - 1
Case No. 3:17-cv-05201-TSZ

**Terrell Marshall Law Group PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

expert, Neil Hannemann (whom the Court refused to exclude), who also opines that Plaintiffs' vehicle is defective. Further, Ford's own documents establish that the Defect was common to all Ford vehicles with a PSR, and that Ford was well-aware of the Defect and the serious risks it posed but refused to acknowledge or disclose the Defect to Plaintiffs or anyone else.

There are numerous disputes of material fact regarding Plaintiffs' damages, Ford's knowledge of the Defect, and whether Ford's conduct is unfair or deceptive that remain unsettled—disputes that a jury, not the Court, must resolve. Ford's motion for summary judgment should be denied.

## RELEVANT FACTS

### A. The PSR Defect exists in Plaintiffs' vehicle, and in all Ford vehicles with PSRs installed.

Plaintiffs bought a new 2013 Ford Escape with a panoramic sunroof ("PSR") in September 2012. Before buying the Escape, Plaintiffs researched extensively and were motivated to purchase in part because of the vehicle's safety features and the panoramic sunroof. Jessica Beaty Dep., ECF No. 69-30, at 73:25-74:6; 85:20-86:2, 89:13-92:5, 97:6-99:21, 107:2-12, 116:12-117:10. In the early afternoon of February 8, 2017, Ms. Beaty was driving home from Issaquah on I-5 with her daughter in the back seat. When they neared the Tacoma Dome at 55 or 60 miles per hour, Ms. Beaty heard "this loud just gunshot sound, explosion, and then I was covered in glass. It was cutting my hands. It was in my hair. I got some under my glasses. Ms. Beaty was "in shock of what happened" and "didn't know what had happened." She does not recall how she managed to navigate off the freeway "because I was in such shock." Ms. Beaty's daughter "had little cuts all over her face" and "was screaming." Ms. Beaty had scratches on her hands and face. *Id*. at 155:2-159:25.

Plaintiffs have since learned that Ms. Beaty's terrifying experience was due to a Defect. The PSRs installed on the Ford Escape feature large, thin, curved panels of fully tempered glass fastened onto vehicle frames in a manner that causes the stresses of vehicle movement or other environmental factors to be absorbed by the glass. The PSR in the Beaty's Escape shattered

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION FOR SUMMARY
JUDGMENT - 2
CASE NO. 3:17-CV-05201-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

because of Ford's defective design, which cannot reliably withstand the ordinary and foreseeable conditions to which it was exposed, including exposure to a wide range of temperatures, vehicle movements, sudden shocks like a car wash on a hot day, and debris kicked up off the road. Hannemann Decl. ¶¶ 23-24, ECF No. 70; ECF No. 69-9 at 0002537.

This Defect is not limited to Plaintiffs' vehicle, however; it affects *all* Ford vehicles that include PSRs. There are numerous similarities between Plaintiffs' Ford Escape and other Ford vehicles that contain a PSR, which render all these vehicles defective. For example, all PSRs in the subject vehicles are similarly sized (all larger than 0.5 square meters), occupying a significant portion of the roof of the vehicle; all are curved; all are made of tempered glass; all are nominally ███ thick. Hannemann Decl. ¶¶ 18-21; Eikey Dep., Ex. 35A, ECF No. 103-1, at 2. Moreover, all PSRs are installed in the Ford vehicles in the same manner, fastened directly to the vehicle's unibody frame. Hannemann Decl. ¶¶ 21-22. This causes the tempered glass PSR to be subjected to all the road stresses of vehicular movement, as nearly all forces experienced by the vehicle are transferred directly to the PSR. *Id.* ¶¶ 22, 24. These factors, which are present in all PSRs in Ford vehicles, lead the PSRs to fail in the same manner: by shattering without warning, for no apparent reason, accompanied by a loud, explosive noise—even when the vehicle is parked or at a stoplight. *Id.* ¶¶ 25, 34-35. And these PSRs fail at an abnormally high rate based upon replacement parts data. *Id.* ¶¶ 27-29. This data, coupled with consumers complaints regarding these PSRs, illustrate that the PSRs fail regularly, indicating that this Defect exists across all Ford vehicles with PSRs installed, including Plaintiffs' vehicle.

**B.     Ford was aware of the Defect prior to Plaintiffs' purchase of their vehicle.**

Ms. Beaty's experience was not isolated. Ford's records establish that Ford knew as far back as 2007—the first model year that Ford began selling PSRs on any of its vehicles—that the PSRs were prone to spontaneous shattering. The Ford Edge and Lincoln MKX were the first models Ford began selling with PSRs. ECF No. 69-39. The reports of PSRs shattering for no apparent reason were immediate. ECF No. 69-40, at 0027477-0027479 ("glass appears to be

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION FOR SUMMARY
JUDGMENT - 3
CASE NO. 3:17-CV-05201-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816 6603 • FAX 206.319.5450
www.terrellmarshall.com

broken from the inside out (February 19, 2007)); at 0027480-0027481 ("customer was driving and heard a noise, tried to open the roof and just saw/heard roof shatter" (April 16, 2007)); at 0027482-0027484 ("customer took delivery on 7/14 and was driving on the NYS thruway at 65 mph when the forward portion of the moonroof exploded" (July 17, 2007)); at 0027485-0027486 ("moonroof glass broke while driving on freeway" (October 25, 2007)); at 0027487-0027488 ("customer states that while his wife was driving the sun roof exploded and glass from the roof scratched her and got in her hair" (March 5, 2008)); at 0027489-0027490 ("while driving vehicle heard a pop and glass fell in from front power moon roof no sign of outside source" (March 7, 2008)); 0027491-93 ("while driving on the highway the entire glass roof on the sunroof exploded" (April 29, 2008)).

      Despite these complaints, Ford continued installing the PSRs in more and more models. In 2009, Ford began selling the Lincoln MKS with PSRs. ECF No. 143-1, at 0027440. In 2010, Ford added PSRs to the MKT. *Id.* In 2011, the PSRs became available on the Explorer. *Id.* And, in 2013, Ford began selling them with the Escape. *Id.* Since Ford began offering PSRs, numerous PSRs have shattered—sometimes before the vehicle was even sold, or within only a few thousand miles. *See, e.g.*, Compl., ECF No. 1, ¶¶ 2, 31-36, 39; ECF Nos. 69-10 to 69-29; ECF No. 69-4, at 0092652-0092654 and 0092734-0092736.

### C.   Ford refused to disclose and actively concealed the Defect.

      Ford conceals the risks associated with the defective PSRs and offers no permanent repair. By 2010, Ford had received numerous complaints that its PSRs shatter spontaneously. *See, e.g.*, Compl., ¶¶ 2, 31-36, 39; ECF Nos. 69-10, 69-16, 69-40. In November of that year, NHTSA began investigating PSR shattering events in the 2011 Edge and MKX based on Ford's review of multiple warranty claims. ECF No. 143-1. In subsequent years, Ford expanded these investigations to include additional vehicles—all for the same kind of PSR shattering events— across multiple models, based upon numerous complaints. ECF Nos. 143-3 to 143-12. These internal investigations all concluded that the root cause of each shattering event was some type

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION FOR SUMMARY
JUDGMENT - 4
CASE No. 3:17-CV-05201-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

of external impact or environmental condition in addition to some prior impact that did not result in visible damage to the glass.

Despite these investigations, Ford was unable to—or otherwise refused to—remedy the Defect across all the subject vehicles. In 2012 NHTSA initiated an investigation into other manufacturers' PSRs. Eventually, NHTSA began investigating Ford relating to the spontaneous shattering of its PSRs. ECF No. 69-43. However, Ford never informed consumers or Plaintiffs of the results of its PSR investigations—or of the concern it clearly had regarding what caused these spontaneous shattering events. Instead, Ford chose to conceal this information to ensure that its sales of vehicles with PSRs would continue, knowingly selling defective vehicles.

## ARGUMENT AND AUTHORITY

### A. Summary judgment standard

On a motion for summary judgment, the court draws all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc*., 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate only where there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co*., 952 F.2d 1551, 1558 (9th Cir. 1991).

### B. Summary judgment is not appropriate because Plaintiffs have adduced evidence that Ford knew of the Defect in Plaintiffs' vehicle at the time of sale.

Ford argues that it is entitled to summary judgment because "with Dr. Read's fatally-unreliable report properly excluded, there is no evidence from which a reasonable juror could conclude that Ford knew about a defect in Plaintiffs' Ford Escape at the time of sale." Def.'s Br. 10. Plaintiffs maintain that Dr. Read's opinions are reliable and should not have been excluded.

PLAINTIFFS' RESPONSE TO DEFENDANT FORD MOTOR COMPANY'S MOTION FOR SUMMARY JUDGMENT - 5
CASE NO. 3:17-CV-05201-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816 6603 • FAX 206.319.5450
www.terrellmarshall.com

But even without his testimony, Ford is wrong that no other evidence exists to establish Ford's knowledge of the Defect at the time of sale; indeed, Ford's own documents illustrate its knowledge of the Defect, and Plaintiffs' automotive expert, Neil Hannemann (whose opinions were *not* excluded), testified regarding Ford's knowledge. Accordingly, a reasonable juror could conclude that Ford was aware of the Defect, and summary judgment is inappropriate.

Ford does not challenge—because it cannot—that Ford was aware of the problems with its PSRs. Instead, Ford asserts that the reports it received regarding other vehicles cannot establish its knowledge of a defect in the Ford Escape Plaintiffs purchased. *See* Def.'s Br. 11-12. This is so, Ford contends, because Plaintiffs' only evidence that the Defect was common among Class Vehicles, including the Ford Escape, is Dr. Read's report. *Id.* at 12. Again, Ford is wrong.

The Court expressly noted that, while it excluded Dr. Read's testimony, that ruling was *separate from* the Court's finding that there was sufficient evidence "to show that a reasonable juror could find Plaintiffs' vehicle's PSR [was] 'substantially similar' to other Class Vehicles' PSRs." ECF No. 243, at 28 n.10.[2] Even without Dr. Read's testimony, Ford's own documents establish the similarities among Plaintiffs' Ford Escape and other Ford vehicles and Mr. Hannemann testified that based on his review of the evidence, there are substantial similarities among the Class Vehicles' PSRs.

The record, regardless of Dr. Read's exclusion, establishes:

- All PSRs in Ford vehicles, including in the Ford Escape, share a similar size—greater than 0.5 square meters. Hannemann Decl. ¶ 19, ECF No. 70.

- All Ford PSRs are made with tempered glass panels. *Id.* ¶ 20.

- All Ford PSR glass panels are nominally ███ thick. Eikey Dep., Ex. 35A, ECF No. 103-1, at 2.

---

[2] The Court explained that it found Plaintiffs' evidence of a common defect insufficient under *Olean*'s "rigorous analysis." ECF No. 243, at 28 n.10 (citing *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 785-86 (9th Cir. 2021)). Following this Court's Order, the Ninth Circuit vacated its decision in *Olean* for rehearing *en banc. Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 5 F.4th 950 (9th Cir. 2021).

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION FOR SUMMARY
JUDGMENT - 6
CASE NO. 3:17-CV-05201-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

- Each glass panel in Ford's PSRs have ceramic print (also called ceramic frit) on a portion of the glass, which makes up a large portion of the glass area. Hannemann Decl. ¶ 20.

- Every Ford PSR "make[s] up a large portion of the total roof area in each vehicle." Hannemann Decl. ¶ 20.

- All Ford PSRs are curved. *Id.* ¶ 21.

- All Ford PSRs are installed into the vehicle in the same manner—attached to the sunroof frame, which is fastened directly to the vehicle. *Id.*

- All Ford vehicles with PSRs have a "unibody construction," meaning that "[t]he loads from the road are transmitted into the unibody." *Id.* ¶ 22.

- Thus, all Ford PSRs are mounted directly onto the vehicle's unibody frame in the same manner—and are directly exposed to the stresses of vehicle movement in the same manner. *Id.*; *see also id.* ¶ 24.

- All Ford PSRs fail in the same manner: shattering "without warning and for no apparent reason" and typically "outside the context of a collision or some other unexpected event that might be expected to cause the glass to fail." *Id.* ¶ 25.

- The experience among drivers who have reported a shattering event, regardless of the Ford vehicle they drive, is consistent: "describ[ing] the sound as being extremely loud and compar[ing] it to a gunshot or a vehicle accident." *Id.* ¶¶ 34-35.

This evidence demonstrates that Plaintiffs' vehicle shares a substantially similar design—and a common Defect—with other Ford vehicles with a PSR.

Ford claims that Mr. Hannemann's testimony cannot establish evidence of a shared, common Defect because he deferred to Dr. Read's opinions regarding the Defect. Def.'s Br. 13 (citing ECF No. 245, at 25 n.8). But Ford misstates Mr. Hannemann's testimony. Mr. Hannemann, who lacked any specific expertise in glass failure analysis, deferred to Dr. Read's opinions regarding the "actual component defect[s] of the *glass*." ECF No. 245, at 25 n.8 (emphasis added). That is, Mr. Hannemann did not offer an opinion as to why the glass in the PSR specifically failed (for example, due to a pre-existing chip potentially reaching the glass's tensile layer, which would cause failure—as Dr. Read opined was possible, Read Decl. ¶¶ 39-

PLAINTIFFS' RESPONSE TO DEFENDANT FORD MOTOR COMPANY'S MOTION FOR SUMMARY JUDGMENT - 7
CASE NO. 3:17-CV-05201-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

43). However, Mr. Hannemann has most certainly offered an opinion of his own that the Ford PSRs, including in Plaintiffs' Ford Escape, are defective. He notes that he reached this conclusion "[b]ased on the estimated replacement rates, the number of customer complaints, including the drivers' descriptions of what is occurring, and [his own] review of the documents." Hannemann Decl. ¶ 29. As he explains, "[t]he replacement rates . . . are higher than [he] would expect to see in a non-defective sunroof and are higher than would be considered acceptable in the automotive industry (particularly for a failure that poses safety risks)." *Id.*; *see also id.* ¶¶ 27-28.

This evidence sufficiently establishes that the PSR in Plaintiffs' vehicle, which shared common design features with other Ford vehicles, is defective. And this Court has already found that "Plaintiffs' evidence is sufficient to show that triable fact exists on whether Ford knew of a PSR defect in Plaintiffs' 2013 Ford Escape." ECF No. 245, at 30.[3] Summary judgment is, thus, inappropriate.

**C.      Summary Judgment is not appropriate because Plaintiffs have adduced evidence establishing that Ford's conduct was unfair or deceptive under the CPA.**

Ford's arguments that its conduct was not unfair or deceptive as a matter of law hinge on a proposition the Court has already rejected: that without Dr. Read's testimony, there is no evidence that the PSR installed in Plaintiffs' 2013 Ford Escape is defective. *See* Def's Br. 18. As the Court correctly ruled after excluding Dr. Read's opinion, "Plaintiffs' evidence is sufficient to show that a triable fact exists on whether Ford knew of a PSR defect in Plaintiffs' 2013 Ford Escape." ECF No. 245, at 30. The Court denied Ford's motion to exclude Mr. Hannemann's opinions and held that he is "qualified to opine on issues relating to automotive glass, *including*

---

[3] Ford requests that the Court "revisit" this finding because Dr. Read's opinions were excluded. Ford claims that without Dr. Read's testimony, Plaintiffs cannot possibly establish that the Class Vehicles' PSRs are substantially similar and thus, cannot use its knowledge of thousands of shattering events in other Class Vehicles as evidence of its knowledge of a defect in Plaintiffs' Ford Escape.  Def.'s Br. 10 n. 9. But Dr. Read's testimony is not the only evidence in the record establishing the numerous substantial similarities among Plaintiffs' vehicle and other Ford vehicles containing PSRs. Nor is it the only evidence establishing a common, shared PSR Defect among the Class Vehicles. Accordingly, there is no reason for the Court to revisit its conclusion.

PLAINTIFFS' RESPONSE TO DEFENDANT FORD MOTOR COMPANY'S MOTION FOR SUMMARY JUDGMENT - 8
Case No. 3:17-CV-05201-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   *whether the Class Vehicles' PSRs are defective.*" *Id.* at 7-8 (emphasis added). And Mr.

2   Hannemann's opinion is that the Class Vehicles, including the Beatys' Ford Escape, "are

3   defective" and endanger both "drivers and passengers in the vehicles," and "nearby pedestrians

4   and other drivers." Hannemann Decl. ¶¶ 29, 31. As the Court recognized, "the jury, not the Court

5   must assess the credibility of Hannemann's [opinions]." ECF No. 245 at 9 n.4; *see also Paeschke*

6   *v. Gen. Motors LLC*, No. 4:16-CV-5050-LRS, 2017 WL 5632442, at *7 (E.D. Wash. Oct. 11,

7   2017) ("It is well within the province of the jury to understand the evidence and weigh the

8   credibility of the competing experts and their results.").

9          1.      <u>Genuine issues of material fact preclude summary judgment on Plaintiffs'</u>
10                 <u>claims for deceptive acts or practices.</u>

11          Under the Washington CPA, an act or practice is deceptive if it is "likely to mislead a

12   reasonable consumer." *Young v. Toyota Motor Sales, U.S.A.*, 196 Wn.2d 310, 317, 472 P.3d 990

13   (2020) (citation omitted). An act or practice need not be intended to deceive—it need only have

14   "the capacity to deceive a substantial portion of the public." *Indoor Billboard/Wash., Inc. v.*

15   *Integra Telecomm. Of Wash., Inc.*, 162 Wn.2d 59, 74–75 (2007) (quoting *Hangman Ridge*, 105

16   Wn.2d at 785. What constitutes a deceptive act or practice is a question for the fact finder. *Burbo*

17   *v. Harley C. Douglass, Inc.*, 125 Wn. App. 684, 700 (2005) (citation omitted).

18          Ford's argument that its conduct is not deceptive invites the Court to apply the wrong

19   legal standards—again. *See Beaty v. Ford Motor Co.*, 854 F. App'x 845, 849 (9th Cir. 2021)

20   ("Rather than focusing on what Washington consumer-protection law requires, the district court

21   applied a standard of materiality applicable to NHTSA, a government body," that is "inconsistent

22   with Washington consumer protection-law"). Now, Ford asks the Court to apply standards

23   applicable to a different government body—this time the FTC—that are equally inconsistent with

24   Washington law. Unlike *International Harvester*, the CPA does not require a showing that a

25   defective product is "unfit for normal use" or a "gross safety hazard" (although Ford's PSRs are

26   both); it does not require "a cost-benefit analysis"; and liability for deceptive conduct does not

27   hinge "on the degree of risk involved." *In re Int'l Harvester Co.*, 104 F.T.C. 949, 1984 WL

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION FOR SUMMARY
JUDGMENT - 9
CASE NO. 3:17-CV-05201-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

565290 at \*87, \*89 (Dec. 21, 1984); *see also* Jacob Beaty Dep., ECF No. 142-5, at 160:8-19 ("And I'm driving around with something that could randomly occur again, so it's somewhat stressful, and I can't use the car as intended.").

A court sitting in diversity is "solely guided by" state law as it believes the state's highest court would apply it. *In re K F Dairies Inc. & Affiliates v. Fireman's Fund Ins. Co.*, 224 F.3d 922, 924 (9th Cir. 2000); *see also Ticknor v. Choice hotels Int'l, Inc.*, 265 F.3d 931, 941 (9th Cir. 2001) ("In analyzing state law in diversity cases, we must take the law as we find it—not how we might imagine that it might or should evolve."). And no Washington Court has applied *International Harvester*'s "dual classification scheme" to omissions-based CPA claims. Those courts that do apply *International Harvester*, do so because the relevant state law "closely tracks the FTC's dual classification scheme." *Cf. Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 73 (1st Cir. 2020) (considering Massachusetts law). Washington law, notably, does not.

Unlike *International Harvester*, Washington law does not limit plaintiffs to defects that pose a risk of injury or make continued use of the product "inherently unreasonable or imprudent." *Int'l Harvester*, 1984 WL 565290, at \*89; *see also Beaty*, 854 F. App'x at 849 ("Washington Law does not require a risk to safety, much less an 'unreasonable' one."). *Any* defect material to consumers—even a purely cosmetic one, such as prematurely peeling paint— is covered.[4] *Griffith v. Centex Real Estate Corp.*, 93 Wn. App. 202, 214 (1998), *as amended on denial of reconsideration* (Dec. 14, 1998), *rev. denied*, 137 Wn.2d 1034 (Jun. 1, 1999). ("Numerous cases establish a duty to disclose material facts adversely affecting . . . property, not just those facts pertaining to concealed defects dangerous to the property, health, or life of the purchaser."); *see also, e.g.*, *Tallmadge v. Aurora Chrysler Plymouth, Inc.*, 25 Wn. App. 90, 93 (1979) (finding a CPA violation where a car sold as new had actually been damaged and

---

[4] For this reason, the Missouri decisions Ford cites, which turn on the court's finding that a defect did not make a vehicle as a whole unfit for transportation, are inapposite. Def.'s Br. 22 (citing *Anderson v. Ford Motor Co.*, No. 17-cv-03244, 2020 U.S. Dist. LEXIS 66549, at \*20–21 (W.D. Mo. Feb. 14, 2020) and *Elfaridi v. Mercedes-Benz USA, LLC*, No. 4:16-cv-1896, 2018 U.S. Dist. LEXIS 145196, at \*26 (E.D. Mo. Aug. 27, 2018)).

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION FOR SUMMARY
JUDGMENT - 10
CASE NO. 3:17-CV-05201-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   repainted). Ford's sunroof problem is far more serious than peeling paint: exploding sunroofs are

2   not only costly to replace, but also injure drivers and put them at risk of accidents. *See, e.g.*, ECF

3   No. 69-33 at Ford–Beaty0038723-25; ECF No. 69-41; Hannemann Decl. ¶¶ 32-39; ECF No.

4   184-3 at 000004356, 4369.

5          Under Washington law, a seller has a duty to disclose facts material to a transaction "when

6   the facts are known to the seller but not easily discoverable by the buyer." *Griffith*, 93 Wn. App.

7   at 214. A "[k]nowing failure to reveal something of material importance is deceptive within the

8   CPA." *Indoor Billboard*, 162 Wn.2d at 74-75. A material fact is one "to which a reasonable

9   person would attach importance in determining his or her choice of action in the transaction in

10  question." *Aspelund v. Olerich*, 56 Wn. App. 477, 483 (1990).

11         As discussed above, there are triable issues of fact regarding Ford's knowledge of the

12  defect even without Dr. Read's testimony. And the Ninth Circuit has already decided that

13  materiality is a question for the jury. *Beaty*, 854 F. App'x at 849-50 ("[E]ven if the district court

14  did not apply an erroneous standard of materiality, there is a triable issue of fact as to whether

15  the PSR shattering issue would be material to a reasonable consumer."). Nothing more is required

16  to establish that Ford's conduct is deceptive. *See Indoor Billboard*, 162 Wn.2d at 74-75.

17         Nonetheless, Ford insists, as it did before the Ninth Circuit, that "the very low risk of

18  mishap" relieves it of liability. But the Ninth Circuit squarely addressed that argument and

19  rejected it. *See Beaty*, 854 F. App'x at 849 ("Washington Law does not require a risk to safety,

20  much less an 'unreasonable' one."); *see also Griffith*, 93 Wn. App. at 217 (explaining that the

21  "purposes of the CPA—to protect members of the public from injury in their property or business

22  by reason of unfair or deceptive acts and practices in trade or commerce—would hardly be served

23  if deception were not actionable unless the consumers' very lives were at stake"). Even if Ford's

24  "calculated failure rate of 0.05%" is correct—and it is not[5]—"a reasonable juror could find that

25

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

27  [5] The claims rate calculated by Ms. Padmanaban is substantially underinclusive because it relies
    only on *reported* incidents, rather than total incidents. As Mr. Hannemann explained, claims rates

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION FOR SUMMARY
JUDGMENT - 11
CASE NO. 3:17-CV-05201-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

even a small risk that a PSR might explode without warning is a material fact," particularly "given the practical question is whether to purchase a luxury accessory at a premium."[6] *Beaty*, 854 F. App'x at 849-50. Plaintiffs would not have purchased their Ford Escape at all if they had known about the risk that their sunroof would explode. Jessica Beaty Dep., ECF No. 69-30, at 86:23-25 ("If I had known the possibility of it exploding on me, I would have absolutely walked away from it.").

Ford also drastically understates the severity of the harm caused by sunroof failures. While Ford may not consider exploding sunroofs to be a safety risk, customer reports show that consumers do. *See, e.g.*, Hannemann Decl. ¶ 35.d ("We are very concerned that glass could fall into a driver's eyes as well as our passengers. Also when they do blow out a good size[d] chunk of the roof blows out and anyone behind us could be in grave danger especially someone on a motorcycle."); ECF No. 69-33 at Ford–Beaty0038725 ("This should be looked at for a recall because it is dangerous, so dangerous that I'm getting rid of the car."); ECF No. 71, ¶ 57 (noting driver's son "suffered cuts and injuries to [his] face and arms"). As Mr. Hannemann explains, "shattered glass in a non-collision event is a dangerous phenomenon to be avoided." Hannemann Decl. ¶ 39. And Ford itself, in other circumstances, has acknowledged the same thing. ECF No. 184-3 at 000004369 (recognizing that "some risk of injury" is "present if the glass fractures").

Ms. Beaty's experience and those of other drivers back that up. *See* Jessica Beaty Dep., ECF No. 69-30, at 155:17-156:20 (explaining that, after the explosion, Ms. Beaty and her baby daughter were "covered in glass"; the pieces cut Ms. Beaty's hands and scratched her face, and

---

drastically understate the incident rate, particularly where, as here, broken glass is not covered by the warranty. Hannemann Dep., at 39:8-18, 90:4-91:6, ECF No. 169-2.

[6] Of course, the rate of failure is a disputed issue of fact. *See In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1116 (9th Cir. 1989) ("As a general rule, summary judgment is inappropriate where an expert's testimony supports the nonmoving party's case." (citing *Bieghler v. Kleppe*, 633 F.2d 531, 534 (9th Cir. 1980)). Based on the number of replacement panoramic sunroof panels sold—a common method in the car industry for measuring failure rate—Mr. Hannemann estimated a replacement rate of about ▮▮▮—ten times the rate calculated by Ms. Padmanaban. Hannemann Decl. ¶ 27. And Ford's own survey expert found a *significantly higher* failure rate of ▮▮ Hannsens Decl. ¶ 98, ECF No. 90.

PLAINTIFFS' RESPONSE TO DEFENDANT FORD MOTOR COMPANY'S MOTION FOR SUMMARY JUDGMENT - 12
Case No. 3:17-CV-05201-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

her daughter "had little cuts all over her face"); *see also* ECF No. 69-40 at 0027487 ("[S]un roof exploded and glass from roof scratched [the driver] and got in her hair"); Hannemann Decl. ¶ 35.c ("Sunroof exploded showering driver and passenger with shards of glass cutting hands and arms."); ECF No. 71 ¶ 57.a (noting driver's son "suffered cuts and injuries to [his] face and arms"). A reasonable juror could easily consider those injuries to be material.

Moreover, "the distraction caused by an unexpected loud explosion and sudden shower of glass 'could distract the driver' and create 'the risk of crash.'" *Beaty*, 854 F. App'x at 850; *see also, e.g.*, Hannemann Decl. ¶¶ 32-38; Jessica Beaty Dep., ECF No. 69-30, at 155:17-156:13 (explaining that Ms. Beaty was "in such shock" when she heard "this loud just gunshot sound, explosion" and was suddenly "covered in glass" that she does not remember how she got off the freeway); Hannemann Decl. ¶¶ 34-35; ECF No. 69-13 at 0081884; ECF No. 69-16 at 0083028, 0084176; ECF No. 69-33 at 0038809, 0038861. Even Ford has acknowledged this basic point. ECF No. 184-3 at 000004369 (warning that if glass were to unexpectedly fracture, "a loud 'bang' would be heard," which "could distract the driver and possibly affect the driver's control of the car" and cause "an accident"). That is undeniably a safety risk, and reasonable consumers need not wait until someone is actually killed before factoring it into their purchase decisions. *See Beaty*, 854 F. App'x at 850 ("[I]t is reasonable to assume that a consumer will attach importance to traumatic occurrences that result in 'only' near-misses and relatively minor abrasions."); *see also* Hannemann Decl. ¶¶ 32-39.

Genuine issues of material fact preclude summary judgment on Plaintiffs' claims for deceptive acts or practices

2.    Genuine issues of material fact preclude summary judgment on Plaintiffs' claims for unfair acts or practices.

Ford's arguments that it did not engage in unfair acts or practices within the meaning of the CPA fail for largely the same reasons. A practice is unfair if it "offends public policy as established by statutes or the common law" or is "unethical, oppressive, or unscrupulous, among other things." *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787 (2013).  An act or practice may

PLAINTIFFS' RESPONSE TO DEFENDANT FORD MOTOR COMPANY'S MOTION FOR SUMMARY JUDGMENT - 13

Case No. 3:17-CV-05201-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   also be unfair if it "causes or is likely to cause substantial injury to consumers which is not

2   reasonably avoidable by consumers themselves and is not outweighed by countervailing

3   benefits." *Id*. "The universe of 'unfair' business practices is broader than, and encompasses, the

4   universe of deceptive business practices. Business practices that are 'deceptive' are, ipso facto,

5   'unfair.'" *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 51 (2009).

6       Ford urges the Court to apply only the "substantial injury" test. But an act or practice is

7   unfair if it meets any one of those standards. *See Syria v. AllianceOne Receivables Mgmt., Inc.*,

8   C17-1139 TSZ, 2018 WL 3455499, at *3 (W.D. Wash. Jul. 18, 2018) (Zilly, J.) ("A trade practice

9   can be considered 'unfair' if (i) it offends public policy, although not the letter of the law, or falls

10  within 'the penumbra of some common-law, statutory, or other established concept of

11  unfairness'; (ii) it is 'immoral, unethical, oppressive, or unscrupulous'" and/or (iii) it causes

12  substantial injury to consumers, competitors, or other businesses." (quoting *Rush v. Blackburn*,

13  190 Wn. App. 945, 962–63 (2015))). And Ford's conduct is unfair under all of them.

14      A failure to disclose a material fact "offends" Washington's longstanding public policy

15  prohibiting deceptive omissions and falls squarely within the "penumbra" of a common law

16  concept of unfairness. *See Chamberlayne Sch. v. Banker*, 568 N.E.2d 642, 648 (Mass. App. 1991)

17  (affirming the trial court's conclusion that the use of "deceptive tactics" were within "the

18  penumbra of some common-law, statutory, or other established concept of unfairness." (citations

19  and quotation marks omitted)); *see also Seely v. Roden*, 118 Wn. App. 1004, 2003 WL 21916387,

20  at *6 (2003) (unpublished) (explaining that failure to disclose that a retainer fee was non-

21  refundable fell within "the penumbra of a common law concept of unfairness"). So too, it is

22  reasonable to expect that a jury of consumers would conclude that Ford's failure to disclose that

23  its PSRs might explode, when Ford knew its sunroofs were exploding by the thousands, is

24  immoral, unethical or unscrupulous.

25      Ford's conduct is unfair under the "substantial injury" test as well. The evidence shows

26  that Plaintiffs' injury—and those of tens of thousands of other consumers whose sunroofs failed

27

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION FOR SUMMARY
JUDGMENT - 14
Case No. 3:17-CV-05201-TSZ

because of the Defect—is "substantial." Under Washington law, the showing required to establish injury is not onerous. Although a plaintiff must establish some injury to recover, the "injury involved need not be great." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 792 (1986). Even under *International Harvester*, substantial injury is a flexible standard designed to reach a variety of unfair practices. *Int'l Harvester*, 1984 WL 565290, at *90, n. 55 ("An injury may be sufficiently substantial . . . if it does a small harm to a large number of people, or if it raises a significant risk of concrete harm."). As discussed in greater detail below, Plaintiffs were injured when they paid for a defective vehicle they would not have purchased had Ford disclosed the Defect, paid their insurance deductible to replace the sunroof, and were forced to rent a car. Jessica Beaty Dep., ECF No. 69-30, at 214:16-18; Jessica Beaty Dep., ECF No. 142-4, at 219:24-220:3. Those injuries are substantial even under *International Harvester*. 1984 WL 565290, at *97 (explaining that "[i]n most cases a substantial injury involves monetary harm"). The "[u]nwarranted . . . safety risks" created by Ford's PSRs "also support a finding of unfairness." *Id*.; *see also Novartis Corp. v. F.T.C.*, 223 F.3d 783, 786 (D.C. Cir. 2000) (finding an omission is presumptively material if it concerns a product's "durability, performance, warranties or quality"). A reasonable jury could find that these injuries are substantial.

Moreover, consumers like Plaintiffs could not have reasonably avoided their injuries because Ford concealed the Defect from them. And Ford has not submitted any evidence whatsoever to support its speculation that, if it were required to disclose the PSR defect, "[c]onsumers would be inundated with disclosures . . . undermin[ing] the efficacy of any particular disclosure." Def.'s Br. 24. Nor is there evidence to support its assertion that the "cost of increased disclosures" related to the Defect would result in higher vehicle prices. *Id*. There is simply no basis to conclude that the risks of substantial injury Plaintiffs have identified and offered evidence to support, are outweighed by any countervailing benefit. By any measure, Ford's conduct is unfair.

PLAINTIFFS' RESPONSE TO DEFENDANT FORD MOTOR COMPANY'S MOTION FOR SUMMARY JUDGMENT - 15
CASE NO. 3:17-CV-05201-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**D.     Summary judgment is inappropriate as to any of Plaintiffs' damages.**

Ford seeks partial summary judgment on Plaintiffs' damages, claiming that "Plaintiffs have not come forward with any evidence establishing overpayment damages, replacement sunroof damages, or diminished value damages." Def.'s Br. 21. However, partial summary judgment as to any of these claimed damages would be improper.

Under Washington law, a plaintiff need only present "some rational basis" for his damages. *O'Brien v. Larson*, 11 Wn. App. 52, 54 (1974). "[T]he precise amount need not be shown with mathematical certainty." *Olympia Oyster Co. v. Rayonier Inc.*, 229 F. Supp. 855, 861 (W.D. Wash. 1964). Plaintiffs may recover any damages proximately caused by Ford's fraud, including benefit of the bargain damages and out-of-pocket costs. *Marr v. Cook*, 51 Wn. 2d 338, 344 (1957). Mrs. Beaty explained that she would not have purchased her Class Vehicle had she been informed of the presence of the Defect. Jessica Beaty Dep., ECF No. 69-30, at 214:16-18. She also explained that because of the Defect, she was forced to pay additional out-of-pocket expenses, including an insurance deductible and renting a car. Jessica Beaty Dep., ECF No. 142-4, at 219:24-220:3. Mr. Beaty agreed. Jacob Beaty Dep., ECF No. 142-5, at 160:8-19. This evidence is sufficient to establish Plaintiffs' damages.

In addition, Plaintiffs have proposed a damages model—a conjoint analysis—that quantifies their benefit of the bargain damages by calculating the amount of overpayment based upon the reduction in economic value at the point of sale attributable to the Defect. ECF No. 72, Weir Decl. ¶ 24. Plaintiffs are entitled to estimate their damages, which they have done through this proposal. *See Campanelli v. Allstate Life Ins. Co.*, 93 F. App'x 159, 160 (9th Cir. 2004) (noting that summary judgment was improperly granted where a plaintiff had presented evidence of damages in the form of an estimate).

Moreover, it is indisputable that Plaintiffs have established their other damages. Mr. Beaty explained that, due to the Defect, Plaintiffs were forced to pay out-of-pocket costs, namely an insurance deductible and rental car expenses. Jacob Beaty Dep., ECF No. 142-5, at 160:8-19; Declaration of Beth E. Terrell, Ex. A (Response to Interrogatory No. 16) (explaining that

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION FOR SUMMARY
JUDGMENT - 16
Case No. 3:17-CV-05201-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Plaintiffs paid a total of $610.94 in out-of-pocket expenses). Indeed, Ford appears to concede that replacement sunroof damages are available in the amount of Plaintiffs' out-of-pocket costs. *See* Def.'s Br. 23.

Ford further asserts that Plaintiffs "have adduced no evidence that the value of their vehicle was diminished due to the alleged defect." *Id.* Plaintiffs' damages theory is not based on "diminished value," in the manner Ford attempts to define it. As Plaintiffs have explained numerous times, they were not informed of the Defect. Had they been so informed, they would not have purchased the vehicle. Jessica Beaty Dep., ECF No. 69-30, at 214:16-18; Jacob Beaty Dep., ECF No. 142-5, at 160:8-19. Ford has attempted to confuse the issue throughout this case, challenging this measure of benefit of the bargain damages by asserting that the resale value of the subject vehicles does not excessively diminish. *See, e.g.*, Def.'s Br. 23 (citing Justin McCrary Decl., ECF No. 94, at 13, 33-40). While this evidence is inapposite, it has also been rebutted by Plaintiffs. Indeed, Plaintiffs' expert, Colin Weir, explains that Dr. McCrary's analysis is flawed. Here, Ford has refused to admit the existence of the Defect and actively concealed it from consumers. Since Ford has not informed the public of the Defect, the Defect necessarily *cannot* impact the resale value of any of the subject vehicles in any way—because at resale, no one is aware of the Defect to factor it into their purchase price. Weir Decl. ¶¶ 27-36. Thus, a triable issue of fact exists as to all of Plaintiffs' damages.

For these reasons, Ford's request for partial summary judgment dismissing certain damages sought by Plaintiffs should be denied.

## **CONCLUSION**

For the reasons stated above, genuine issues of material fact exist, such that summary judgment is inappropriate here. Plaintiffs' respectfully request that the Court deny Ford's motion in its entirety.

PLAINTIFFS' RESPONSE TO DEFENDANT FORD MOTOR COMPANY'S MOTION FOR SUMMARY JUDGMENT - 17
CASE NO. 3:17-CV-05201-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

RESPECTFULLY SUBMITTED AND DATED this 4th day of March, 2022.

2

TERRELL MARSHALL LAW GROUP PLLC

3

By:   /s/ Beth E. Terrell, WSBA #26759

4
Beth E. Terrell, WSBA #26759
Email:  bterrell@terrellmarshall.com

5
Amanda M. Steiner, WSBA #29147
Email:  asteiner@terrellmarshall.com

6
Benjamin M. Drachler, WSBA #51021
Email: bdrachler@terrellmarshall.com

7
936 North 34th Street, Suite 300

8
Seattle, Washington 98103-8869
Telephone: (206) 816-6603

9

10
Gregory F. Coleman, *Admitted Pro Hac Vice*
Email: gcoleman@milberg.com

11
Mark E. Silvey, *Admitted Pro Hac Vice*
Email: msilvey@milberg.com

12
Adam A. Edwards, *Admitted Pro Hac Vice*
Email: aedwards@milberg.com

13
Justin G. Day, *Admitted Pro Hac Vice*
Email: jday@milberg.com

14
William A. Ladnier, *Admitted Pro Hac Vice*

15
Email: wladnier@milberg.com
MILBERG COLEMAN BRYSON PHILLIPS

16
   GROSSMAN, PLLC
First Tennessee Plaza

17
800 South Gay Street, Suite 1100

18
Knoxville, Tennessee 37929
Telephone: (865) 247-0080

19
Facsimile: (865) 522-0049

20
Mitchell Breit, *Admitted Pro Hac Vice*

21
Email: mbreit@milberg.com
MILBERG COLEMAN BRYSON PHILLIPS

22
   GROSSMAN, PLLC
100 Garden City Plaza, Suite 500

23
Garden City, New York 11530
Telephone: (516) 741-5600

24

25

26

27

PLAINTIFFS' RESPONSE TO DEFENDANT FORD
MOTOR COMPANY'S MOTION FOR SUMMARY
JUDGMENT - 18
Case No. 3:17-CV-05201-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816 6603 • FAX 206.319.5450
www.terrellmarshall.com

Eric S. Johnson, *Admitted Pro Hac Vice*
Email: ejohnson@simmonsfirm.com
SIMMONS HANLY CONROY
One Court Street
Alton, Illinois 62002
Telephone: (618) 259-2222

*Attorneys for Plaintiffs*

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com